**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Arnesia Thomas, Pascha Perkins, and Vernita Faison, individually and as a representative of all others similarly situated, | Case No. 1:23-cv-05315 |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| WALMART INC. | |
| and | |
| WAL-MART STORES, INC. | |
| Defendants. | |

Plaintiffs Arnesia Thomas, Pascha Perkins, and Vernita Faison (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, through her undersigned counsel, alleges as follows against Defendants Walmart Inc. and Wal-Mart Stores, Inc. ("Walmart"), based upon personal knowledge as to themselves and, as to all other matters, upon information and belief, including their counsel's investigation.

## **INTRODUCTION**

1. Walmart is the world's largest retailer[1] and operates "approximately 10,500 stores and clubs under 46 banners in 24 countries . . . . and employs 2.3 million associates worldwide,"[2] including

---

[1] *Top 100 Retailers 2023 List*, Nat'l Retail Fed'n, https://nrf.com/research-insights/top-retailers/top-100-retailers/top-100-retailers-2023-list (last visited Aug. 5, 2023).

[2] *Walmart's 9th Annual Open Call Application Period is Open for All Entrepreneurs with Products Made, Grown or Assembled in the U.S.*, Walmart (Mar. 14, 2022), https://corporate.walmart.com/newsroom/2022/03/14/walmarts-9th-annual-open-call-application-period-is-open-for-all-entrepreneurs-with-products-made-grown-or-assembled-in-the-u-s.

---

approximately 1.6 million in the United States.[3] In the United States alone, Walmart operates 4,684 stores,[4] with approximately 159 of them located in Illinois.[5]

2. Walmart manufactures, labels, distributes, advertises, and sells bed sheet sets under its exclusively owned brand name "Hotel Style" at Walmart locations throughout the country and for which Walmart represents directly on their packaging and/or labeling that their thread count is 800 (hereinafter, "Hotel Style Sheets" or "Products"). For example:



---

[3] *Location Facts*, Walmart, https://corporate.walmart.com/about/location-facts (last visited Aug. 5, 2023).

[4] *Id.*

[5] *Walmart in Illinois*, Walmart, https://corporate.walmart.com/about/illinois?multi=false (last visited Aug. 5, 2023).

3. Retailers and manufacturers of bedding sheet sets, including Walmart, commonly and consistently communicate to consumers that higher thread count bed sheets are softer, more comfortable, and of an overall higher quality than those with a lower thread count.

4. For example, Walmart claims that its Hotel Style Sheets are "super-soft and comfortable," "bring[] night after night of peaceful comfort" and that they "provide[] exceptional softness for a calming night's sleep."[6]

5. Inaccurate thread counts create reasonable but mistaken beliefs by consumers about the quality, durability, and longevity of sheet sets and fabrics. As an example, a reasonable consumer will believe that a set of bed sheets which represent on the label and packaging that they are 800 thread count will actually include a set of bed sheets with a thread count of 800 according to an honest count, consistent with accepted industry standards. Consumers will also believe that the 800 thread count sheets are of a higher quality than lower thread count sheets.[7]

6. Consumers regularly and commonly rely on the representations made on a product's labeling and packaging when determining whether or not to purchase that product. When purchasing sheet sets, consumers use the product's thread count as a primary indicator of their quality, durability, and softness and pay higher prices for those with higher thread counts.

---

[6] *Hotel Style 800 Thread Count Cotton Rich Sateen Bed Sheet Set, King, Gray, Set of 6*, Walmart, https://www.walmart.com/ip/Hotel-Style-800-Thread-Count-Cotton-Rich-Sateen-Bed-Sheet-Set-Queen-White-Set-of-6/875488965 (last visited Aug. 5, 2023).

[7] *See* P. Praditbatuga & N. Thirakomen, *Factors Influencing Consumer Purchase Intention Towards Imported Bedding Brands*, 3 eJournal of Interdisciplinary Rsch. 235, 239 (2018), http://www.assumptionjournal.au.edu/index.php/eJIR/article/view/4180/2469 ("respondents strongly agreed that all the attributes of imported bedding brands in this study (price, color, style, brand name, fiber content, package set, fabric type, and ***thread count***) were important to their decision to purchase imported bedding brands" (emphasis added)); *see also* Jackie Reeve, *What Is a Good Thread Count for Sheets?*, N.Y. Times (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/good-thread-count-for-sheets/ (Shannon Maher, chairperson and assistant professor of Home Products Development department at the Fashion Institute of Technology, stated manufacturers increase thread count because consumers assume higher thread count is better).

7.  In an effort to make the Hotel Style Sheets more attractive in the marketplace, to boost its sales, and to increase its profits, Walmart represented, and continues to represent, an inflated thread count of 800 directly on its Hotel Style Sheets' label and packaging. In doing so, Walmart departed from longstanding and well-established industry standards that govern the method for counting threads in a fabric. In reality, the thread count of Walmart's Hotel Style Sheets is far less than 800.

8.  This false and misleading representation deceives consumers into believing they are purchasing a product of a higher quality, durability, and softness than products of the same or substantially similar blends with lower thread counts.

9.  Because of the improperly inflated thread counts that Walmart represented on the packaging and labeling of the Hotel Style Sheets, in purchasing these sheets, Plaintiffs and the putative classes received far less than what Walmart promised them.

10. Moreover, as a direct result of Walmart's deceptive and unconscionable misrepresentation of its Hotel Style Sheets' thread count, Plaintiffs and putative class members were induced to purchase the Hotel Style Sheets and would not have purchased them, or would have paid a lower price for them, had they known the actual thread count at the time of purchase.

## **PARTIES**

11.     Plaintiff Arnesia Thomas is an Illinois citizen who, at all times material hereto, was a resident of Addison, Illinois. As discussed in more detail in Paragraphs 44-48, in or around 2009-2023, while a resident of Addison, Illinois, Ms. Thomas purchased Hotel Style Sheets from Walmart locations in Addison, Bloomingdale, Elk Grove Village, Streamwood, and Glen Ellyn, Illinois for approximately $50-65[8] based on Walmart's representation of its thread count as 800. Plaintiff Thomas

---

[8] Upon information and belief, the price Plaintiff Thomas has paid Walmart for her Hotel Style Sheets has increased over the course of ten years due to inflation.

would not have purchased the sheets, or alternatively would not have paid a premium for it, had Walmart not made this misrepresentation.

12.     Plaintiff Pascha Perkins is an Illinois citizen who, at all times material hereto, was a resident of Cahokia, Illinois. As discussed in more detail in Paragraphs 44-48, in or around April 2022, while a resident of Cahokia, Illinois, Ms. Perkins purchased Hotel Style Sheets from the Cahokia Heights location for approximately $69.95 based on Walmart's representation of its thread count as 800. Plaintiff Perkins would not have purchased the sheets, or alternatively would not have paid a premium for it, had Walmart not made this misrepresentation.

13.     Plaintiff Vernita Faison is a California citizen who, at all times material hereto, was a resident of Sacramento, California. As discussed in more detail in Paragraphs 44-48, in or around February 2022, while a resident of Sacramento, California, Ms. Faison purchased Hotel Style Sheets from a local Walmart location for approximately $59 based on Walmart's representation of its thread count as 800. Plaintiff Faison would not have purchased the sheets, or alternatively would not have paid a premium for it, had Walmart not made this misrepresentation.

14.     Defendants Walmart Inc. and Wal-Mart Stores, Inc. (collectively, "Walmart") are corporations organized under the laws of the State of Delaware. Their principal place of business are each located in Bentonville, Arkansas. Walmart is in the business of, among other things, marketing and selling home goods, including the at-issue Hotel Style Sheets to consumers across the United States, including in Illinois.

## JURISDICTION & VENUE

15.     This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.SC § 1332(d)(2)(A), because there are 100 or more class members; at least one class

member is a citizen of a state that is diverse from Walmart's citizenship; and the matter in controversy exceeds $5 million, exclusive of interests and costs.

16. This Court has personal jurisdiction over Walmart because Walmart operates, conducts, and engages in substantial business in this District, including but not limited to the promotion, sale, marketing and distribution of its Hotel Style Sheets; Walmart committed tortious acts in this State through its misrepresentations related to the sale, marketing, and distribution of its Hotel Style Sheets in this State; Walmart caused injury to persons within this State; and a substantial portion of the actions giving rise to the claims took place in this State.

17. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Walmart conducts business in this District and has availed itself of the laws and markets of this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

**FACTS**

18. Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

**A. Walmart markets and sells Hotel Style Sheets through its "Hotel Style" brand.**

19. Walmart operates retail stores throughout the State of Illinois and across the United States. Walmart is a ubiquitous "mass merchandiser of consumer products, operating under the 'Walmart' and 'Walmart Neighborhood Market' brands" with "[U.S.] net sales of $393.2 billion for fiscal [year] 2022."[9]

20. In the United States, Walmart does business "in three strategic merchandise units," including "[g]rocery," "[g]eneral merchandise," and "[h]ealth and wellness[.]"[10] Walmart's general

---

[9] SEC Filing Details, 10-K, Walmart (Mar. 18, 2022), https://stock.walmart.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=15671092, at 7.

[10] *Id.*

merchandise category includes "Home" products such as "housewares and small appliances, bed & bath, furniture and home organization, home furnishings, home decor, fabrics and crafts."[11]

21.     Walmart owns, operates, and sells merchandise under a host of "private brands,"[12] and one of Walmart's private brands is the "Hotel Style" brand which it has used to sell merchandise to its consumers since at least 2016. Under the "Hotel Style" brand, Walmart sells bed sheets, bath towels, bath mats, shower curtains, and other assorted bed and bath goods to its customers in Illinois, California, and throughout the United States.

22.     Walmart sells its Hotel Style Sheets to consumers with a represented thread count of 800 in its retail locations at or around the following prices:

      a.   The "Full" set of Hotel Style Sheets retails for $39.88;

      b.   The "Queen" set of Hotel Style Sheets retails for $49.88; and

      c.   The "King" set of Hotel Style Sheets retails for $59.00.[13]

23.     Consumers rely on the represented thread count as the gauge for the quality, durability, softness, and fitness of their bedding products. *See* Elisabeth Leamy, *False thread counts, and other things to watch out for when buying sheets*, Wash. Post (Aug. 1, 2017), https://www.washingtonpost.com/lifestyle/home/false-thread-counts-and-other-things-to-watch-out-for-when-buying-sheets/2017/07/31/c090baea-6d58-11e7-b9e2-2056e768a7e5_story.html ("higher thread counts have long been associated with softer sheets").

---

[11] *Id.*

[12] *Id.*

[13] All prices are taken from Walmart's website. *See Hotel Style 800 Thread Count Cotton Rich Sateen Bed Sheet Set, King, Gray, Set of 6*, Walmart, https://www.walmart.com/ip/Hotel-Style-800-Thread-Count-Cotton-Rich-Sateen-Bed-Sheet-Set-Queen-White-Set-of-6/875488965 (last visited Aug. 5, 2023).

24.     Additionally, consumers regularly pay more for higher thread count sheets. *See Are Shoppers Short-Sheeted by Thread Count?*, ABC News (Nov. 22, 2002), https://abcnews.go.com/GMA/story?id=125380&page=1 ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheet that [Kathleen] Huddy [textile director for the Good Housekeeping Institute] claims is only a 300-count is $180 a set.").

**B.     Walmart artificially inflates the thread count of its Hotel Style Sheets.**

25.     The common and accepted methodology in the United States' woven fabrics industry for counting threads is to count the number of threads in two directions: (1) the warp (or vertical) direction, and (2) the filling (or horizontal) direction. The sum of each determines the final thread count.

26.     To count the warp and filling threads in a woven fabric and to determine its final thread count, the textile industry uses the American Society for Testing and Materials-International ("ASTM") Standard Test Method for End (Warp) and Pick (Filling) Count of Woven Fabrics, D3775-17.[14]

27.     ASTM 3775 is a regularly updated standard with updates occurring in 2002, 2003, 2007, 2008, and 2012. The current standard, D3775-17, became effective in 2017.

28.     ASTM International is a globally recognized leader in the development and delivery of voluntary consensus standards. Today, over 12,000 ASTM standards are used around the world to improve product quality, enhance health and safety, strengthen market access and trade, and build consumer confidence. ASTM International standards are "the tools of customer satisfaction and competitiveness for companies across a wide range of markets."[15]

29.     Section 9.1.3 of ASTM D3775-17 provides instruction on counting single-ply and multi-ply yarn. The accepted methodology requires: "When two yarns are laid-in together and parallel, count

---

[14] The designation "ASTM D3775-17" means that the standard was adopted in the year 2017.

[15] *Detailed Overview*, ASTM, https://www.astm.org/about/overview/detailed-overview.html (last visited Aug. 5, 2023).

each yarn separately, as a single unit, regardless of whether it is comprised of single or plied components."

30.     Previous versions of ASTM D3775 included instructions that required the same methodology for counting single-ply and multi-ply yarn in a woven fabric. ASTM D3775-03 included these instructions: "When two yarns are laid-in together and parallel, then each yarn is counted separately as single units regardless of whether they are comprised of single or plied components." ASTM D3775-03, Section 9.1.4.1. ASTM D3775-12 included these instructions: "When two yarns are laid-in together and parallel, count each yarn separately, as a single unit, regardless of whether it is comprised of single or plied components." ASTM D3775-12, Section 9.1.2.

31.     However, Walmart sells its Hotel Style Sheets with labeling that represents a substantially higher thread count than can be independently measured using the industry standard ASTM D3775-17.

32.     The Federal Trade Commission ("FTC") has determined that this practice is deceptive. In response to a request by the National Textiles Association ("NTA") for a staff opinion "regarding the appropriate way to disclose fabric 'thread count' (yarns per square inch) on labels or in advertising for household textile products, such as bed sheets," the FTC determined that "we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn."[16]

33.     In reaching this conclusion about the deceptive nature of misleading or false thread count representations, the FTC noted the importance of using and relying upon industry accepted methodologies for determining the applicable thread count:

---

[16] Letter from James Kohm, Assoc. Dir. for Enf't, U.S. Fed. Trade Comm'n, to E. Linwood Wright, III, Chairman, Textile Bedding Comm., Nat'l Textile Ass'n (Aug. 2, 2005), https://www.idfl.com/wp-content/uploads/2021/05/IDFL_Textiles_-_Thread_Count_FTC_Opinion_Letter.pdf.

A representation about thread count, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we give such procedures or practices great weight in determining whether the advertiser has met its substantiation burden.[17]

34.    The FTC further concluded in its 2005 opinion letter that consumers should be given accurate and truthful information about a product's thread count and the way in which that thread count was reached:

Based upon the ASTM standard . . . we believe that consumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn. A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: "300 thread count, 2 ply yarn." A representation of "600 thread count" for this same product would likely mislead consumers about the quality of the product being purchased."[18]

35.    In 2017, the United States International Trade Commission ("ITC") issued a general exclusion order "prohibiting the entry of certain woven textile fabrics and products containing same that are falsely advertised through a misrepresentation of thread count."[19]

36.    As part of its *Woven Textile* investigation, the ITC found "a widespread pattern of violation of Section 337" because of the importation and sale of "products that have claimed a higher thread count than actually contained in the products per testing performed under the ATSM D3775 standard." *In the Matter of Certain Woven Textile Fabrics and Products Containing Same*, Order No. 21, November 10, 2016, at 17, *available at* https://www.itcblog.com/images/order21in976.pdf.

---

[17] *Id.*

[18] *Id.*

[19] *See In the Matter of Certain Woven Textile Fabrics and Products Containing Same*, Investigation No. 337-TA-976 (Rescission), U.S. Int'l Trade Comm'n (Mar. 4, 2021), *available at* https://www.usitc.gov/secretary/fed_reg_notices/337/337_976_notice03042021sgl.pdf.

37. Walmart represents that its Hotel Style Sheets are 800 thread count, but when measured in accordance with the industry standard, ASTM 3775, the thread count for the Hotel Style Sheets is far less.

38. Walmart developed the labeling, packaging, and representations for its Hotel Style Sheets, including the specific representation and warranty that the Hotel Style Sheets were 800 thread count (*e.g.*, "800 THREAD COUNT"), which Walmart knew or should have known were false and/or misleading to consumers.

39. Walmart knew or should have known that its represented thread count for its Hotel Style Sheets is false and misleading, given the accepted industry standard as well as publicity of the same.[20]

40. In sum, Walmart's representations regarding the thread counts of its Hotel Style Sheets were deceptive and misleading according to both the industry standard and the FTC's guidelines for accurately describing thread counts.

41. Further, Walmart knew or had reason to know that the thread count represented on the Hotel Style Sheets was false and deceptive because the prices for the Hotel Style Sheets are lower than those for authentic bed sheets of the same or substantially similar blends with the advertised thread counts.

42. Despite this, Walmart sold the Hotel Style Sheets with the inflated thread count in order to obtain more business and sell more products in a competitive market.

---

[20] *See, e.g.*, Dru Sefton, *Some sheets have inflated thread count*, Seattle Times (Dec. 25, 2005), https://www.seattletimes.com/life/some-sheets-have-inflated-thread-count/ ("Instead of using one count per thread, some [companies] are counting individual yarn plies that make up each thread."); *Higher thread count doesn't guarantee better sheets There's no need to pay high prices for a higher thread count*, Consumer Reps. (Sept. 13, 2013), https://www.consumerreports.org/cro/news/2013/09/higher-thread-count-doesn-t-guarantee-better-sheets/index.htm ("manufacturers use thinner strands of fabric twisted together as if they were one" and then inflate the thread count "to make the number more attractive to the consumer").

43.     By improperly inflating the thread count of its Hotel Style Sheets, Walmart has engaged in a deceptive, unconscionable, and fraudulent practice to induce Plaintiffs and the putative classes to purchase the Hotel Style Sheets at an inflated price. Had Plaintiffs or the putative class members known of the inflated thread count on Walmart's Hotel Style Sheets, they would not have purchased them or would have only paid a lower price for the Product.

### PLAINTIFFS' PURCHASES OF WALMART'S HOTEL STYLE SHEETS

44.     From 2009-2023, while a resident of Addison, Illinois, Plaintiff Arnesia Thomas purchased Walmart's Hotel Style Sheets from Walmart locations in Addison, Bloomingdale, Elk Grove Village, Streamwood, and Glen Ellyn, Illinois for approximately $50-65.[21] Plaintiff Thomas would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for it, had she known that the Product did not have a thread count of 800. She believes bedding sheets with higher thread counts are of higher quality, so she always checks the advertised thread count of bedding sheets before deciding which to purchase.

45.     In or around April 2022, while a resident of Cahokia, Illinois, Plaintiff Pascha Perkins purchased Walmart's Hotel Style Sheets from the Cahokia Heights location for approximately $69.95. Plaintiff Perkins would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for it, had she known that the Product did not have a thread count of 800. Thread count is important to Plaintiff Perkins because she believes higher thread counts sheets are of better quality.

46.     In or around February 2022, while a resident of Sacramento, California, Plaintiff Vernita Faison purchased Walmart's Hotel Style Sheets from a local Walmart location for approximately $59. Plaintiff Faison would not have purchased the Hotel Style Sheets, or alternatively

---

[21] Upon information and belief, the price Plaintiff Thomas has paid Walmart for her Hotel Style Sheets has increased over the course of ten years due to inflation.

would not have paid a premium for it, had she known that the Product did not have a thread count of 800. Thread count is very important to Plaintiff Faison because she believes higher thread counts sheets are of better quality.

47. Accordingly, Plaintiffs, and all Class and Subclass members (defined below), lost money as a result of Walmart's omissions and misrepresentations regarding Walmart's Hotel Style Sheets. Alternatively, they did not receive the benefit-of-their-bargain and instead, received a product that was worth far less than the product as was represented.

48. If Walmart is allowed to continue selling its Hotel Style Sheets with the deceptive and unfair misrepresentation as to its thread count, described herein, reasonable consumers will continue to be induced into purchasing the Product with the reasonable belief that its thread count is 800.

## **CLASS ALLEGATIONS**

49. Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

50. This action is brought and may properly proceed as a class action pursuant to Federal Rule of Civil Procedure 23.

51. Plaintiffs Arnesia Thomas, Pascha Perkins, and Vernita Faison seek certification of a class (the "Class") that is composed of and defined as follows:

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Hotel Style Sheets[22] from Defendants Walmart Inc. and/or Wal-Mart Stores, Inc., in a Walmart store located in the United States.

52. Plaintiffs Arnesia Thomas and Pascha Perkins seek certification of an Illinois Subclass that is composed of and defined as follows:

---

[22] "Hotel Style Sheets" are the bed sheet sets that Walmart manufactures, labels, distributes, advertises, and sells under its exclusively owned brand name "Hotel Style" at Walmart locations throughout the country and for which Walmart represents directly on their packaging and/or labeling that their thread count is 800. *See supra* ¶ 2.

---

> All persons in Illinois who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Hotel Style Sheets from Defendants Walmart Inc. and/or Wal-Mart Stores, Inc., in a Walmart store located in the State of Illinois.

53.     Plaintiff Vernita Faison seeks certification of a California Subclass that is composed of and defined as follows:

> All persons in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased Hotel Style Sheets from Defendants Walmart Inc. and/or Wal-Mart Stores, Inc., in a Walmart store located in the State of California.

54.     Excluded from the Class, Illinois Subclass, and California Subclass (collectively, the "Classes") are Walmart's officers and directors and current or former employees of Walmart and their immediate family members, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and staff.

55.     **Ascertainability**. Plaintiffs are informed and believe that the identities of members of the Classes are ascertainable through Walmart's records.

56.     **Numerosity**. The Class and Subclasses number over one-hundred (100) persons and are so numerous that joinder of all members is impracticable. The exact number of members can be readily determined from information in the possession and control of Walmart.

57.     **Commonality and Predominance**. Walmart has engaged in the same conduct regarding all of the other members of the Classes. The injuries and damages to these class members also present questions of law and fact that are common to each class member, and that are common to the Classes as a whole and will drive the litigation and predominate over any questions affecting only individual class members. Numerous common issues of fact and law exist, including, without limitation:

a.   Whether Walmart's Hotel Style Sheets have a thread count of 800 according to accepted industry standards;

b.   Whether Walmart engaged in omissions or misrepresentations regarding the thread count of its Hotel Style Sheets;

c.   Whether Walmart's conduct is likely to deceive an objectively reasonable consumer;

d.   Whether Walmart's omissions and misrepresentations regarding the thread count of its Hotel Style Sheets constitute unfair or deceptive acts or practices in violation of state consumer protection laws;

e.   Whether Walmart has violated and continues to violate the Illinois Consumer Fraud and Deceptive Business Practices Act by misrepresenting to consumers that its Hotel Style Sheets have a thread count of 800;

f.   Whether Walmart has violated and continues to violate the "unlawful" prong of California's Unfair Competition Law by violating California's False Advertising Law and the California Legal Remedies Act when it represented to consumers that its Hotel Style Sheets have a thread count of 800;

g.   Whether Walmart has violated and continues to violate the "unfair" prong of California's Unfair Competition Law by falsely representing an inflated thread count on its Hotel Style Sheets;

h.   Whether Walmart has violated and continues to violate the "fraudulent" prong of California's Unfair Competition Law by falsely representing that its Hotel Style Sheets have a thread count of 800;

i. Whether Walmart represented that its Hotel Style Sheets had characteristics, uses, and/or benefits that they did not have;

j. Whether Walmart represented that its Hotel Style Sheets were of a particular standard or quality, when they are of another;

k. Whether Walmart advertised goods or services with intent not to sell them as advertised when it advertised its Hotel Sheets as 800 thread count;

l. Whether Walmart's direct representation that its Hotel Style Sheets are 800 thread count (*e.g.*, "800 THREAD COUNT") on its packaging and/or labeling constitutes an express warranty;

m. Whether Walmart has been unjustly enriched;

n. Whether Plaintiffs and the Class and Subclass members were harmed by Walmart's omissions or misrepresentations regarding the thread count of its Hotel Style Sheets;

o. Whether Walmart should be required to make restitution to Plaintiffs and the Classes;

p. Whether Walmart should be required to pay damages to Plaintiffs and the Classes; and

q. Whether exemplary or punitive damages should be assessed against Walmart.

58. **Typicality**. The claims, defenses, and injuries of the representative Plaintiffs are typical of the claims, defenses, and injuries of all those in the Class and Illinois and California Subclasses that they respectively represent, and the claims, defenses, and injuries of each class member are typical of those of all other members in the respective classes. Plaintiffs' claims all arise from Walmart's practice

of inflating the thread count of its Hotel Style Sheets on their packaging and/or labeling. This practice is applicable to all Class and Subclass members.

59. **Adequacy**. Plaintiffs are all members of the Class and will fully and adequately protect and represent the interests of those Class members because there are no conflicts between Plaintiffs and those Class members, and because Plaintiffs' counsel has the experience and skill to zealously advocate for the interests of the Class members. Plaintiffs Arnesia Thomas and Pascha Perkins are members of the Illinois Subclass and will fully and adequately represent the interests of those Subclass members. Plaintiff Faison is a member of the California Subclass and will fully and adequately represent the interests of those Subclass members.

60. **Superiority**. There are substantial benefits to proceeding as a class action that render proceeding as the Classes superior to any alternatives, including that it will provide a realistic means for members of the Classes to recover damages; the damages suffered by members of the Classes may be relatively small; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many members of the Classes may be unaware that they have legal recourse for the conduct alleged herein; and issues common to members of the Classes can be effectively managed in a single proceeding. Further, maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein. Individualized litigation presents a potential for inconsistent or contradictory judgments as well as substantial risk of adjudication with respect to individual members of each respective class which, as a practical matter, would be dispositive of the interests of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests. Plaintiffs know of no difficulty that could be encountered in the management of this litigation that would preclude its maintenance as a class action.

**CLAIMS**

**FIRST CLAIM FOR RELIEF**
**Illinois Consumer Fraud and Deceptive Business Practices Act**
**Misrepresentation and/or Omission**
**On Behalf of the Illinois Subclass**

61.     Plaintiffs Arnesia Thomas and Pascha Perkins reallege and incorporate herein all previous paragraphs of this Complaint.

62.     Plaintiffs Arnesia Thomas and Pascha Perkins bring this claim on behalf of themselves and the Illinois Subclass.

63.     At all times relevant hereto, Plaintiffs Thomas and Perkins, the Illinois Subclass members, and Walmart were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations. 815 Ill. Comp. Stat. 505/1(c).

64.     Plaintiffs Thomas and Perkins and the Illinois Subclass members are also consumers as defined in 815 Ill. Comp. Stat. 505/1(e).

65.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits "unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce[.]" 815 Ill. Comp. Stat. 505/2.

66.     Under the ICFA, "trade" or "commerce" is the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. 505/1(f).

67.     At all times relevant hereto, Walmart engaged in the advertising, offering for sale, sale, and/or distribution of property.

68.    Plaintiffs Thomas and Perkins and the Illinois Subclass members purchased the Hotel Style Sheets at issue herein for their use or that of members of their households.

69.    The ICFA, 815 Ill Comp. Stat. 505/1, *et seq.*, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

70.    Walmart, by and through its employees, agents, and/or servants, engaged in unlawful schemes and courses of conduct with regard to the sale and marketing of its Hotel Style Sheets through the misrepresentation on the Product's packaging and/or labeling that the Product had a thread count of 800 when its actual thread count is far lower as well as the omission, suppression, and/or concealment from Plaintiffs Thomas and Perkins and the Illinois Subclass of the actual thread count. Walmart thus misrepresented the quality of the Product and deceived Plaintiffs Thomas and Perkins and the Illinois Subclass.

71.    The fact that Walmart misrepresented, concealed, suppressed, or omitted, as alleged above, was material in that thread count is the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase the Hotel Style Sheets.

72.    Walmart's misconduct, including its misrepresentations and omission of material facts alleged herein, took place in connection with Walmart's course of trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

73.    Walmart engaged in such unlawful course of conduct with the intent to induce Plaintiffs Thomas and Perkins and the Illinois Subclass members to purchase the Hotel Style Sheets and pay

premiums above those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

74.     Plaintiffs Thomas and Perkins and the Illinois Subclass members were damaged by such conduct in that they were charged premiums different and higher than those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

75.     The deceptive acts and/or practices of Walmart alleged herein occurred in connection with Walmart's conduct of trade and commerce in Illinois.

76.     Walmart intended for Plaintiffs Thomas and Perkins and the Illinois Subclass members to purchase its Hotel Style Sheets in reliance on Walmart's deceptive acts and/or practices.

77.     Plaintiffs Thomas and Perkins and the Illinois Subclass members would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

78.     The deceptive acts and/or practices of Walmart violate the ICFA, 815 Ill Comp. Stat. 505/2.

79.     As a direct and proximate result of the deceptive acts and/or practices of Walmart, Plaintiffs Thomas and Perkins and the Illinois Subclass were damaged in that they did not receive the benefit of their bargain and paid premiums above those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

80.     Plaintiff Thomas and Perkins and the Illinois Subclass members request that this Court enjoin Walmart from continuing to violate the ICFA as discussed herein. Plaintiffs Thomas and Perkins and the Illinois Subclass members also seek all damages permitted by law, including compensation for the monetary difference between the Hotel Style Sheets as warranted and as sold,

incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, prejudgment interest, attorneys' fees, and all other relief permitted by law.

**SECOND CLAIM FOR RELIEF**
**Illinois Consumer Fraud and Deceptive Business Practices Act**
**Unfairness**
**On Behalf of the Illinois Subclass**

81.     Plaintiffs Arnesia Thomas and Pascha Perkins reallege and incorporate herein all previous paragraphs of this Complaint.

82.     Plaintiffs Thomas and Perkins bring this claim on behalf of themselves and the Illinois Subclass.

83.     Plaintiffs Thomas and Perkins bring this Claim in the alternative to the First Claim for Relief.

84.     At all times relevant hereto, Plaintiffs Thomas and Perkins, the Illinois Subclass members, and Walmart were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations. 815 Ill. Comp. Stat. 505/1(c).

85.     Plaintiffs Thomas and Perkins and the Illinois Subclass members are also consumers as defined in 815 Ill. Comp. Stat. 505/1(e).

86.     The ICFA prohibits "unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce[.]" 815 Ill. Comp. Stat. 505/2.

87.     Under the ICFA, "trade" or "commerce" is the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. 505/1(f).

88.     At all times relevant hereto, Walmart engaged in the advertising, offering for sale, sale, and/or distribution of property.

89.     Plaintiffs Thomas and Perkins and the Illinois Subclass members purchased the Hotel Style Sheets at issue herein for their use or that of members of their households.

90.     The ICFA, 815 Ill Comp. Stat. 505/1, *et seq.*, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

91.     Walmart, by and through its employees, agents, and/or servants, engaged in unlawful schemes and courses of conduct with regard to the sale and marketing of its Hotel Style Sheets by unfairly representing on the Product's packaging and/or labeling that the Product had a thread count of 800 when its actual thread count is far lower. Walmart engaged in such unlawful course of conduct with the intent to induce Plaintiffs Thomas and Perkins and the Illinois Subclass members to purchase its Hotel Style Sheets and pay premiums above those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

92.     Walmart's acts or practices were "unfair" as they offend public policy, are immoral, unethical, oppressive, or unscrupulous, and/or cause substantial injury to consumers.

93.     Walmart's acts or practices offend the clearly stated public policy prohibiting false advertising in its misrepresenting the thread count of its Hotel Style Sheets as set forth in, *inter alia*, the Federal Trade Commission's 2005 staff opinion regarding inflated thread counts (*supra* ¶ 32) and

the United States International Trade Commission's 2017 general exclusion order prohibiting entry of certain products that misrepresent thread count (*supra* ¶ 35).

94.     Walmart's acts or practices are immoral and unethical as they serve only to benefit Walmart to the detriment of the consuming public.

95.     Walmart's acts or practices were likely to cause, and did cause, substantial injury to consumers as they resulted in Walmart receiving revenue to which Walmart is not entitled. The injuries caused by Walmart's acts or practices, namely consumers' monetary losses, are not outweighed by any countervailing benefit to consumers or competition. Walmart's unfair acts served no purpose other than to increase its own profits.

96.     These injuries were not reasonably avoidable. Because Walmart was the sole source of material information that Walmart failed to disclose, consumers could not have had reason to anticipate the impending harm and thus avoid their injuries.

97.     Upon information and belief, Walmart knew or should have known that, by representing on its Hotel Style Sheets' packaging and/or labeling that the Product had a thread count of 800, they were charging premiums to Plaintiffs Thomas and Perkins and the Illinois Subclass above those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

98.     Walmart knew or should have known that its representation of the Hotel Style Sheets' thread count as 800 was not based on accepted industry standards.

99.     Plaintiffs Thomas and Perkins and the Illinois Subclass members were damaged by such conduct in that they were charged premiums different and higher than those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

100. Walmart's unfair acts and/or practices alleged herein took place in connection with Walmart's course of trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

101. Walmart intended for Plaintiffs Thomas and Perkins and the Illinois Subclass members to purchase its Hotel Style Sheets in reliance on Walmart's unfair acts and/or practices.

102. The fact that Walmart represented the thread count of its Hotel Style Sheets as 800 was material in that thread count is the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase the Hotel Style Sheets.

103. Plaintiffs Thomas and Perkins and the Illinois Subclass members would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

104. The unfair acts and/or practices of Walmart violate ICFA, 815 Ill. Comp. Stat. 505/2.

105. As a direct and proximate result of the unfair acts and/or practices of Walmart, Plaintiffs Thomas and Perkins and the Illinois Subclass were damaged in that they did not receive the benefit of their bargain and paid premiums above those charged to consumers for bedding sheets of the same or substantially similar blends with lower thread counts.

106. Plaintiff Thomas and Perkins and the Illinois Subclass members request that this Court enjoin Walmart from continuing to violate the ICFA as discussed herein. Plaintiffs Thomas and Perkins and the Illinois Subclass members also seek all damages permitted by law, including compensation for the monetary difference between the Hotel Style Sheets as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, prejudgment interest, attorneys' fees, and all other relief permitted by law.

**THIRD CLAIM FOR RELIEF**
**California's Unfair Competition Law**
**Bus & Prof. Code, §§ 17200 *et seq*.**
**On Behalf of the California Subclass**

107.    Plaintiff Faison realleges and incorporates herein all previous paragraphs of this Complaint.

108.    Plaintiff Faison brings this claim on behalf of herself and the California Subclass.

109.    At all times relevant hereto, Walmart's alleged actions constitute a business practice under California law.

110.    The California Unfair Competition Law ("UCL") defines unfair business competition to include "unlawful, unfair or fraudulent" acts or practices, as well as any unfair, deceptive untrue, or misleading advertising. Bus & Prof. Code, § 17200.

**A.    "Unlawful" Prong of the UCL**

111.    Plaintiff Faison realleges and incorporates herein all previous paragraphs of this Complaint.

112.    A business act or practice is "unlawful" if it violates any established state or federal law.

113.    As detailed in Plaintiff Faison's Fourth Claim for Relief, below, Cal. Bus. & Prof. § 17500 (California's False Advertising Law) prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, making untrue or misleading statements in advertising.

114.    Walmart has violated and continues to violate the "unlawful" prong of the UCL by violating California's False Advertising Law. *See* ¶¶ 138-46, *infra*.

115.    Moreover, as detailed in Plaintiff's Fifth Claim for Relief, below, Cal. Civ. Code §1770 (California Legal Remedies Act) Section (a)(5) prohibits a business from "[r]epresenting that goods . . . have . . . characteristics, . . . uses,  [or] benefits… that they do not have"; Section (a)(7) prohibits a

business from representing that its goods are "of a particular standard [or] quality . . . if they are of another"; and Section (a)(9) prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised."

116.　Walmart has violated and continues to violate the "unlawful" prong of the UCL by violating the CLRA. *See* ¶¶ 147-54, *infra*.

117.　Plaintiff Faison and the California Subclass members would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

118.　As a direct and proximate result of Walmart's violations, Plaintiff Faison and the California Subclass members have suffered injury in fact in an amount to be established at trial.

119.　Through its unlawful acts and practices, Walmart has obtained, and continues to unfairly obtain, money from members of the California Subclass. As such, Plaintiff Faison requests that this Court restore this money to Plaintiff Faison and all members of the California Subclass, disgorge the profits Walmart has made on its Hotel Style Sheets, and enjoin Walmart from continuing to violate the UCL as discussed herein.

**B.　"Unfair" Prong of the UCL**

120.　Plaintiff Faison realleges and incorporates herein all previous paragraphs of this Complaint.

121.　A business act or practice is "unfair" if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged injured party.

122.　Walmart has violated and continues to violate the "unfair" prong of the UCL by falsely representing an inflated thread count on its Hotel Style Sheets.

123.    These acts and practices are unfair because, by misrepresenting and inflating the thread count of the Hotel Style Sheets, they are likely to cause consumers to falsely believe that Walmart is offering a superior product.

124.    The gravity of the harm to Plaintiff Faison and the California Subclass members outweighs any conceivable reasons, justifications, and/or motives of Walmart to overstate and/or inflate the thread count of its Hotel Style Sheets.

125.    Plaintiff Faison and the California Subclass could not have reasonably avoided the injuries suffered because they lack the skill, knowledge, resources, equipment, and opportunity necessary to find the true thread count of the Hotel Style Sheets.

126.    Plaintiff Faison and the California Subclass members would not have purchased the sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

127.    As a direct and proximate result of Walmart's violations, Plaintiff Faison and the California Subclass members have suffered injury in fact in an amount to be established at trial. Plaintiff Faison and the California Subclass paid an excessive price for a product that was inherently different than the product they thought they were buying.

128.    Through its unlawful acts and practices, Walmart has obtained, and continues to unfairly obtain, money from members of the putative subclass. As such, Plaintiff Faison requests that this Court restore this money to Plaintiff Faison and all California Subclass members, disgorge the profits Walmart has made on its Hotel Style Sheets, and enjoin Walmart from continuing to violate the UCL as discussed herein.

## C.    "Fraudulent" Prong of the UCL

129.    Plaintiff Faison realleges and incorporates herein all previous paragraphs of this Complaint.

130.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

131.    Walmart represented that the Hotel Style Sheets had a specific thread count of 800 with the intention that consumers would rely on those representations when making their purchase.

132.    Walmart's representation that the Hotel Style Sheets had a thread count of 800 was false and Walmart either knew or should have known of this falsity.

133.    Walmart's thread count representation on the packaging and/or labeling of its Hotel Style Sheets was material to the purchase of the product by Plaintiff Faison and the California Subclass members.

134.    Walmart's misrepresented thread count on the packaging and/or labeling of the Hotel Style Sheets was relied upon by Plaintiff Faison and the California Subclass and continues to be relied upon by consumers.

135.    Plaintiff Faison and the California Subclass members would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

136.    As a direct and proximate result of Walmart's violations, Plaintiff Faison and the California Subclass members have suffered injury in fact in an amount to be established at trial.

137.    Through its fraudulent acts and practices, Walmart has obtained, and continues to unfairly obtain, money from members of the California Subclass. As such, Plaintiff Faison requests that this Court restore this money to Plaintiff Faison and all California Subclass members, disgorge

the profits Walmart has made on its Hotel Style Sheets, and enjoin Walmart from continuing to violate the UCL as discussed herein.

**FOURTH CLAIM FOR RELIEF**
**California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.***
**On Behalf of the California Subclass**

138.    Plaintiff Faison realleges and incorporates herein all previous paragraphs of this Complaint.

139.    Plaintiff Faison brings this claim on behalf of herself and the California Subclass.

140.    California's False Advertising Law prohibits unfair, deceptive, untrue, or misleading advertising.

141.    Walmart has offered for sale the Hotel Style Sheets with a deceptive, false, and/or misleading representation on the Product's packaging and/or labeling that the Product had a thread count of 800 when its actual thread count is far lower.

142.    These deceptive advertisements and product specifications, as described above, were made in the State of California.

143.    Walmart's representation that the Hotel Style Sheets have a thread count of 800 was intended to induce the public to purchase the Product.

144.    Walmart's representation that the Hotel Style Sheets had a thread count of 800 was false and Walmart either knew or should have known of this falsity.

145.    Plaintiff Faison and the California Subclass members would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

146.    Through its unlawful acts and practices, Walmart has obtained, and continues to unfairly obtain, money from members of the putative California Subclass. As such, Plaintiff Faison requests that this Court restore this money to her and all California Subclass members, disgorge the

profits Walmart has made on its Hotel Style Sheets, and enjoin Walmart from continuing to violate California's False Advertising Law as discussed herein.

### FIFTH CLAIM FOR RELIEF
### Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*
### On Behalf of the California Subclass

147. Plaintiff Faison realleges and incorporates herein all previous paragraphs of this Complaint.

148. Plaintiff Faison brings this claim on behalf of herself and the California Subclass.

149. At all relevant times hereto, including at all times during the transactions between Plaintiff Faison and Walmart, and the consumer transactions between the California Subclass members and Walmart, Plaintiff Faison and each of the California Subclass members were consumers, and the transactions were consumer transactions within the meaning of the Consumer Legal Remedies Act ("CLRA").

150. In connection with the consumer transactions alleged herein, including the consumer transaction between Plaintiff Faison and Walmart, and the consumer transactions between the California Subclass members and Walmart, Walmart's representations, acts, and/or practices regarding the represented thread count on the packaging and/or labeling of the Hotel Style Sheets were unfair and deceptive, to wit: Walmart represented on the packaging and/or labeling of the Hotel Style Sheets that the Product contained a thread count of 800 when its actual thread count was far lower.

151. Walmart's deceptive representation was material to the consumer transactions between Plaintiff Faison and Walmart, as well as between the California Subclass members and Walmart.

152. Plaintiff Faison and the California Subclass members would not have purchased the sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

153.    As a result of the conduct described herein, Walmart has engaged in unfair and deceptive sales practices in violation of the CLRA, to wit:

a.  Walmart, by representing that the Hotel Style Sheets had a thread count of 800 when the actual thread count was far lower, was thus representing that its goods had characteristics, uses, and/or benefits that they did not have, which is a violation of CLRA §1770(a)(5);

b.  Walmart, by representing that the Hotel Style Sheets had a thread count of 800 when the actual thread count was far lower, was thus representing that its Hotel Style Sheets were of a particular standard or quality, when they are of another, which is a violation of CLRA §1770(a)(7).

c.  Walmart, by representing that the Hotel Style Sheets had a thread count of 800 when the actual thread count was far lower, was thus advertising goods or services with intent not to sell them as advertised, which is a violation of CLRA §1770(a)(9).

154.    As a direct and proximate result of Walmart's violations, Plaintiff Faison and the California Subclass members have suffered injury in fact in an amount to be established at trial. Through its unlawful acts and practices, Walmart has obtained, and continues to unfairly obtain, money from members of the California Subclass. As such, Plaintiff Faison requests that this Court enjoin Walmart from continuing to violate the CLRA as discussed herein.[23]

**SIXTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**On Behalf of the Classes**

155.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

156.    Plaintiffs bring this claim on behalf of themselves and the Classes.

157.    Plaintiffs, and each member of the putative Classes, purchased the Hotel Style Sheets from Walmart.

---

[23] Plaintiff Faison and the California Subclass expressly reserve their right to amend this cause of action to claim damages, including exemplary and punitive damages, if Walmart fails to remedy its practices within 30 days of service of the CLRA notice. *See* Cal. Civ. Code, § 1782(d) (expressly permitting amendment to claim damages at least 30 days after service).

158.    In connection with those purchases, Walmart made promises and affirmations of fact on the packaging and/or labeling of the Hotel Style Sheets, as alleged above.

159.    Walmart's promises and affirmations of fact made through and represented on its Hotel Style Sheets' packaging and/or labeling constitute express warranties.

160.    The written express warranty on the Product's packaging includes the direct representation that the Hotel Style Sheets are 800 thread count (*e.g.*, "800 THREAD COUNT").

161.    This affirmation of fact made by Walmart was made to induce Plaintiffs and the putative Class and Illinois and California Subclass members to purchase the Hotel Style Sheets.

162.    Alternatively, Walmart's representations, descriptions, and specifications of the quality, durability, longevity, and fitness of their Hotel Style Sheets, namely that the bed sheets were 800 thread count, became part of the basis of the bargain, creating express written warranties that the Products purchased by Plaintiffs and the putative Classes would conform to those representations, descriptions, and specifications.

163.    Plaintiffs and the putative Class and Illinois and California Subclass members relied on Walmart's affirmation of fact that the Hotel Style Sheets were 800 thread count when purchasing the Product.

164.    Plaintiffs and the putative Class and Illinois and California Subclass members would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

165.    All conditions precedent to Walmart's liability under the warranty have been performed by Plaintiffs and the putative Class and Illinois and California Subclass members or have been waived.

166.    Walmart breached the terms of the express warranty because the Products did not conform to the description provided by Walmart, to wit: that the Hotel Style Sheets were 800 thread count.

167.    Plaintiffs and the members of the putative Class and Illinois and California Subclasses were injured as a result of Walmart's breach of their express warranties about the Hotel Style Sheets.

168.    As a result of the foregoing, Plaintiffs and the putative Class and Illinois and California Subclass members have suffered damages in that the value of the Hotel Style Sheets that they purchased was less than warranted by Walmart.

169.    Plaintiffs and the members of the Classes seek all damages permitted by law, including compensation for the monetary difference between the Hotel Style Sheets as warranted and as sold, incidental and consequential damages, in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

**SEVENTH CLAIM FOR RELIEF**
**Common Law Fraud**
**On Behalf of the Classes**

170.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

171.    Plaintiffs bring this claim on behalf of themselves and the Classes.

172.    Walmart represented to Plaintiffs and all putative Class and Illinois and California Subclass members on the Hotel Style Sheets' labeling and/or packaging that the Hotel Style Sheets had a thread count of 800 when the actual thread count was far lower.

173.    Walmart knew, or should have known, that the misrepresentation alleged herein was false at the time it made the misrepresentation and/or it acted recklessly in making such a misrepresentation.

174. Walmart's misrepresentation of the thread count on its Hotel Style Sheets' labeling and/or packaging was material to consumers because the representation was directly relevant to the value and quality of the Products.

175. Walmart intended that Plaintiffs and the putative Class and Illinois and California Subclass members rely on the misrepresentations alleged herein and purchase the Hotel Style Sheets.

176. Plaintiffs and the putative Class and Illinois and California Subclass members reasonably and justifiably relied on Walmart's misrepresentations when purchasing the Hotel Style Sheets, were unaware of the existence of facts that Walmart suppressed and failed to disclose, and, had the facts been known, would not have purchased the Products and/or would not have purchased them at the prices at which they were offered.

177. Plaintiffs and the putative Class and Illinois and California Subclass members seek all damages permitted by law, including compensation for the monetary difference between the Hotel Style Sheets as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

**EIGHTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**
**On Behalf of the Classes**

178. Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

179. Plaintiffs bring this claim on behalf of themselves and the Classes.

180. Walmart, directly or through its agents and employees, falsely represented that the Hotel Style Sheets were 800 thread count when the actual thread count was far lower.

181. Walmart's misrepresentation related to the thread count of the Hotel Style Sheets was a misrepresentation of a material fact made directly to Plaintiffs and the putative Class and Illinois and California Subclass members on the Product's packaging and/or labeling, as described above.

182.    Walmart had no reasonable grounds for believing these representations to be true when it made them.

183.    In making these representations, Walmart intended to induce the reliance of Plaintiffs and the putative Class and Illinois and California Subclass members.

184.    Plaintiffs and the putative Class and Illinois and California Subclass members reasonably and justifiably relied on Walmart's misrepresentations when purchasing the Products and, had the facts been known, they would not have purchased the Products and/or would not have purchased them at the prices at which they were offered.

185.    As a direct and proximate result of Walmart's negligent misrepresentations, Plaintiffs and the putative Class and Illinois and California Subclass members have been damaged in an amount to be established at trial including compensation for the monetary difference between the Hotel Style Sheets as warranted and as sold, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, attorneys' fees, and all other relief permitted by law.

**NINTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**On Behalf of the Classes**

186.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

187.    Plaintiffs bring this claim on behalf of themselves and the Classes.

188.    This claim asserts that it is unjust to allow Walmart to retain profits from its deceptive, misleading, and unlawful conduct alleged herein.

189.    Walmart charged Plaintiffs and the putative Class and Illinois and California Subclass members for the Hotel Style Sheets that Walmart represented were 800 thread count.

190.    As detailed above, the Hotel Style Sheets do not have a thread count of 800 and, instead, have a far lower thread count.

191.     Plaintiffs and the putative Class and Illinois and California Subclass members would not have purchased the Hotel Style Sheets, or alternatively would not have paid a premium for them, had Walmart not misrepresented their thread count as 800.

192.     Because the Hotel Style Sheets misrepresented their thread count, Walmart collected profit for this misrepresentation.

193.     As a result of these actions, Walmart received benefits under circumstances where it would be unjust to retain these benefits.

194.     Walmart has knowledge or an appreciation of the benefit conferred upon it by Plaintiffs and the putative Class and Illinois and California Subclass members.

195.     Walmart has been unjustly enriched.

196.     Plaintiffs and the putative Class and Illinois and California Subclass members are entitled to restitution and/or disgorgement of all profits, benefits, and other compensation obtained and retained by Walmart from its deceptive, misleading, and unlawful conduct including compensation for the monetary difference between the Hotel Style Sheets as warranted and as sold.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiffs demand judgment as follows:

1.     For an Order determining at the earliest possible time that this matter may proceed as a class action under Federal Rule of Civil Procedure 23 and certifying this case as such;

2.     For compensatory damages, restitution, and/or recovery of such relief as permitted by law in kind and amount;

3.     For punitive damages pursuant to common law and/or statutory law;

4.     For reasonable costs and attorneys' fees necessarily incurred herein pursuant to common law and/or statutory law;

5. For trial by jury on all issues; and

6. For such other or further relief as this Honorable Court deems Plaintiffs and the putative

Classes are entitled.

Date: August 10, 2023

        */s/ Andrea R. Gold*
        Andrea R. Gold (Bar No. 6282969)
        *agold@tzlegal.com*
        Leora N. Friedman (*pro hac vice*
        forthcoming)
        *lfriedman@tzlegal.com*
        **TYCKO & ZAVAREEI LLP**
        2000 Pennsylvania Avenue NW, Suite 1010
        Washington, D.C. 20006
        Telephone: (202) 973-0900
        Facsimile: (202) 973-0950

        Frank Bartela (*pro hac vice* forthcoming)
        *fbartela@dworkenlaw.com*
        Nicole T. Fiorelli (*pro hac vice*
        forthcoming)
        *nfiorelli@dworkenlaw.com*
        **DWORKEN & BERNSTEIN**
        60 South Park Place
        Painesville, OH 44077
        Telephone: (440) 352-3391

        *Counsel for Plaintiffs Arnesia Thomas,*
        *Pascha Perkins, and Vernita Faison*