# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARNESIA THOMAS, PASCHA PERKINS, and VERNITA FAISON, individually and as a representative of all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>WALMART INC. and WAL-MART STORES, INC.,<br><br>  Defendants. | Civil No. 1:23-cv-05315<br>District Judge: Jeremy C. Daniel<br>Magistrate Judge: Heather K. McShain |

**DEFENDANTS WALMART INC.'S AND WAL-MART STORES, INC.'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS
<u>ACTION COMPLAINT & MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ALLEGATIONS OF THE AMENDED COMPLAINT ....................................................... 1

    A.     Walmart's Hotel Style Sheets ................................................................... 1

    B.     Plaintiffs' Purchases .................................................................................. 2

    C.     Plaintiffs' Claims ....................................................................................... 3

LEGAL STANDARD ........................................................................................................... 4

ARGUMENT ......................................................................................................................... 5

I.      This Court Lacks Personal Jurisdiction Over Plaintiff Faison's Claims. ........................... 5

II.     Plaintiffs Cannot Bring Claims Regarding Sheets They Did Not Purchase. ..................... 7

III.    Plaintiffs Do Not Allege Sufficient Facts to Support Their Conclusory Allegation
        That the Bed Sheets Have an Inflated Thread Count ........................................................ 9

IV.    Plaintiffs Do Not Sufficiently Allege an Economic Injury ............................................ 11

V.     Plaintiffs' Unjust Enrichment Claim Fails Along with Their Fraud Claims. ................... 14

VI.    Plaintiffs Fail to State a Claim for Breach of Express Warranty. .................................... 14

VII.   Plaintiffs' Request for Injunctive Relief Should Be Denied ........................................... 15

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................4

*Bakopoulos v. Mars Petcare US, Inc.*,
   2021 WL 2915215 (N.D. Ill. July 12, 2021)..........................................5, 6, 7, 8

*Beckman v. Arizona Canning Co., LLC*,
   2017 WL 4227043 (S.D. Cal. Sept. 21, 2017)............................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................4

*Benson v. Fannie May Confections Brands, Inc.*,
   944 F.3d 639 (7th Cir. 2019) ....................................................................4

*Bilodeau v. McAfee, Inc.*,
   2013 WL 3200658 (N.D. Cal. June 24, 2013).........................................11

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*,
   582 U.S. 255 (2017)..................................................................................6

*Brown v. Madison Reed, Inc.*,
   622 F. Supp. 3d 786 (N.D. Cal. 2022) .....................................................5

*Calderon v. Procter & Gamble Co.*,
   --- F. Supp. 3d ---, 2023 WL 3627797 (N.D. Ill. May 24, 2023)............15

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) ....................................................................4

*Cowen v. Lenny & Larry's, Inc.*,
   2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)............................................8

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...............................................................................5, 6

*Daugherty v. McCluskey*,
   2021 WL 949336 (N.D. Ill. Mar. 12, 2021).............................................13

*Dickman v. Rosado*,
   2019 WL 3728698 (N.D. Ill. Aug. 1, 2019) .............................................4

*Doe v. Columbia Coll. Chi.*,
　933 F.3d 849 (7th Cir. 2019) ................................................................4

*Dolch v. Linen Source Inc.*,
　2008 WL 11336301 (M.D. Fla. Jan. 3, 2008) ....................................10

*Fullerton v. Corelle Brands, LLC*,
　2019 WL 4750039 (N.D. Ill. Sept. 30, 2019) .......................................7

*Gamez v. Summit Nats. Inc.*,
　2022 WL 17886027 (C.D. Cal. Oct. 24, 2022) ...................................11

*Hawes v. Macy's Stores W. Inc.*,
　2022 WL 815298 (S.D. Ohio Mar. 16, 2022) ......................................15

*Hawkins v. Coca-Cola Co.*,
　654 F. Supp. 3d 290 (S.D.N.Y. Feb. 7, 2023) ....................................10

*Hill v. AQ Textiles LLC*,
　2021 WL 1026740 (M.D.N.C. Mar. 17, 2021) ..............................10, 14

*Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*,
　623 F. Supp. 3d 857 (N.D. Ill. 2022) ...................................................4

*Ibarolla v. Nutrex Rsch., Inc.*,
　2012 WL 5381236 (N.D. Ill. Oct. 31, 2012).....................................8, 14

*James v. City of Evanston*,
　2021 WL 4459508 (N.D. Ill. Sept. 29, 2021) .......................................1

*Karlinski v. Costco Wholesale Corp.*,
　616 F. Supp. 3d 753 (N.D. Ill. 2022) .................................................14

*Kipp v. Ski Enter. Corp. of Wis.*,
　783 F.3d 695 (7th Cir. 2015) ................................................................5

*Kurt v. Platinum Supplemental Ins., Inc.*,
　2021 WL 3109667 (N.D. Ill. July 22, 2021).........................................7

*Lemus v. Rite Aid Corp.*,
　613 F. Supp. 3d 1269 (C.D. Cal. 2022) .............................................11

*Martin v. Living Essentials, LLC*,
　160 F. Supp. 3d 1042 (N.D. Ill. 2016) .................................................1

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
　20 F.4th 311 (7th Cir. 2021) ..............................................................11

iv

*McDonnell v. Nature's Way Prod., LLC,*
2017 WL 4864910 (N.D. Ill. Oct. 26, 2017)......................................................................7

*Media Bank, LLC v. SCOTTeVEST, Inc.,*
2020 WL 6825691 (N.D. Ill. Nov. 20, 2020) ....................................................................5

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston*
*Metroplex, P.A.,*
623 F.3d 440 (7th Cir. 2010) ............................................................................................6

*Moorman Mfg. Co. v. Nat'l Tank Co.,*
435 N.E.2d 443 (Ill. 1982) ..............................................................................................14

*Muir v. NBTY, Inc.,*
2016 WL 5234596 (N.D. Ill. Sept. 22, 2016) ..............................................................9, 15

*Nautilus Ins. Co. v. COA, Inc.,*
2023 WL 2933055 (N.D. Ill. Apr. 13, 2023) ................................................................5, 6

*O'Connor v. Ford Motor Co.,*
477 F. Supp. 3d 705 (N.D. Ill. 2020) ................................................................................5

*Ratkovich ex rel. Ratkovich v. Smithkline,*
711 F. Supp. 436 (N.D. Ill. 1989) ...................................................................................15

*Willard v. Tropicana Mfg. Co., Inc.,*
577 F. Supp. 3d 814 (N.D. Ill. 2021) ................................................................................9

**Statutes**

Cal. Bus. & Prof. Code § 17204 ...................................................................................................12

Cal. Bus. & Prof. Code § 17535 ...................................................................................................12

Cal. Com. Code § 2607...................................................................................................................14

Ill. Comp. Stat. Ann. 5/2-607.........................................................................................................14

## INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC"), like its predecessor, hangs the viability of this entire lawsuit on a handful of conclusory allegations that "expert testing" has purportedly shown that Walmart's "Hotel Style" bed sheets have a thread count that is "less than half" of the advertised 800 thread count. Even though Walmart identified the deficiency of these allegations in its original Motion to Dismiss, *see* ECF No. 21, the FAC *still* fails to allege specific facts to support plausible claims that Walmart mispresented the thread count of these sheets. Plaintiffs do not allege which sheets they tested, who tested them and when, how the testing was performed, or what specifically the results showed. Plaintiffs' failure to allege these facts is dispositive of all of their claims under Rules 12(b)(6) and 9(b). For this and the additional reasons discussed below, the FAC should be dismissed with prejudice.

## ALLEGATIONS OF THE AMENDED COMPLAINT

### A.      Walmart's Hotel Style Sheets

Plaintiffs allege that Walmart represents that its Hotel Style bed sheets have a thread count of 800. *See* FAC ¶ 2, ECF No. 24. These sheets are available in three sizes: full, queen, and king. *See id.* ¶ 23. Citing to Walmart's website, Plaintiffs allege that the full-size set retails for $39.88, the queen-size set for $49.88, and the king-size set for $59. *See id.* & n.24. According to that website, each sheet set is also available in ten different colors.[1]

---

[1] Walmart, *Hotel Style 800 Thread Count Cotton Rich Sateen Bed Sheet Set*, https://www.walmart.com/ip/Hotel-Style-800-Thread-Count-Cotton-Rich-Sateen-Bed-Sheet-Set-Queen-White-Set-of-6/875488965 (last visited Dec. 4, 2023). "The Court may take judicial notice of the contents of a website." *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1047 n.5 (N.D. Ill. 2016). The Court may also consider Walmart's website as it is incorporated by reference in the Complaint. *See James v. City of Evanston*, 2021 WL 4459508, at *7 n.3 (N.D. Ill. Sept. 29, 2021).

According to Plaintiffs, "[c]onsumers will believe that the 800 thread count sheets are of a higher quality than lower thread count sheet sets." *Id.* ¶ 5. Because consumers use "thread count as a primary indicator of their quality, durability, and softness," Plaintiffs allege that consumers "pay higher prices for [sheets] with higher thread counts." *Id.* ¶ 6. Yet Walmart's 800-thread-count Hotel Style Sheets are *more affordable* than its 600-thread-count Hotel Style Sheets, which retail for $59.96 for a full-size set, $69.96 for a queen-size set, and $79.96 for a king-size set.[2] In accord, several sources cited in the FAC confirm that "honestly, thread count isn't the most important thing to consider," and that sheets with "thread counts ranging from 200 to 600" may have a better quality than sheets with higher thread counts.[3]

### B.     Plaintiffs' Purchases

Plaintiff Arnesia Thomas is an Illinois citizen who purchased king-size Hotel Style Sheets from various Walmart locations in Illinois from 2009 to 2023 "for approximately $50-65." *Id.* ¶ 54. Plaintiff Pascha Perkins is an Illinois citizen who purchased queen-size Hotel Style Sheets "from the Cahokia Heights [Walmart] location for approximately $69.95." *Id.* ¶ 55. Plaintiff Vernita Faison is a California citizen who purchased queen-size Hotel Style Sheets

---

[2] *See* Walmart, *Hotel Style 4 Piece 600 Thread Count Gray Egyptian Cotton Sateen Bed Sheet Set*, https://www.walmart.com/ip/Hotel-Style-4-Piece-600-Thread-Count-Gray-Egyptian-Cotton-Sheet-Set-Queen/842404889 (last visited Dec. 4, 2023). The Court may take judicial notice of this website, which is also incorporated by reference into the Complaint. *See supra* n.1.

[3] Jackie Reeve, *What Is a Good Thread Count for Sheets?*, N.Y. Times (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/good-thread-count-for-sheets/ (cited in FAC ¶ 5 n.8); Elisabeth Leamy, *False Thread Counts, and Other Things to Watch out for When Buying Sheets*, Wash. Post (Aug. 1, 2017), https://www.washingtonpost.com/lifestyle/home/false-thread-counts-and-other-things-to-watch-out-for-when-buying-sheets/2017/07/31/c090baea-6d58-11e7-b9e2-2056e768a7e5_story.html (cited in FAC ¶ 29) (reporting that "thread count is just one factor to consider," and that "higher is not always better"). The Court may consider these articles, which are incorporated by reference into the Complaint. *See supra* n.1.

"from a local Walmart location for approximately $59." *Id.* ¶ 56. Plaintiffs do not identify the color of the sheets they allegedly purchased.

According to Plaintiffs, "[e]xpert testing . . . pursuant to the ASTM D3775-17 standard has revealed that the actual thread count of the Hotel Style Sheets was lower than half of the 800 thread count warranted and represented on the Product's packaging and labeling." *Id.* ¶ 48. But Plaintiffs do not identify which products they tested, how the testing was performed to comply with ASTM D3775, or what specifically the testing showed. Instead, Plaintiffs continue to refer to a 2005 opinion letter from the Federal Trade Commission ("FTC") stating that it may be "deceptive" to "stat[e] an inflated thread count" on their bed sheets, and that it is important to "us[e] and rely[] upon industry accepted methodologies for determining the applicable thread count." *Id.* ¶¶ 40–41. Plaintiffs also cite to a since-rescinded 2017 general exclusion order from the International Trade Commission ("ITC") prohibiting "the entry of certain woven textile fabrics and products containing same that are falsely advertised through a misrepresentation of thread count." *Id.* ¶¶ 43–44. Plaintiffs do not allege that either the 2005 FTC letter or the 2017 ITC order applied to Walmart's Hotel Style Sheets.

### C.    Plaintiffs' Claims

Plaintiffs bring claims for misrepresentations and omissions under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), *id.* ¶¶ 71–90, unfairness under ICFA, *id.* ¶¶ 91–116, unlawful, unfair, or fraudulent business practices under California's Unfair Competition Law ("UCL"), *id.* ¶¶ 117–49, unfair, deceptive, untrue, or misleading advertising under California's False Advertising Law ("FAL"), *id.* ¶¶ 150–58, unfair and deceptive sales practices under California's Consumer Legal Remedies Act ("CLRA"), *id.* ¶¶ 159–70, breach of express warranty under Illinois and California law, *id.* ¶¶ 171–86, common law fraud, *id.* ¶¶ 187–94, negligent misrepresentation, *id.* ¶¶ 195–202, and unjust enrichment, *id.* ¶¶ 203–13.

Plaintiffs seek certification of a class of "[a]ll persons in the United States who, within the applicable statute of limitations . . . purchased Hotel Style Sheets from Defendants Walmart Inc. and/or Wal-Mart Stores, Inc., in a Walmart store located in the United States." *Id.* ¶ 61. They also seek to certify similar classes of Illinois- and California-based consumers. *See id.* ¶¶ 62–63.

## LEGAL STANDARD

"To survive a motion to dismiss" pursuant to Rule 12(b)(6), "the complaint must state a claim for relief that is plausible on its face." *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) (quotation omitted). A plaintiff is required to "plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court may dismiss a complaint with prejudice if plaintiffs have "repeated[ly] fail[ed] to cure their pleading deficiencies." *Dickman v. Rosado*, 2019 WL 3728698, at *3 (N.D. Ill. Aug. 1, 2019).

A party alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s heightened pleading standard, Plaintiffs "must plead the who, what, when, where, and how of the alleged fraudulent conduct, and explain why [a] statement or omission complained of was false and misleading." *Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*, 623 F. Supp. 3d 857, 884 (N.D. Ill. 2022) (quotation omitted). With the exception of Plaintiffs' express warranty claim, Plaintiffs' claims sound in fraud and are subject to Rule 9(b). *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (Rule 9(b) applies to ICFA claim that rests on allegations of deceptive conduct); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (claim for

"unfairness" under the ICFA is subject to Rule 9(b)); *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 795 (N.D. Cal. 2022) (Rule 9(b) applies to "fraud-based claims brought under the CLRA, UCL, and FAL"); *Media Bank, LLC v. SCOTTeVEST, Inc.*, 2020 WL 6825691, at *8 (N.D. Ill. Nov. 20, 2020) (applying Rule 9(b) to negligent misrepresentation claims); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) ("When an unjust enrichment claim sounds in fraud, Rule 9(b)'s particularity requirement applies." (cleaned up)).

## ARGUMENT

### I.     This Court Lacks Personal Jurisdiction Over Plaintiff Faison's Claims.

Plaintiff Vernita Faison lives in Sacramento, California, and she alleges that she bought Hotel Style Sheets "from a local Walmart location." FAC ¶ 56. She asserts claims under California law and seeks to represent a "California Subclass" consisting of "[a]ll persons in California" who bought Hotel Style Sheets from Walmart brick-and-mortar stores in California. *Id.* ¶ 63. Her claims should be dismissed for lack of personal jurisdiction.

"There are two types of personal jurisdiction: general and specific." *Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021). "General jurisdiction exists only when the organization is essentially at home in the forum State," which for a corporate defendant are its places of incorporation and principal place of business. *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (cleaned up). "The Seventh Circuit has cautioned that general jurisdiction 'should not lightly be found'" beyond these "paradigm[atic]" forums. *Nautilus Ins. Co. v. COA, Inc.*, 2023 WL 2933055, at *2 (N.D. Ill. Apr. 13, 2023) (quoting *Kipp*, 783 F.3d at 698, and *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)).

Walmart is not subject to general jurisdiction in Illinois because it is not "at home" here. *Id.* Indeed, Plaintiffs acknowledge that Walmart's "home states" are Arkansas and Delaware. FAC ¶ 17. The FAC adds a handful of allegations as to Walmart's allegedly "vast" business

operations in Illinois, *id.*, including that 181 of its 4,684 U.S. stores are in the state. *See id.* ¶ 1. As the Supreme Court has recognized, however, "[a] corporation that operates in many places can scarcely be deemed at home in all of them," *Daimler*, 571 U.S. at 140 n.20, and courts routinely find that such allegations are insufficient to establish general jurisdiction, *see, e.g.*, *Nautilus*, 2023 WL 2933055, at *3 ("For Amazon, while its dozens of facilities, thousands of employees, and solicitation of business in Illinois are certainly significant, those contacts do not suffice to make Amazon 'at home' in Illinois. The key is that Amazon has similar numbers of facilities and employees in numerous states across the country . . . .").

"Specific personal jurisdiction is appropriate when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). Each named plaintiff "must demonstrate personal jurisdiction over [Walmart] for each of their claims." *Bakopoulos*, 2021 WL 2915215, at *4. This Court also cannot exercise specific personal jurisdiction over Ms. Faison's claims because she purchased her sheets from a Walmart in California and her alleged injuries accordingly arise out of Walmart's contacts with *California*, not Illinois. *See* FAC ¶ 56. There are no allegations tying Ms. Faison's interactions with Walmart to Illinois. This Court accordingly lacks specific jurisdiction over Ms. Faison's claims. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 265 (2017) (holding that "California courts cannot claim specific jurisdiction" over claims brought by plaintiffs who "are not California residents and do not claim to have suffered harm in [California]").

In accord with *Bristol-Myers*, courts in this District regularly dismiss claims brought by non-Illinois plaintiffs asserting non-Illinois law regarding products they purchased in a different

6

state. *See, e.g.*, *Bakopoulos*, 2021 WL 2915215, at *4 (dismissing non-Illinois state law claims brought by non-Illinois plaintiffs because defendant "had no interaction with Illinois *that was related to these purchases*, so there is no specific jurisdiction over [defendant] for those claims" (emphasis added)); *McDonnell v. Nature's Way Prod., LLC*, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (holding that an Illinois resident's purchase of defendant's product "cannot provide a basis for the Court to exercise personal jurisdiction over the claims of nonresidents"). Because Ms. Faison is the only plaintiff who purports to assert claims under California law, *see* FAC ¶¶ 117–70, those claims must be dismissed.

In addition, Walmart moves under Fed R. Civ. P. 12(f) to strike the Complaint's allegations related to the putative California subclass. Ms. Faison is the California subclass's only representative. *See* FAC ¶ 63. Because the Court does not have jurisdiction over Ms. Faison's claims, and "specific personal jurisdiction can arise only from the claims of the named plaintiffs," the Court "has no jurisdiction over the [California] class [] either." *Kurt v. Platinum Supplemental Ins., Inc.*, 2021 WL 3109667, at *7 (N.D. Ill. July 22, 2021) (quotation omitted)); *see also Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *3 (N.D. Ill. Sept. 30, 2019) ("[I]f the claims of the putative class do not have a class representative to assert them, those claims must be dismissed.").

## II.    Plaintiffs Cannot Bring Claims Regarding Sheets They Did Not Purchase.

Plaintiffs seek to represent consumers who purchased *any* type of Hotel Style bed sheet sold by Walmart regardless of color, including purchasers of full-size sheets, *see* FAC ¶ 61, even though no named Plaintiff purchased full-size sheets, and Plaintiffs do not identify what color sheets they purchased. Whether viewed as a question of standing or the sufficiency of Plaintiffs' allegations, Plaintiffs' claims regarding sheets they did not purchase should be dismissed.

*First*, courts routinely hold that plaintiffs lack Article III standing to bring claims based on products they did not purchase, because they cannot show the requisite injury-in-fact stemming from such products. *See Bakopoulos*, 2021 WL 2915215, at *3 ("Plaintiffs have no injury-in-fact caused by products that they did not buy, and therefore lack standing with respect to those products."). In one case, for example, plaintiffs brought claims regarding defendant's cookies that were "sold in two sizes and eleven different varieties." *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *1 (N.D. Ill. Oct. 12, 2017). The court held that plaintiffs could not show they "suffered an injury in fact" with respect to "to products they did not purchase," and accordingly dismissed plaintiffs' claims as to those products. *Id.* at *3. Application of that straightforward constitutional principle here requires, at a minimum, dismissal of Plaintiffs' claims regarding full-size sheets, which no named Plaintiff alleges they purchased. Indeed, *all* of Plaintiffs' claims should be dismissed under Rule 12(b)(1) for lack of standing because the FAC still fails to allege which color sheets Plaintiffs purchased, and thus which specific product they purchased—even though Walmart raised this very issue in its original Motion to Dismiss. *See* ECF No. 21, at 6–8.

*Second*, Plaintiffs' failure to allege which color sheets they purchased also leaves them unable to state any claims under Rule 12(b)(6), including with the specificity required by Rule 9(b). Courts routinely dismiss cases on similar facts, because "[w]ithout specifying which product[s] [plaintiffs] actually purchased," the court "cannot determine what particular misrepresentation [p]laintiff[s] relied on." *Ibarolla v. Nutrex Rsch., Inc.*, 2012 WL 5381236, at *2 (N.D. Ill. Oct. 31, 2012); *see also Beckman v. Arizona Canning Co., LLC*, 2017 WL 4227043, at *5 (S.D. Cal. Sept. 21, 2017) (holding that plaintiffs' "complaint is subject to dismissal in its entirety" under Rule 9(b) for failing to identify "which bean products Plaintiffs purchased").

Plaintiffs also fail to state an express warranty claim, since Walmart "could not have warranted the quality or chemistry of a product that Plaintiff never purchased or used." *Muir v. NBTY, Inc.*, 2016 WL 5234596, at *9 (N.D. Ill. Sept. 22, 2016).

Through new allegations in the FAC, Plaintiffs now appear to point to a future argument that all the sheets are "substantially similar" and that the Court should accordingly defer this issue until class certification. *See, e.g.*, FAC ¶ 2 (alleging that "no matter the size, color, or pattern, all of the Hotel Style Sheets are made from a cotton and polyester blended fabric"). However, "[t]he majority of the courts in the Northern District of Illinois . . . have determined that class-action plaintiffs are prohibited from overcoming the requirements of Article III standing simply by arguing that non-purchased products are substantially similar to purchased products." *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021).

### III. Plaintiffs Do Not Allege Sufficient Facts to Support Their Conclusory Allegation That the Bed Sheets Have an Inflated Thread Count.

All of Plaintiffs' claims require plausible allegations that Walmart made a false or misleading representation that the Hotel Style Sheets have a thread count of 800. But even though Walmart raised this issue in its first Motion to Dismiss, the FAC *still* fails to plead specific facts that render plausible Plaintiffs' threadbare allegation that "when measured in accordance with the industry standard, ASTM D3775-17, the thread count for the Hotel Style Sheets is less than half of the represented amount." *Id.* ¶ 47. While the FAC now alleges that *someone* tested the Hotel Style Sheets, *see id.* ¶ 48, Plaintiffs do not allege who performed the tests, when and where the sheets were tested, which sheets were tested (and whose they were), how the testing was performed, or what specifically the test results showed. And Plaintiffs still do not allege that any other entity has tested the sheets and found that the thread count is less than advertised. Plaintiffs' conclusory allegations fall short of Rule 12(b)(6)'s plausibility

9

standard, much less Rule 9(b)'s particularity requirement. In short, all of Plaintiffs' causes of action should be dismissed because Plaintiffs have failed to allege this common element of those claims: that Walmart made a false or misleading representation.

In this regard, the FAC is similar to other thread count complaints that courts have dismissed. For instance, one court dismissed plaintiffs' claims for failing "to plausibly allege that they have suffered an injury-in-fact" where "[p]laintiffs have provided no facts to support that the sheets in question contain fewer threads than what is displayed on the labels." *Hill v. AQ Textiles LLC*, 2021 WL 1026740, at *3 (M.D.N.C. Mar. 17, 2021).[4] The court observed that plaintiffs "fail to make any allegations as to the actual thread count of the sheets they purchased," which made it "unclear to the Court on what basis they rest their blanket allegations that the thread counts are inaccurate," and in turn "begs the question of how [p]laintiffs reached their conclusion that they had been injured." *Id.*; *see also Dolch v. Linen Source Inc.*, 2008 WL 11336301, at *1 (M.D. Fla. Jan. 3, 2008) (dismissing deceptive trade practices claim where plaintiff "allege[d] only that the defendant employed a different or distinctive method of counting threads," but "allege[d] nothing meaningful that identifies any actual and tangible defect or deficiency in the quality or performance of the product").

This reasoning is consistent with analogous cases where courts have held plaintiffs to their burden to plead *facts* that make it plausible that the challenged representations are false or misleading. *See, e.g.*, *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 2023 WL 1821944, at *7 (S.D.N.Y. Feb. 7, 2023) (dismissing plaintiff's "bare, unsubstantiated allegations about the *possibility* that the Product contains artificial DL-Malic acid" because plaintiff did not provide

---

[4] While the *Hill* court found those plaintiffs' failure to allege how they "reached their conclusion that they had been injured" required dismissal of their claims for lack of Article III standing, the court's reasoning is equally applicable in the Rule 12(b)(6) context. 2021 WL 1026740, at *3.

"any additional factual support from product testing" to support her claim); *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1279 (C.D. Cal. 2022) (dismissing claims that non-drowsy cough syrup causes drowsiness because plaintiffs failed to "provide[] evidence that the claim is false"); *Bilodeau v. McAfee, Inc.*, 2013 WL 3200658, at \*9–10 (N.D. Cal. June 24, 2013) (dismissing fraud claims alleging that defendant falsely reported errors in plaintiff's computer, which were premised on plaintiff's "generic allegation" that an expert tested defendant's product and found it falsely reported errors, but plaintiff "fail[ed] to allege when the unidentified 'forensics expert' examined [the product]," did not identify "what errors the software allegedly reported," and "fail[ed] to link [the testing] to her personal experience with [the product]").

The 2005 FTC opinion letter, *see* FAC ¶¶ 40–42, and the 2017 ITC general exclusion order, *see id.* ¶¶ 43–44, remain irrelevant. Plaintiffs do not allege that either document pertained to the Hotel Style Sheets. Moreover, the agencies' statements that "[a] representation about thread count . . . must be supported by a 'reasonable basis,'" *id.* ¶ 41, that "consumers could be deceived or misled by the practice of stating an inflated thread count," *id.* ¶ 42, or that some manufacturers previously misrepresented that their thread counts were higher than "per testing performed under the A[ST]M D3775 standard," *id.* ¶ 44, have no bearing here given that Plaintiffs have not plausibly alleged how *Walmart* purportedly inflates thread counts.

## IV. Plaintiffs Do Not Sufficiently Allege an Economic Injury.

Plaintiffs must allege they suffered economic injury to state their fraud and state-law consumer protection claims. "To prevail on a claim under the ICFA," Plaintiffs must plead that defendant's deceptive or unfair conduct "caused actual damages." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021) (quotation omitted). Similarly, "[i]n order to establish statutory standing under the UCL and FAL, plaintiffs must show that they suffered 'injury in fact and [ ] lost money or property as a result of the unfair competition.'" *Gamez v.*

11

*Summit Nats. Inc.*, 2022 WL 17886027, at *6 (C.D. Cal. Oct. 24, 2022) (quoting Cal. Bus. & Prof. Code §§ 17204, 17535)). "Likewise, to establish standing under the CLRA, plaintiffs must show economic injury." *Id.* (quotation omitted).

Plaintiffs do not sufficiently allege they suffered the requisite economic injury as a result of Walmart's alleged misrepresentations. For example, Plaintiffs claim Walmart deceived them that they were "purchasing a product of a higher quality, durability, and softness than products of the same or substantially similar blends with lower thread counts." FAC ¶ 8. These assertions are unsupported, as Plaintiffs have not alleged "any standard with which to evaluate whether a sheet is of lower quality or whether it is softer or more comfortable to the consumer," "compare[d] their purchases with any other sheets to demonstrate that one is softer or more comfortable than the other as a result of its higher number of threads," "allege[d] that the sheets in question have deteriorated in any way," or "provide[d] any information as to what length of time the sheets in question would be expected to serve their purpose in order to be appropriately long-lasting." *Adam*, 2021 WL 3475677, at *2.

Nor does Plaintiffs' allegation that they "would not have purchased [the Hotel Style Sheets], or would have paid a lower price for them, had they known the actual thread count at the time of purchase," FAC ¶ 10, suffice to plead an economic injury. This allegation rests on the premise that "consumers regularly pay more for higher thread count sheets." *Id.* ¶ 30. Plaintiffs still only cite a 20-year-old news article, which states that "[a] single-ply 300-count can run about $55 a set, while the 600 thread-count sheet that [the Good Housekeeping Institute] claims is only a 300-count is $180 a set," to support this claim. *Id.* But this article about unidentified sheets does not support the proposition that *these* Plaintiffs paid more for the Hotel Style Sheets they supposedly bought than they would have paid for other sheets with a "true" 800 thread

count. Plaintiffs do not, for instance, compare "the price they paid to the prices of any other [similarly] sized sheet set of any thread count." *Adam*, 2021 WL 3475677, at *3. Nor do they "show[] that the prices they paid were higher than the price of any comparable product." *Id.*

In fact, Plaintiffs plead themselves out of alleging an economic injury. Materials either referenced in or incorporated into the FAC show that the alleged retail cost of the 800-thread-count Hotel Style Sheets at issue is *less* than the cost of Walmart's 600-thread-count Hotel Style Sheets. *See supra* at 2. "This shows that an individual consumer may just as easily spend less by *increasing* the thread count of their sheets as they would by decreasing the count." *Adam*, 2021 WL 3475677, at *3 (dismissing complaint where "[o]f the twelve sheet sets Plaintiffs have graphed to display the price and thread count of Macy's products, over half cost less than at least one sheet set with a lower thread count").[5] The Court is not required to credit Plaintiffs' conclusory allegation that they would have spent less for lower thread count sheets when their FAC establishes that they could have paid *more*. *See Daugherty v. McCluskey*, 2021 WL 949336, at *6 (N.D. Ill. Mar. 12, 2021) (noting that "the Court cannot accept contradictory allegations" when ruling on a motion to dismiss).

In short, Plaintiffs' failure to plead an economy injury requires dismissal of their claims. *See, e.g.*, *Adam*, 2021 WL 3475677, at *3 (dismissing complaint alleging that plaintiffs paid higher prices for sheets with allegedly inflated thread counts than they would have for comparable products with accurate thread counts, because "Plaintiffs fail to allege any facts beyond the blanket assertion that, given the thread count, they should have paid less for these

---

[5] The FAC adds allegations that Walmart's 600-thread-count sheets are made from "100% cotton" rather than a "cotton and polyester blended fabric" in the 800-thread-count version they bought. FAC ¶ 28. This allegation is irrelevant to Plaintiffs' broad (and demonstrably incorrect) claim that consumers "pay higher prices for [sheets] with higher thread counts." *Id.* ¶ 6.

products"); *Hill*, 2021 WL 1026740, at *3 ("Plaintiffs once again fail to allege any facts beyond the blanket assertion that they have overpaid. They decline to compare, for instance, the price they paid to the prices of any sheets with a corresponding thread count they deem to be accurate. They likewise decline to compare the price of their sheets to those with a lower thread count.").[6]

## V.     Plaintiffs' Unjust Enrichment Claim Fails Along with Their Fraud Claims.

"Where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Ibarolla*, 2012 WL 5381236, at *8 (quotation omitted). Because Plaintiffs' fraud claims fail, their unjust enrichment claim, *see* FAC ¶¶ 203–13, must be dismissed as well.

## VI.    Plaintiffs Fail to State a Claim for Breach of Express Warranty.

Plaintiffs fail to adequately allege a breach of an express warranty under Illinois or California law. *See* FAC ¶¶ 171–86. *First*, even assuming *arguendo* that the represented thread count constitutes a warranty, Plaintiffs have failed to allege that Walmart breached it. *See supra* Section III. *Second*, these claims should be dismissed for the independent reason that Plaintiffs failed to allege that they brought them "within a reasonable time after [they] discover[ed] or should have discovered any breach." 810 Ill. Comp. Stat. Ann. 5/2-607(3)(a); *see also* Cal. Com. Code § 2607(3)(A) (same). After Walmart raised this issue in its initial Motion to Dismiss, Plaintiffs added an allegation that they "provided Defendants with written notice of Defendants' breach of the express warranty shortly after Plaintiffs discovered the breach." FAC ¶ 183. But

---

[6] Plaintiffs' negligent misrepresentation claim can also be dismissed under the economic loss doctrine, which prohibits recovery in tort solely for economic loss. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982) ("The remedy for economic loss, loss relating to a purchaser's disappointed expectations . . . lies in contract."); *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 767 (N.D. Ill. 2022) (dismissing negligent misrepresentation claim where "Plaintiff alleges only economic damages").

strangely, Plaintiffs still do not identify *when* this alleged discovery occurred; the oblique

suggestion that it was "shortly" before they sent a letter to Walmart does not suffice. *See, e.g.*,

*Muir*, 2016 WL 5234596, at *9 (noting that plaintiff's warranty claim could be dismissed for

failing to allege "that she provided defendant with notice of the alleged breach within a

reasonable time after she discover[ed] or should have discovered [it]" (quotation omitted)); *see

also Ratkovich ex rel. Ratkovich v. Smithkline*, 711 F. Supp. 436, 438 (N.D. Ill. 1989)

(concluding that, despite plaintiff's allegations that she "gave notice to [defendant] immediately

prior to filing suit and immediately upon plaintiff's parents realizing that the drug at issue caused

the injury," plaintiff nevertheless failed to allege "that she notified [defendant] of its breach

within a reasonable time," in part because she "failed to allege the date the breach occurred").

## VII.    Plaintiffs' Request for Injunctive Relief Should Be Denied.

Plaintiffs continue to seek injunctive relief. *See* FAC ¶¶ 90, 116, 131, 140, 149, 158, 170.

But Plaintiffs "lack[] standing to seek injunctive relief because [they] do[] not have a likelihood

of *future injury*." *Calderon v. Procter & Gamble Co.*, --- F. Supp. 3d ---, 2023 WL 3627797, at

*6 (N.D. Ill. May 24, 2023). They are "now aware of [Walmart's] alleged deceptive practices,"

and they "fail[] to provide a concrete basis to conclude that the plaintiffs will or must purchase

the product again in the future and be deceived." *Id.* (quotation omitted). Plaintiffs also cannot

seek injunctive relief because they do not allege that legal damages—compensating Plaintiffs for

the amount they allegedly overpaid for the sheets—are inadequate. *See Hawes v. Macy's Stores

W. Inc.*, 2022 WL 815298, at *5 (S.D. Ohio Mar. 16, 2022) (dismissing request for injunctive

relief "[b]ecause Plaintiff has failed to allege or show the inadequacy of legal damages").

Plaintiffs' demand for injunctive relief should be denied.

## CONCLUSION

This Court should grant Walmart's motion and dismiss the FAC with prejudice.

Dated: December 4, 2023

Respectfully Submitted,

By: */s/ Daniel L. Stanner*

Daniel L. Stanner
TABET DIVITO & ROTHSTEIN
209 S. LaSalle St., 7th Floor
Chicago, IL 60604
Direct: (312) 762-9461
dstanner@tdrlaw.com

Cortlin H. Lannin (admitted *pro hac vice*)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Direct: (415) 591-7078
clannin@cov.com

Stephen M. Rees
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
Direct: (202) 662-5262
srees@cov.com

*Attorneys for Defendants Walmart Inc. and Wal-
Mart Stores, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 4, 2023, I electronically filed the foregoing **DEFENDANTS WALMART INC.'S AND WAL-MART STORES, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT & MEMORANDUM OF LAW** using this Court's CM/ECF service. All counsel of record will be served via the Court's CM/ECF service, which will provide copies to all counsel of record registered to receive CM/ECF notification.

*/s/ Daniel L. Stanner*
