# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARNESIA THOMAS, PASCHA PERKINS, and VERNITA FAISON, individually and as a representative of all others similarly situated, | |
| Plaintiffs, | Case No. 1:23-cv-05315 |
| v. | JUDGE: JEREMY C. DANIEL |
| WALMART INC. | MAGISTRATE JUDGE: HEATHER K. MCSHAIN |
| and | |
| WAL-MART STORES, INC. | |
| Defendants. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF FACTUAL ALLEGATIONS ................................................. 1

III.    LEGAL STANDARD ........................................................................................... 3

IV.    ARGUMENT ......................................................................................................... 4

    A.   As Illinois' largest private employer, Walmart cannot avoid litigating Plaintiff Faison's claims in Illinois .................................................................. 4

    B.   Plaintiffs specifically and plausibly allege that Walmart misrepresented the thread count on its Hotel Style Sheets .................................................. 5

    C.   Plaintiffs adequately plead an economic injury by alleging they would not have bought the Sheets or would have paid less for them but for Walmart's conduct .......................................................................................... 9

    D.   A plaintiff's ability to represent a class is determined under Rule 23, not by a consideration of Article III standing ......................................... 12

    E.   Plaintiffs have properly plead their claim for unjust enrichment ....................... 15

    F.   Plaintiffs adequately state a claim for breach of express warranty ..................... 15

    G.   No viable basis exists for dismissing Plaintiffs' requests for injunctive relief ... 18

V.    CONCLUSION .................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adam v. AQ Textiles LLC*, 2021 WL 3475677 (M.D.N.C. Aug. 6, 2021)...........................................11, 12

*Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, (10th Cir. 2003)......................................................................6

*Arreola v. Godinez*, 546 F.3d 788, (7th Cir. 2008)........................................................................................12

*Atlantic Cas. Ins. Co. v. Seattle Roofing & Constr. Co.,* 73 F. Supp. 3d 953 (N.D. Ill. 2014).......................6

*Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215 (N.D. Ill. July 12, 2021) ......................................13

*Beckman v. Arizona Canning Co., LLC*, 2017 WL 4227043, (S.D. Cal. Sept. 21, 2017) ...........................15

*Biffar v. Pinnacle Foods Group, LLC*, 2016 WL 7429130, (S.D. Ill. Dec. 22, 2016)..................................10

*Bilodeau v. McAfee, Inc.*, 2013 WL 3200658, (N.D. Cal. June 24, 2013) ......................................................7

*BNSF R. Co. v. Tyrrell*, 137 S.Ct. 1549, (2017)(Gorsuch, J., concurring)....................................................4

*Borders v. Wal-Mart Stores, Inc.*, 2018 WL 9645780, (S.D. Ill. Mar. 29, 2018)...........................................5

*Calderon v. Procter & Gamble Co.*, 2023 WL 3627797 (N.D. Ill. May 24, 2023) .......................................20

*Carrol v. S.C. Johnsons & Son, Inc.*, 2018 WL 1695421,(N.D. Ill. Mar. 29, 2018 .........................14, 18, 19

*Clay Fin. LLC v. Mandell*, 2017 WL 3581142,(N.D. Ill. Aug. 18, 2017).....................................................12

*Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017) ............................................13

*Curran v. Bayer Healthcare LLC*, 2019 WL 398685(N.D. Ill., Jan. 31, 2019) .............................................19

*Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) ........................................................14

*Daimler AG v. Bauman,* 571 U.S. 117 (2014) ................................................................................................5

*Daly v. FitLife Brands, Inc.*, 2023 WL 6388112, (N.D. Ill. Sept. 29, 2023) ............................ 121 13, 19, 20

*Daly v. Glanbia Performance Nutrition, Inc.*, 2023 WL 5647232,(N.D. Ill. Aug. 31, 2023) ........................13

*Datil v. C.R. Bard, Inc.*, 2020 WL 5810402,(N.D. Ill. Sept. 30, 2020) .......................................................16

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, (9th Cir. 2018) ........................................................ 10, 19

*Dolch v. Linen Source, Inc.,* 2008 WL 11336301 (M.D. Fla. Jan. 3, 2008)................................................7

*Ellison v. Aurora E. Sch. Dist. 131*, 2009 WL 884949, (N.D. Ill. Mar. 27, 2009) .....................................20

*Escobar v. Just Born Inc.*, 2017 WL 5125740,(C.D. Cal. June 12, 2017) .................................................9

*Est. of Darger v. Lerner*, 2023 WL 2664341 (N.D. Ill. Mar. 28, 2023)........................................................6

*Ezekiel v. Michel*, 66 F.3d 894,(7th Cir. 1995) .....................................................................................3

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.,* 141 S.Ct. 1017, (2021) ............................................4

*Friend v. FGF Brands (USA) Inc.*, 2019 WL 2482728, (N.D. Ill. June 12, 2019) ....................................13

*Fuchs v. Menard, Inc.*, 2017 WL 4339821, (N.D. Ill. Sept. 29, 2017)...............................................10, 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915 (2011) ............................................4

*Grabowski v. Dunkin' Brands, Inc.*, 2017 WL 6059966, (N.D. Ill. Dec. 7, 2017)........................................11

*Grausz v. Kroger Co.*, 2021 WL 5534706,(S.D. Cal. Jan. 22, 2021)..............................................................16

*Harper v. Central Wire, Inc.*, 2020 WL 11422783,(N.D. Ill. Sept. 17, 2020) .................................................3

*Harris v. City of Chi.*, 479 F. Supp. 3d 743 (N.D. Ill. 2020) .......................................................................11

*Hawes v. Macy's Stores W., Inc.*, 2022 WL 194407(S.D. Ohio Jan. 22, 2022) ..............................................8

*Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290 (S.D.N.Y. 2023) ..................................................................7

*Hill v. AQ Textiles LLC*, 2021 WL 1026740 (M.D.N.C. Mar. 17, 2021) ......................................7, 11, 12

*Hill v. AQ Textiles, LLC*, 582 F. Supp. 3d 297 (M.D.N.C. 2022) ........................................................ 7, 12

*Hunt v. Dart*, 2010 WL 300397, (N.D. Ill. Jan. 22, 2010) ........................................................... 3, 6

*Ibarolla v. Nutrex Rsch., Inc.*, 2012 WL 5381236, (N.D. Ill. Oct. 31, 2012)................................................15

*Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, (N.D. Ill. 2015) ........................................................................16

*In re Chi. Flood Litig.*, 176 Ill. 2d 179, (1997)...............................................................................................12

*In re Philip Services Corp. Securities Litig.,* 383 F. Supp. 2d 463, (S.D.N.Y. 2004) ..........................................6

*Int'l Ass'n of Heat & Frost Insulators Loc. 17 Pension Fund v. CEC Env't, Inc.*, 530 F. Supp. 3d 757 (N.D. Ill. 2021) ....................................................................................................................................................3

*Int'l Shoe Co. v. Wash.,* 326 U.S. 310, (1945) ..............................................................................................4

*Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, (N.D. Ill. 2011) ..............................................10

*Keith v. Ferring Pharms., Inc.*, 2016 WL 5391224,(N.D. Ill. Sept. 27, 2016)..................................................18

*Kubilius v Barilla Am., Inc.*, 2019 WL 2861886,(N.D. Ill. July 2, 2019) ......................................................14

*Labella Winnetka, Inc. v. Gen. Cas. Ins. Co.*, 259 F.R.D. 143,(N.D. Ill. 2009)..................................................9

*Leiner v. Johnson & Johnson Consumer Cos., Inc.*, 215 F. Supp. 3d 670,(N.D. Ill. 2016) ..............................18

*Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, (C.D. Cal. 2022) ..................................................................7

*Lilly v. Jamba Juice Co.*, 2015 WL 1248027, (N.D. Cal. Mar. 18, 2015) ..........................................20

*Linton v. Axcess Fin. Servs., Inc.*, 2023 WL 4297568, (N.D. Cal., Jun. 30, 2023) ............................20

*LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737 (N.D. Ill. 2011) ...........................................................4

*Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021 (Ill. App. Ct. 1998)..........17

*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, (2023)............................................................................4

*McDonnell v. Nature's Way Prods., LLC*, 2017 WL 1149336, (N.D. Ill. Mar. 28, 2017) .............. 9, 10

*Mednick v. Precor, Inc.*, 2014 WL 6474915 (N.D. Ill. Nov. 13, 2014).............................................14

*Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694 (N.D. Ill. 2014) ........................................4

*Morrison v. Ross Stores, Inc.*, 2019 WL 11770849, (N.D. Cal. May 30, 2019) ..................................8

*Muir v. NBTY, Inc.*, 2016 WL 5234596 ....................................................................................13, 17, 18

*Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, (N.D. Ill. 2013)...............................................10

*Nautilus Ins. Co. v. COA, Inc.* , 2023 WL 2933055, (N.D. Ill. Apr. 13, 2023)..................................5

*O'Sullivan v. City of Chi.*, 478 F. Supp. 2d 1034, (N.D. Ill. Mar. 15, 2007) ..................................20

*Oettle v. Walmart, Inc.*, 2022 WL 3584944, at *2 (S.D. Ill. Aug. 22, 2022)............................. 16, 17

*Purdue Research Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, (7th Cir. 2003)........................4

*Ratkovich ex rel. Ratkovich v. Smithkline*, 711 F. Supp. 436 (N.D. Ill. 1989)................................17

*Robinson v. J.M. Smucker Co*, 2019 WL 2029069 (N.D. Cal. May 8. 2019). .....................................6

*Rushing v. Williams-Sonoma, Inc.*, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016). ..........................8

*Shirley v. Reynolds Consumer Prods., LLC*, 636 F. Supp. 3d 907 (N.D. Ill. 2022) ..........................19

*Tamayo v. Blagojevich,* 526 F.3d 1074 (7th Cir. 2008) ..................................................................6

*Tamburo v. Dworkin,* 601 F.3d 693 (7th Cir. 2010) ......................................................................4

*Tasion Comm'ns, Inc. v. Ubiquiti Networks, Inc.,* 2014 WL 2916472, (N.D. Cal., Jun. 26, 2014)............17

*Tex. Hill Country Landscaping, Inc. v. Caterpillar,* 522 F. Supp. 3d 402, (N.D. Ill. 2021)...........13

*Ulrich v. Probalance, Inc.,* 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017) ..................... 11, 14

*Vanzant v. Hill's Pet Nutrition Inc.,* 2023 WL 6388300, (N.D. Ill. Sept. 29, 2023)...................14

*Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, (E.D. Cal. May 10, 2010)...........10

*Wagner v. General Nutrition Corp.,* 2017 WL 3070772, (N.D. Ill. July 19, 2017).......................14

*Whitwell v. Wal-Mart Stores, Inc.,* 2009 WL 4894575, (S.D. Ill., Dec. 11, 2009) .......................16

*Willard v. Tropicana Manuf. Co., Inc.,* 577 F. Supp. 3d 814 (N.D. Ill. 2021) ...........................13

*Womick v. Kroger Co.,* 2022 WL 673095, (S.D. Ill. Mar. 7, 2022) ..................................................8

*Zeiger v. WellPet LLC,* 526 F. Supp. 3d 652, (N.D. Cal. 2021) ..................................................20

**Statutes**

810 Ill. Comp. Stat. Ann. 5/2-607(3)(a) ..........................................................................................16

Cal. Com. Code § 2607(3)(A)...........................................................................................................16

## I.      INTRODUCTION

Plaintiffs Arnesia Thomas, Pascha Perkins, and Vernita Faison brought this putative class action against Defendants (collectively, "Walmart") for their practice of deceptively advertising a key product attribute—the thread count—on their Hotel Style bedsheets. Walmart represents that the bedsheets have a thread count of 800, but in reality, expert testing reveals that the thread count is less than half of the represented amount. Now, Walmart seeks an early exit with arguments that, *inter alia*, this Court lacks jurisdiction over Plaintiff Faison's claims (despite the fact that Walmart is Illinois' largest private employer), Plaintiffs' allegations are neither specific enough nor plausible (though they are), they haven't alleged economic harm (though they did), and they lack standing to represent those who purchased the bedsheets in a different color or size (an issue for class certification).

These arguments are not only legally unsound, but ignore the central underpinning of Plaintiffs' allegations: expert testing of the Hotel Style bedsheets, conducted pursuant to the industry standard testing methodology, demonstrated that Walmart's 800 thread count representation was over ***double*** the actual thread count. And, had Plaintiffs known the represented thread count was a lie, they would not have purchased the bedsheets or would have paid less for them. Further, because the bedsheets are manufactured through a standardized process and constructed from a uniform cotton and polyester blended fabric, the size, color, or pattern of the purchased bedsheets make no difference.

Plaintiffs' allegations mirror those made in other suits against retailers for misrepresenting thread counts. In those cases, courts found such allegations sufficient to survive a motion to dismiss. Walmart's litany of complaints and half-made arguments do not carry its burden. Plaintiffs' allegations are thoroughly grounded in specific facts and should be permitted to proceed to discovery.

## II.     SUMMARY OF FACTUAL ALLEGATIONS

Walmart is Illinois' largest private employer, operating 181 retail locations and employing over *13 times* as many people here than in its state of incorporation. Dkt. 24 ("First Amended Class Action

Complaint" or "FAC") ¶ 17. It also not only operates seven distribution centers and one fulfillment center in Illinois but, as of fiscal year 2023, supported over 369,00 supplier jobs in Illinois, collected over $809 million in taxes for Illinois, and paid $387 million in taxes and fees in Illinois. *Id.*

One of Walmart's key product line offerings in Illinois, and nationally, are its so-called luxury bedsheets. Walmart manufactures, labels, distributes, advertises, and sells the at-issue sheets ("Sheets") under its exclusively owned "Hotel Style" brand name in various colors, patterns, and sizes;[1] but, for purpose of the thread count representation, these variations are meaningless because every Sheet set is made from the same cotton and polyester blended fabric. *Id.* ¶¶ 2, 25. Indeed, the Sheets are all manufactured through the same standardized process; the fabric is woven into large rolls, which are uniformly cut and sewn into specific sizes by a machine. *Id.* ¶ 26. And the Sheets are all packaged with the same prominent uniform representation that they have an "800 thread count." *Id.* ¶¶ 2, 11-13, 27.

However, there is a key problem with the Sheets: they do not have an 800-thread-count. Within the textile industry, manufactures, wholesalers, and retailers have a standard methodology for determining the thread count of a fabric—ASTM D3775-17. *Id.* ¶¶ 31-33, 45-46.[2] Both the FTC and the ITC have treated ASTM D3775-17 as the proper methodology for testing the thread count of bedsheets in separate investigations conducted into misrepresented thread counts. *Id.* ¶¶ 41-44. As a result of its investigation, for example, the ITC found a "widespread pattern" of sheets that "claimed a higher thread count than actually contained in the products per testing performed under ASTM D3775 standard," and thus prohibited the entry of "certain woven textile fabrics and products" that were falsely advertised with a misrepresented thread count. *Id.* at ¶¶ 43-44.

ASTM D3775-17 requires counting the number of threads in two directions: the warp (or vertical), and the filling (or horizontal). *Id.* ¶ 31. The sum is the thread count of the fabric. *Id.* As

---

[1] Walmart sells the Sheets at its retail locations across the country in Full, Queen, and King sizes. FAC ¶ 23.
[2] Section 5.1 of ASTM D3775-17 notes that "[t]his test method is considered satisfactory for acceptance testing of commercial shipments because it has been used extensively in the thread for that purpose." FAC ¶ 45.

outlined in the FAC, the Sheets were tested by an expert in accordance with ASTM D3775-17, which revealed their actual thread count was less than half of the 800-thread count representation on their packaging. *Id.* ¶¶ 47-48. This misrepresentation is not innocuous; the market for bedsheets is flooded with products, so consumers rely on the represented thread count in deciding which bedsheets to purchase and are willing to pay more for bedsheets with a higher thread count. *Id.* ¶ 29.

Plaintiffs each purchased a set of Sheets that included a tag identifying the product as Walmart's "Hotel Style" brand and stating they were made from a 53% cotton and 47% polyester blended fabric. *Id.* ¶¶ 2, 54-56. Each set was also sold in packaging that stated they had an 800 thread count but, unfortunately, Plaintiffs were unaware at time of purchase that Walmart had deceptively inflated the Sheets' thread count to induce Plaintiffs to purchase them at an inflated price. *Id.* ¶ 53.

## III.    LEGAL STANDARD

A complaint that "contain[s] a 'short and plain statement of the claim showing that the pleader is entitled to relief'" survives a motion to dismiss. *Harper v. Central Wire, Inc.*, 2020 WL 11422783, at *2 (N.D. Ill. Sept. 17, 2020) (court should not dismiss complaint that "(1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level"). At the pleading stage, substantial, evidence-based factual information is not required. Rather, "the court must determine whether the complaint contains 'enough fact to raise a reasonable expectation that discovery **will reveal evidence**' to support liability for the alleged wrongdoing." *Id.* (emphasis added); *see also Hunt v. Dart*, 2010 WL 300397, at *1 (N.D. Ill. Jan. 22, 2010) (complaint need not "have the factual richness required of a response to a motion for summary judgment").[3]

---

[3] Also, "[w]hen deciding a facial challenge to subject matter jurisdiction [via Rule 12(b)(1)] . . . 'the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff.'" *Int'l Ass'n of Heat & Frost Insulators Loc. 17 Pension Fund v. CEC Env't, Inc.*, 530 F. Supp. 3d 757, 760 (N.D. Ill. 2021) (quoting *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)). And on a 12(b)(2) motion, "the Court may consider matters outside the pleadings," *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 708 (N.D. Ill.

## IV.    ARGUMENT

### A.    As Illinois' largest private employer, Walmart cannot avoid litigating Plaintiff Faison's claims in Illinois.

Walmart says this Court lacks personal jurisdiction over Plaintiff Faison, Dkt. 30 ("Motion" or "Mot.") at 5-7, but its affiliations with Illinois are so continuous and systematic as to render it at home in Illinois. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 317 (1945)); *cf. Mallory v. Norfolk S. Ry. Co.,* 600 U.S. 122, 143-44 (2023) (given company's extensive operations in Pennsylvania, asking "on what plausible account could *International Shoe*'s concerns with 'fair play and substantial justice' require a Pennsylvania court to turn aside [plaintiff's] suit?").

As Justice Gorsuch recently observed, in determining a court's general jurisdiction, "[i]f it made sense to speak of a corporation having one or two 'homes' in 1945, it seems almost quaint in 2021 when corporations with global reach often have massive operations spread across multiple States. To cope with these changing economic realities, [the Supreme Court] has begun cautiously expanding the old rule in 'exceptional case[s].'" *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.,* 141 S.Ct. 1017, 1034 (2021) (quoting *BNSF R. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017) (Gorsuch, J., concurring).

Walmart's activities in Illinois present such an exceptional case. Walmart has 181 retail locations in Illinois, including 137 supercenter stores. FAC ¶ 17. It also has 57,365 employees in Illinois, making it the largest private employer in the State. *Id.* By comparison, Walmart has only 4,314

---

2014), but where "the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts," *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing *Purdue Research Found. V. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "In evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 741 (N.D. Ill. 2011).

employees in Delaware, where it is incorporated. *Id.* ¶ 17 n.15. In fact, holding that Walmart was subject to general personal jurisdiction in Illinois, in 2018 the Southern District of Illinois noted:

> Walmart is the largest private employer in Illinois. It maintains nearly 200 stores in Illinois and employs over 50,000 associates at those stores. In addition, Walmart provides another 167,000 supplier jobs in Illinois and collects more than half of a billion dollars in taxes for the state each year. . . .
>
> Walmart does more business and hires more workers in Illinois than it does in almost every other state in the country, including . . . Arkansas and Delaware. . . . While it may not be true that Walmart would be at home in every state in which it does business, it is persuasive that, as a state with more associates and more stores than its "principal place of business," Walmart's business in Illinois is the "exceptional case" for general jurisdiction outside of a paradigmatic forum.

*Borders v. Wal-Mart Stores, Inc.*, 2018 WL 9645780, at *4 (S.D. Ill. Mar. 29, 2018).

Walmart not only ignores *Borders*, but relies on *Daimler AG v. Bauman,* 571 U.S. 117 (2014), even though *Daimler AG* did "not foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business **may be so substantial** and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19 (internal citations omitted) (emphasis added).[4] Consistent with *Daimler AG*, and as *Borders* correctly concluded, this Court should find the FAC's allegations adequately establish that Walmart's operations in Illinois are so substantial that Walmart is at home in Illinois.

## B. Plaintiffs specifically and plausibly allege that Walmart misrepresented the thread count on its Hotel Style Sheets.

Walmart's liability-related arguments are equally unmeritorious. Walmart unsuccessfully seeks to dispose of all of Plaintiffs' claims by arguing that Plaintiffs do not sufficiently allege a false or misleading representation, Mot. at 9-11, but the FAC pleads sufficient factual information about

---

[4] *Nautilus Ins. Co. v. COA, Inc.* (Mot. at 6) also proves Plaintiffs' point. The court held it lacked general jurisdiction over Amazon given its "**similar numbers of facilities and employees in numerous states** across the country, and even more contacts in Texas, California, and Washington," 2023 WL 2933055, at *3 (N.D. Ill. Apr. 13, 2023) (emphasis added), whereas the FAC sufficiently details how Walmart's affiliation with Illinois is "unique," *id.*, in particular, compared to its affiliation with its states of its incorporation and headquarters, FAC ¶ 17.

expert testing of the Sheets. As mentioned, the requirement that a complaint's allegations be plausible "does not eliminate notice pleading in the federal system or require that a complaint have the factual richness required of a response to a motion for summary judgment." *Hunt*, 2010 WL 300397, at *1.

Consequently, a "complaint need not plead evidence[.]" *Est. of Darger v. Lerner*, 2023 WL 2664341, *4 (N.D. Ill. Mar. 28, 2023) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)); *see also Atlantic Cas. Ins. Co. v. Seattle Roofing & Constr. Co.*, 73 F. Supp. 3d 953 (N.D. Ill. 2014) ("The plausibility standard of *Iqbal* and *Bell Atlantic Corp. v. Twombly* [] does not call for the pleading of evidence; it 'simply calls for enough fact to raise a reasonable expectation that discovery will *reveal evidence*' supporting the claim in the complaint." (emphasis in original)).[5] In *Robinson v. J.M. Smucker Co.*, for example, the court deemed the defendant's claim that the complaint had deficient testing allegations "immaterial" at the pleading stage:

> Defendant contends that Plaintiff has failed to state a plausible cause of action because she relies upon 'an unidentified laboratory test' and does not compare the test results to standards promulgated by the federal government. But these criticisms are immaterial at the motion to dismiss stage. Plaintiff has alleged that she was deceived when she purchased a product labeled '100% Extra Virgin Olive Oil' that did not contain entirely extra virgin olive oil. Construing the allegations in the light most favorable to Plaintiff, as the Court must do at the motion to dismiss stage, Plaintiff has stated a plausible claim for an unlawful, unfair, or deceptive business practice.

2019 WL 2029069, at *3 (N.D. Cal. May 8, 2019) (internal citations omitted).

Here, that holding is equally applicable. Plaintiffs have alleged: (1) inflated thread counts are so common that the federal government has addressed the issue (FAC ¶¶ 40-44); (2) there is an industry accepted standard for determining thread count (*id.* ¶¶ 31-32, 45); (3) this industry standard for determining thread count (ASTM D3775) is used for acceptance testing of commercial shipments

---

[5] *See also Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, 1101 (10th Cir. 2003) ("requiring plaintiffs to identify the source of the facts they allege is to require . . . that the plaintiffs plead their evidence in their complaint"); *In re Philip Services Corp. Securities Litig.,* 383 F. Supp. 2d 463, 478 (S.D.N.Y. 2004) ("requiring plaintiffs to identify the sources of their factual allegations would, in effect, compel them to plead evidence in their complaint, thereby undoing the principle of notice pleading that underlies the Federal Rules of Civil Procedure").

in the textile industry and was used by the FTC and ITC in their thread count testing (*id.* ¶¶ 41-42, 44-45); (4) using this industry standard for determining thread count an expert tested Walmart's Sheets (*id.* ¶¶ 7, 48); (5) the expert found that Walmart inflated the Sheets' thread count by over double (*id.* ¶¶ 7, 47); (6) those Sheets are all made from the same fabric and display a misrepresentation of the thread count (*id.* ¶ 26); and (7) Plaintiffs purchased them (*id.* ¶¶ 11-13).

Instead of addressing Plaintiffs' allegations head on, Walmart relies on an outdated case, *Hill v. AQ Textiles, LLC*, 2021 WL 1026740 (M.D.N.C. Mar. 17, 2021) ("*Hill 1*") for the proposition that Plaintiffs have not plausibly alleged that the Sheets misrepresent their thread count, but ignores that after *Hill 1*, the plaintiffs added allegations related to thread count testing. *See Hill v. AQ Textiles, LLC*, 582 F. Supp. 3d 297, 306 (M.D.N.C. 2022) ("*Hill 2*") (amended complaint alleged testing by government agency, independent lab, and expert found the thread count was far lower than represented). Based on these new allegations, *Hill 2* found "[p]laintiffs' allegation that Defendants' sheets were misleadingly labeled is no longer conjecture but instead is rooted in specific factual allegations." *Id.* at 310. The same is true here: Plaintiffs' allegation of thread count misrepresentation is "rooted in specific factual allegations," *id.*, about how the sheets were tested (pursuant to ASTM D3775) and results demonstrating a thread count less than half of the represented amount, FAC ¶ 7.[6]

---

[6] *Lemus*, *Dolch*, *Hawkins*, and *Bilodeau* (Mot. at 10-11) also do not bolster and, in fact, refute Walmart's position. Walmart says *Lemus* "dismiss[ed] claims that non-drowsy cough syrup causes drowsiness," but *Lemus* actually **refused** to dismiss plaintiff's claim where (as Plaintiffs do here) he "identif[ied] the potentially misleading statement" (the product does not cause drowsiness) and "provid[ed] evidence that it is false" (personal use and studies showing an ingredient causes drowsiness). *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1279 (C.D. Cal. 2022) ("Plaintiff need not prove his allegations at this juncture, only plead them with sufficient particularity[.]"); FAC ¶¶ 2-3, 7, 27, 48. Further, *Dolch* is inapposite; the plaintiff failed to allege "any particular way in which the defendant's method of counting threads . . . disappointed [his] expectation," *Dolch v. Linen Source, Inc.*, 2008 WL 11336301, at *1 (M.D. Fla. Jan. 3, 2008), whereas here, Plaintiffs sufficiently allege injury due to their unfulfilled expectations, *supra* § IV.C. Finally, whereas Plaintiffs adequately allege that testing confirmed the falsity of the 800-thread-count representation, the complaints in *Hawkins* and *Bilodeau* fatally omitted allegations substantiating the misrepresentation. *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 305-306 (S.D.N.Y. 2023) (plaintiff presented "amorphous 'laboratory analysis'" that did not indicate if the malic acid in the beverage was naturally occurring or artificial); *Bilodeau v. McAfee, Inc.*, 2013 WL 3200658, at *9 (N.D. Cal. June 24, 2013) (plaintiffs alleged software falsely reported errors, but did not identify *what errors* or whether they were false).

Indeed, courts have found allegations similar to those made by Plaintiffs sufficient to support a finding that claims based on an alleged misrepresentation of a product's thread count were both plausible and met Rule 9(b)'s particularity requirement. In *Hawes v. Macy's Inc.*, for instance, the plaintiffs alleged Macy's should have been aware its thread count "representations were not truthful," that such representations "were intended to induce Plaintiffs to purchase the sheets," and that Plaintiffs "relied on the thread count misrepresentation in purchasing the sheets." 346 F. Supp. 3d 1086, 1094 (S.D. Ohio 2018). *Hawes* did not even rely on any expert testing allegations in ruling the plaintiffs plausibly stated a claim and met Rule 9(b)'s requirements. *Id.*[7]

Further, in *Rushing v. Williams-Sonoma, Inc.*, the plaintiff alleged the defendant represented that its sheets had a thread count of 600 but testing conducted pursuant to ATSM D3775 revealed it was actually 291. *See* 2016 WL 4269787, at *1 (N.D. Cal. Aug. 15, 2016). Those allegations were sufficient to satisfy Rule 9(b). *Id.* at *6; *see also Morrison v. Ross Stores, Inc.*, 2019 WL 11770849, at *1-2 (N.D. Cal. May 30, 2019) (denying motion to dismiss, in part, as to plaintiff's fraud-based and breach of warranty claims based on allegations that defendant misrepresented the thread count on its bedsheet products).

Walmart nonetheless insists evidence that will be developed through expert discovery must be alleged in the complaint, Mot. at 9, but these matters are properly addressed under Rule 26(a)(2), not at the pleading stage. The FAC easily satisfies the who (Walmart), what (the thread count misrepresentation), when (purchases made during the class period), where (on the package), and how (representing a significantly higher thread count than can be measured using the industry standard ASTM D3775-17) requirements of particularity. *See Womick v. Kroger Co.*, 2022 WL 673095, at *4 (S.D. Ill. Mar. 7, 2022) (Rule 9(b) was satisfied in context of alleged misrepresentation on a canister of coffee because the plaintiff alleged "who" [Kroger], "what" [the representation on a canister of coffee],

---

[7] Moreover, like Plaintiffs, the plaintiffs in *Hawes* alleged, and the parties agreed, that the appropriate method for measuring thread count is ASTM D3775. *Hawes v. Macy's Stores W., Inc.*, 2022 WL 194407, at *2 (S.D. Ohio Jan. 22, 2022) ("The parties agree that [ASTM 3775] is the appropriate method for counting threads in a sheet.").

"when" [the approximate date of the plaintiff's purchases], "where" [on the label], and "how" [by misrepresenting the number of cups of coffee that could me made]). Nothing more is required.[8]

### C. Plaintiffs adequately plead an economic injury by alleging they would not have bought the Sheets or would have paid less for them but for Walmart's conduct.

Walmart further tries to (ineffectively) defeat Plaintiffs' claims by arguing they do not adequately allege an economic injury, Mot. at 11-14, but to plead a sufficient economic injury under Plaintiffs' state consumer-protection and common law fraud claims, Plaintiffs only need to plausibly allege they incurred economic loss because of Walmart's conduct. *See McDonnell v. Nature's Way Prods., LLC*, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017) (under the ICFA, "actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property'" (citation omitted)); *see also Escobar v. Just Born Inc.*, 2017 WL 5125740, at *4 (C.D. Cal. June 12, 2017) ("Plaintiff's CLRA, UCL, and FAL causes of action require her to demonstrate that she suffered harm."); *Labella Winnetka, Inc. v. Gen. Cas. Ins. Co.*, 259 F.R.D. 143, 147 (N.D. Ill. 2009) ("[T]o prevail on a claim for common law fraud in Illinois, a Plaintiff ultimately must prove . . . plaintiff's damages resulting from reliance on the statement.").

At this stage of the litigation, Plaintiffs need not specify the degree of harm they incurred as a result of Walmart's misconduct. For example, Walmart insists Plaintiffs needed to specify the "standard with which to evaluate whether a sheet is of lower quality or whether it is softer or more comfortable to the consumer" and/or sheet comparators to demonstrate "one is softer or more comfortable than the other as a result of the higher number of threads," Mot. at 12, but such so-called

---

[8] In a last-ditch effort, Walmart claims that "Plaintiffs do not allege that [the 2005 FTC opinion letter or 2017 ITC general exclusion order] pertained to the Hotel Style Sheets." Mot. at 11. However, Plaintiffs do not claim that FTC or ITC tested the Sheets; rather, they rely on these authorities to corroborate that ASTM is the industry's standard thread counting methodology. (Walmart separately tries to undermine the 2017 order as "since-rescinded," Mot. at 3, but this overlooks Plaintiffs' allegation that "[t]he recission order did not alter the ITC's factual finding" as it "was based on [the complainant's] contention that continued enforcement of the order would harm it more than simple rescission of the order would." FAC ¶ 44 n.31.)

obligations are currently inapt. *See, e.g., McDonnell*, 2017 WL 1149336, at *3 (under ICFA plaintiff need not "plead more" than "she paid more for the products than they were actually worth and would not have purchased the vitamins at the price she paid if she had known that they contained foreign-sourced vitamins" (cleaned up)); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (plaintiff alleged adequate damages in connection with CLRA, UCL, and FAL claims because a "consumer's allegation that she would not have bought the product but for the misrepresentation . . . is sufficient to allege causation . . . [and] to allege economic injury" (internal quotation marks omitted)).[9]

In fact, in *Fuchs*, the Northern District of Illinois expressly disclaimed a requirement to allege "alternative products" plaintiffs would have bought but for defendant's deception. *See Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *5 (N.D. Ill. Sept. 29, 2017) ("Nor must [plaintiffs] allege the existence or identity of alternative products they would have purchased, as [defendant] seems to presume."). The court concluded: "[Plaintiffs] allege that they would not have bought the lumber—or would have paid less for it—because there was less of it than expected. At the pleading stage, those assertions must be accepted as true, so Plaintiffs did adequately allege actual damages under ICFA." *Id.* (internal citations omitted).[10]

---

[9] *See also Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1078-79 (E.D. Cal. May 10, 2010) (denying motion to dismiss UCL and FAL claims because plaintiffs "assert[ed] that they would have purchased alternative drink products [and] that they paid more for defendant's drink products and would have been willing to pay less if they had not been misled by defendant's labeling") Also, whether "the sheets in question have deteriorated" or "the length of time sheets in question would be expected to serve their purpose in order to be appropriately long-lasting," Mot. at 12, is inapposite, as Plaintiffs do not allege misrepresentation of the Sheets' duration.

[10] *See also Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911-12 (N.D. Ill. 2011) (holding plaintiffs pled actual damages under the ICFA by alleging "they would not have purchased the Video Monitors, or paid the purchase price for the Video Monitors, had this information been provided on the Video Monitors' packaging or in its advertising"); *Biffar v. Pinnacle Foods Group, LLC*, 2016 WL 7429130, at *4 (S.D. Ill. Dec. 22, 2016) (deeming allegation that "the price of the muffin mix as represented was too much, or more than the value of the muffin mix as sold and that she would not have purchased it or would have paid less for it had she known it contained synthetic ingredients . . . . a plausible theory of damages"); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 987, 990 (N.D. Ill. 2013) (allegation "[plaintiff] was deprived of the benefit of the bargain because the Diaper [] product was actually worth less than what it would have been worth had it actually been proven superior in odor control to its competitors. . . . [wa]s sufficient to plead actual damages under the

Walmart's demand for more runs afoul of the basic principle that Plaintiffs need not set forth a specific damages model at the pleading stage. They need only plausibly allege their injuries flowed from Walmart's conduct. *See Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *9 (N.D. Ill. Aug. 18, 2017) ("[i]t is sufficient to allege that [plaintiff] suffer[ed] a pecuniary loss by receiving goods that are worth less than was promised" as "[he] is not required to plead in his complaint the precise damages theory on which he will ultimately rely or the precise amount of damages he suffered" (cleaned up)); *see also Grabowski v. Dunkin' Brands, Inc.*, 2017 WL 6059966, at *4 (N.D. Ill. Dec. 7, 2017) ("It is premature at the pleadings stage to challenge [plaintiff's] calculation of damages. [Plaintiff] alleges that he wanted a donut with real blueberries and he did not receive such a product."). Rather, it is enough that Plaintiffs state, based on plausible facts, that Walmart's misrepresentations and omissions caused them to purchase the Sheets or overpay for them. *See, e.g.*, *Ulrich*, 2017 WL 3581183, at *9 ("It is a reasonable inference from plaintiff's allegations that the Products were worth less than he paid for them because they were protein supplements that contained at least some effectively indigestible protein.").

Here, Plaintiffs have done just that. They plausibly allege Walmart's inflated thread count representations induced them to purchase the sheets or pay a premium for them. *See* FAC ¶¶ 54-57. The Court must defer to these well-pled allegations at this juncture. *See Harris v. City of Chi.*, 479 F. Supp. 3d 743, 747 (N.D. Ill. 2020). Tellingly, rather than confront the abundant in-circuit caselaw demonstrating the adequacy of Plaintiffs' damages allegations, Walmart cites just two out-of-circuit decisions in support of its proposition that Plaintiffs must precisely outline their damages analysis at the pleading stage: *Adam v. AQ Textiles LLC*, 2021 WL 3475677 (M.D.N.C. Aug. 6, 2021) and *Hill v. AQ Textiles LLC*, 2021 WL 1026740 (M.D.N.C. Mar. 17, 2021). This Court should disregard *Adam* and *Hill* because they contradict applicable in-Circuit law (as well as Ninth Circuit law applicable to

---

ICFA"). Plaintiffs' allegations are substantially similar in nature to these allegations that numerous courts have found sufficient. There is no reason for this Court to deviate from this standard.

Plaintiffs' California consumer-protection claims) making clear that plaintiffs need not allege comparators at the pleading stage. *See, e.g., supra, Fuchs,* 2017 WL 4339821, at *5.[11]

Accordingly, Walmart cannot sustain its demand for thorough analysis of Plaintiffs' losses at the pleading stage as a legal matter. It also cannot practically sustain it, as none of Walmart's attacks on the sufficiency of Plaintiffs' injuries can be adjudicated before the parties have conducted any discovery, especially expert discovery that will elucidate Plaintiffs' losses.[12]

### D. A plaintiff's ability to represent a class is determined under Rule 23, not by a consideration of Article III standing.

Walmart additionally contends that Plaintiffs lack Article III standing to bring claims based on products they did not purchase, Mot. at 8, but ignores this is a question more appropriately addressed at class certification. Plaintiffs have standing where they "allege[] an 'injury in fact' that is traceable to [the defendant's conduct] and can redressed by a lawsuit." *Arreola v. Godinez,* 546 F.3d 788, 795 (7th Cir. 2008); *Daly v. FitLife Brands, Inc.,* 2023 WL 6388112, at *6 (N.D. Ill. Sept. 29, 2023) ("[Plaintiff] suffered a monetary injury, thus satisfying the Article III standing requirement."). Here, as explained,

---

[11] Also, as mentioned, *supra* § IV.B, *Hill 1,* 2021 WL 1026740, was superseded by *Hill 2,* 582 F. Supp. 3d 297, which did not require comparators, and found plaintiffs' added factual allegations about testing sufficient. *Adams* also does not foreclose Plaintiffs' claims; it suggests plaintiffs could have alleged a sufficient injury-in-fact if ASTM was "the current dominant standard in the industry," *Adam,* 2021 WL 3475677, at *5, and here, Plaintiffs adequately allege ASTM is the industry standard, as endorsed by the FTC and ITC (an allegation not raised in *Adams*). Walmart's discussion of its 600-thread-count 100% cotton sheets that cost more than the (800-thread-count cotton-polyester) Sheets is yet another red herring, and certainly not a "contradictory allegation[]." Mot. at 13. The Complaint makes clear that Walmart's thread count misrepresentation deceived Plaintiffs into buying the Sheets because they (like any reasonable consumer) care about thread count. Therefore, regardless of the price of Walmart's 600 thread count "all cotton" or "100% cotton" sheets, Plaintiffs were injured by not getting what they paid for and what they expected.

[12] Walmart's passing reference to the economic loss doctrine also does not defeat Plaintiffs' claim for damages for Walmart's negligent misrepresentations. Mot. at 14 n.6. Walmart contends the doctrine "prohibits recovery in tort solely for economic loss," *id.,* but the doctrine is inapplicable "where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.,* fraud." *In re Chi. Flood Litig.,* 176 Ill. 2d 179, 199 (1997). *See also Clay Fin. LLC v. Mandell,* 2017 WL 3581142, at *4 (N.D. Ill. Aug. 18, 2017) (allegation that defendant induced plaintiffs' investments with "misrepresentations [that] were not innocent," *i.e.,* "intentionally ma[de] false representations," precluded application of the economic loss doctrine). Plaintiffs stated a claim for common law fraud by plausibly alleging Walmart fraudulently misrepresented and omitted the true thread count of the Sheets. *Supra.* Therefore, the economic loss doctrine does not apply.

Plaintiffs suffered an injury-in-fact traceable to Walmart's conduct through purchase of Sheets representing an inflated thread count. *Supra* § IV.C. That is the end of the standing inquiry.

Courts within this District have recently taken "the prevailing view" that once Article III standing is established (as it has been here), whether the plaintiff may represent absent class members that purchased a different product is "a question primarily of typicality and commonality to be evaluated at the class certification stage" and not the pleading stage. *Daly v. Glanbia Performance Nutrition, Inc.*, 2023 WL 5647232, at *5 (N.D. Ill. Aug. 31, 2023); *see also FitLife Brands,* 2023 WL 6388112, at *6 (plaintiff demonstrated Article III standing and "whatever mismatch there might be between what drink flavor Daly bought and what other class members bought" would be "analyzed at the certification-evaluation stage"); *Tex. Hill Country Landscaping, Inc. v. Caterpillar*, 522 F. Supp. 3d 402, 407-09 (N.D. Ill. 2021) (named plaintiffs' ability to represent absent class members was not a standing issue, but depended on their ability to satisfy Rule 23) (collecting cases); *Friend v. FGF Brands (USA) Inc.*, 2019 WL 2482728, at *3 (N.D. Ill. June 12, 2019) ("plaintiff alleges that her injuries were caused by the same allegedly deceptive representations" so "whether [she] has Article III standing as to the products she did not purchase must be decided at class certification").[13]

---

[13] Walmart relies on *Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215 (N.D. Ill. July 12, 2021); *Willard v. Tropicana Manuf. Co., Inc.*, 577 F. Supp. 3d 814 (N.D. Ill. 2021); and *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017) to argue Plaintiffs lack standing to assert claims for absent class members unless they purchased identical products. These cases represent a lineage of cases that find "[p]laintiffs lack standing to assert claims over any [p]roducts that they *did not* actually purchase" but "have standing to assert claims based on any [p]roducts they *did* purchase." *Willard*, 577 F. Supp. 3d at 825; *Bakopoulos*, 2021 WL 2915215, at *3; *Cowen*, 2017 WL 4572291, at *3. On a similar basis, Walmart relies on *Muir v. NBTY, Inc.*, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016) in connection with its argument Plaintiffs' claims fail Rule 12(b)(6) (in particular, their express warranty claim). Mot. at 9. However, these cases are inapt: they involve substantively different products such that the plaintiffs' claims about one product are not transferrable to others, whereas here, the Sheets are all manufactured through the same process, cut from the same cotton polyester blended fabric, and contain the same "800 thread count" misrepresentation. FAC ¶¶ 25-27. Unlike in *Willard*, for example, where plaintiffs brought claims for different juice products that were necessarily different in substance (*e.g.*, apple, grape, and mango), *Willard*, 577 F. Supp. 3d at 820; *see also, e.g., Muir*, 2016 WL 5234596, at *1 (case involving products manufactured by different defendants), the Sheets are not just "substantially similar" but essentially the same products, made by the same Defendants. Color and size variation is akin to buying a twenty-pack of cookies instead of ten-pack made by the same defendant, in the same way. It presents no real difference.

Even where courts conflate the standing and Rule 23 analyses, however, plaintiffs allegedly injured by certain products can pursue relief in connection with substantially similar products, as Plaintiffs do here. One of the earliest Northern District cases conflating standing with the ability of a named plaintiff to represent a class was *Mednick v. Precor, Inc.*, 2014 WL 6474915 (N.D. Ill. Nov. 13, 2014). In *Mednick*, the court concluded that because Mednick's complaint only addressed a specific uniform component of each machine, differences between the machines did not matter. *Id.* at \*4 (holding Mednick had standing to pursue claims related to all 19 products). Other courts in the Northern District have adopted the substantially similar test. *See, e.g., Vanzant v. Hill's Pet Nutrition Inc.*, 2023 WL 6388300, \*4 (N.D. Ill. Sept. 29, 2023) (plaintiffs had standing for claims involving all of the defendant's prescription diet foods, although they only purchased two varieties, because they were "marketed and sold as therapeutic despite not being evaluated or approved by the FDA . . . and all [were] subject to a uniform prescription requirement that allegedly [misled] purchasers because it indicate[d] that the prescription [was] legally required").[14]

Here, Walmart's contention that Plaintiffs lack standing to bring claims based on products they did not purchase is more appropriately addressed at class certification. However, even if presently considered, Plaintiffs easily satisfy the substantially similar test. The Sheets are all made from the same material, and their packaging contains the same misrepresentation regarding the thread count. FAC

---

[14] *See also Kubilius v Barilla Am., Inc.*, 2019 WL 2861886, at \*3 (N.D. Ill. July 2, 2019) ("I cannot discern any meaningful way in which a consumer who purchases 'Traditional' pasta sauce that contains citric acid and claims to have been deceived by the label's 'no preservatives' representation because citric acid is, in fact, a preservative suffers a distinct injury from a consumer who purchases 'Chunky Traditional' pasta sauce that contains citric acid and claims to have been deceived by the same 'no preservatives' representation on the same theory of falseness."); *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at \*8 (N.D. Ill. Sept. 13, 2022) (adopting substantially similar test); *Wagner v. General Nutrition Corp.*, 2017 WL 3070772, \*5-6 (N.D. Ill. July 19, 2017) (same); *Carrol v. S.C. Johnson & Son, Inc.*, 2018 WL 1695421, at \*4 (N.D. Ill. Mar. 29, 2018) (plaintiffs who only purchased lotion could represent class members who purchased spray because the products were substantially similar "with no material differences relevant to the claims brought"); *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at \*6 (N.D. Ill. Aug. 18, 2017) ("Ultimately, the Court fails to see any meaningful difference between the injury suffered by someone who purchased Probalance Protein Shot . . . or one of the other Products. The Products and the alleged misrepresentations are substantially similar, so plaintiff has standing regardless of whether he purchased all four of the Products or only some of them.").

¶¶ 25-27, 54-56. Walmart relies on *Ibarolla v. Nutrex Rsch., Inc.*, 2012 WL 5381236, at *2-5 (N.D. Ill. Oct. 31, 2012), but in *Ibarolla* the plaintiff's failure to "state the content and timing of the alleged misrepresentations with [] particularity" precluded the court from determining "what particular misrepresentations [she] relied on," *id.*, whereas here, Plaintiffs allege with specificity what products they purchased and what representations they relied on. *Supra* § IV.B. Walmart also relies on *Beckman v. Arizona Canning Co., LLC*, 2017 WL 4227043, at *5 (S.D. Cal. Sept. 21, 2017), but in *Beckman* the plaintiff only generically plead they purchased a can of beans and failed to "sufficiently provide the 'who, what, where and how' of the alleged misconduct," *id.*, whereas, again, Plaintiffs set forth detailed allegations about the contents of the misrepresentation and why it is false. *Supra.* In this Circuit, such allegations pass muster under Rule 9(b)'s heightened pleading requirement.

### E.      Plaintiffs have properly plead their claim for unjust enrichment.

Walmart asserts Plaintiffs' unjust enrichment claim fails because their fraud claims fail, Mot. at 14, but, as shown, its arguments for dismissing Plaintiffs' fraud claims are not viable. *Supra* §§ IV.B-D. Thus, if the Court declines to dismiss Plaintiffs' fraud claims, it should also permit Plaintiffs' unjust enrichment claim to proceed as Walmart raises no other basis for dismissing it.

### F.      Plaintiffs adequately state a claim for breach of express warranty.

Walmart first argues in one (unsubstantiated) sentence that Plaintiffs fail to allege Walmart breached any express warranty, Mot. at 14, but Plaintiffs sufficiently allege that Walmart expressly warranted on the packaging that the Sheets' thread count was 800 but that such warranty was breached because "expert testing conducted pursuant to the industry accepted methodology contained in the [ASTM] Standard Test Method . . . reveals that the thread count of Walmart's Hotel Style Sheets is less than half of the represented and warranted 800 thread count." FAC ¶ 7; *supra* § IV.B.

Walmart also disputes the sufficiency of Plaintiffs' allegation they provided pre-suit notice of the breach "shortly after" discovering it, Mot. at 14, but Illinois and California law do not require

more at the pleading stage.[15] Under Illinois and California law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" 810 Ill. Comp. Stat. Ann. 5/2-607(3)(a); Cal. Com. Code § 2607(3)(A). Unless the evidence in the record allows for "no inference . . . other than that the notification was unreasonable," the question of reasonableness of timing "remains a question for the jury." *Datil v. C.R. Bard, Inc.*, 2020 WL 5810402, at *6 (N.D. Ill. Sept. 30, 2020) (cleaned up); *Oettle v. Walmart, Inc.*, 2022 WL 3584944, at *2 (S.D. Ill. Aug. 22, 2022) (whether the timing is "reasonable[] is a question of fact that depends on the circumstances of each case"). In Illinois, timing "[is] not unreasonable as a matter of law where there is no prejudice to the seller." *Oettle*, 2022 WL 3584944, at *2-3 (lapse in providing notice nearly 22 months after discovering the breach was not unreasonable as a matter of law because the court "cannot discern whether . . . Defendants suffered prejudice by the delay").

Plaintiffs allege "[they] provided Defendants with written notice of Defendants' breach of the express warranty shortly after Plaintiffs discovered the breach by letter, which was sent to Defendants by Plaintiffs' counsel by certified mail on or around July 7, 2023." FAC ¶ 183. It informed Walmart that various consumers purchased the "Hotel Style Sheets . . . [which were labeled] '800 Thread Count' when the true thread count [was] far lower[,]" and that by making these misrepresentations, "Walmart has breached an express warranty to [those consumers]." FAC, Ex. A at 2.[16]

---

[15] Walmart specifically says that Plaintiffs' "claims [for breach of express warranty] should be dismissed for the independent reason that Plaintiffs failed to allege that they brought them 'within a reasonable time after [they] discover[ed] or should have discovered any breach.'" Mot. at 14 (first citing 810 Ill. Comp. Stat. Ann. 5/2-607(3)(a); and then citing Cal. Com. Code § 2607(3)(A)). Because these laws do not govern the timing of bringing "them" (*i.e.*, claims) but of giving **notice**, Plaintiffs assume that Walmart wrote "them" in error.

[16] Plaintiffs sent pre-suit notice more than one month prior to filing suit on August 10, 2023. *See* Dkt. 1. By providing Walmart over 30 days to respond, Plaintiffs' notice "open[ed] the way for normal settlement through negotiation" and, therefore, fulfilled the purpose of pre-suit notice. *Whitwell v. Wal-Mart Stores, Inc.*, 2009 WL 4894575, at *4 (S.D. Ill., Dec. 11, 2009) (quoting 810 ILCS 5/2-607, cmt. 4); *Grausz v. Kroger Co.*, 2021 WL 5534706, at *8 (S.D. Cal. Jan. 22, 2021) (same for Cal. Com. Code § 2607); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015) (purpose of pre-suit notice requirement "is to encourage parties to resolve the dispute short of litigation").

Walmart's only challenge to Plaintiffs' notice is that it failed to state exactly "*when* this alleged discovery occurred," Mot. at 15 (emphasis in original), but offers no authority requiring that level of specificity. Walmart cites *Muir v. NBTY, Inc.*, 2016 WL 5234596, at *9, wherein the plaintiff did not allege he provided *any* pre-suit notice (plaintiff "contend[ed] that the notice requirement [was] inapplicable"); however, Plaintiffs here indisputably provided detailed notice, FAC, Ex. A. Walmart next relies on *Ratkovich ex rel. Ratkovich v. Smithkline*, 711 F. Supp. 436, 438 (N.D. Ill. 1989), which involved a court's (rare) determination as a matter of law that plaintiff's pre-suit notice was untimely because she waited 28 years to notify the defendant of its breach. *Id.* (proposing (not requiring) "the date the breach occurred" as information plaintiff could have alleged given extraordinary scenario where "it virtually impossible to believe that plaintiff's parents were unaware of the possibility of [defendant's] breach of its implied warranties until 28 years after plaintiff was born with brain damage").

Moreover, dismissal is not the proper remedy for a challenge to the timing of pre-suit notice. *See Oettle*, 2022 WL 3584944, at *2 (whether timing is "reasonable[] is a question of fact"); *see also Maldonado v. Creative Woodworking Concepts, Inc.,* 694 N.E.2d 1021, 1026 (Ill. App. Ct. 1998) ("[w]hether the plaintiffs slept on their rights in this circumstance, resulting in an unreasonable delay in notification, is a question properly left to the trier of fact"). In fact, under Illinois law, the Court can only deem the timing unreasonable as a matter of law if an alleged delay caused Walmart prejudice or was in "bad faith," *Maldonado,* 694 N.E.2d at 1026, but Walmart does not state it suffered any prejudice from the timing of Plaintiffs' pre-suit notice or that its timing was in bad faith, *see* Mot. at 14-15.[17] Therefore, dismissal on this basis would be improper. *See Oettle*, 2022 WL 3584944, at *3 (where court

---

[17] Walmart cites no California caselaw to support its claim that Plaintiffs failed to sufficiently allege they provided Walmart notice of the breach within a reasonable time. However, the assessment of reasonableness under California law resembles that of Illinois law, *i.e.*, reasonableness is assessed "under the circumstances." *See, e.g., Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.,* 2014 WL 2916472, at *8 (N.D. Cal., Jun. 26, 2014). Hence, under Illinois or California law, this is a question for the factfinder, not the court on a motion to dismiss.

"cannot discern whether, given the circumstances, Defendants suffered prejudice by the delay . . . . whether [plaintiff's] pre-suit notice was legally sufficient is debatable, and [its] adequacy . . . . cannot provide a basis for dismissal at this stage").

In short, "the notice rule is required 'to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.'" *Keith v. Ferring Pharms., Inc.*, 2016 WL 5391224, at *6 (N.D. Ill. Sept. 27, 2016) (citation omitted). The Court should not deprive Plaintiffs of a remedy when they gave detailed notice and alleged such notice in the FAC. Disputes over the precise timing of Plaintiffs' notice and discovery of the breach can be tested at summary judgment.

### G. No viable basis exists for dismissing Plaintiffs' requests for injunctive relief.

Walmart contends Plaintiffs' injunctive relief claims fail because they "do not have a likelihood of future injury," Mot. at 15 (cleaned up), but under Illinois law plaintiffs can establish a risk of future harm by alleging a defendant continues its deceptive labeling practices, even without expressly stating their intention to purchase the products again. *See, e.g., Muir*, 2016 WL 5234596, at *10 (allegation "Defendants continue to advertise, distribute, label, manufacture, market, and sell the Products in a false, misleading, unfair, and deceptive manner . . . . [was] enough to establish [standing to seek injunctive relief], at [the pleading] stage" (cleaned up)); *Carrol*, 2018 WL 1695421, at *4 ("alleg[ations] that Defendant continues to manufacture, distribute, and deceptively label and advertise the Products as having a 50+ SPF rating when Plaintiffs' alleged test results indicate a much lower SPF . . . . are sufficient to plead standing for injunctive relief"). This is the "better view," given the "public policy conundrum inherent in the contrary view: the injunctive provisions of consumer protection statutes such as ICFA could never be invoked to enjoin deceptive practices if the complaining consumer's standing dissipated the moment she discovered the alleged deception and could no longer be fooled." *Leiner v. Johnson & Johnson Consumer Cos., Inc.*, 215 F. Supp. 3d 670, 672-73 (N.D. Ill. 2016).

18

If this is not enough, this Court has repeatedly found that plaintiffs alleged adequate risk of future harm where a product is deficient rather than "flawed or defective," rendering it "implausible that [they] were likely to purchase them again." *Curran v. Bayer Healthcare LLC*, 2019 WL 398685, at *5 (N.D. Ill., Jan. 31, 2019); *see FitLife Brands,* 2023 WL 6388112, at *4 (a plaintiff may "be fooled again" where alleged falsity stems from "the amount of a particular ingredient, a fact that the plaintiff would not readily be able to discern"); *see, e.g.*, *Shirley v. Reynolds Consumer Prods., LLC*, 636 F. Supp. 3d 907, 915 (N.D. Ill. 2022) ("Plaintiff . . . does not claim that defendant's product was defective but only that it was priced in accordance with characteristics it purported to have but did not. I am not convinced, at this stage, that plaintiff is barred from pursuing injunctive relief."). Under California law, plaintiffs who "now know[] or suspect[] that the advertising was false at the time of the original purchase" may also have standing to seek injunctive relief where "[they] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to" or "might purchase the product in the future . . . as [they] may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018).[18]

Here, Plaintiffs allege that Walmart continues to deceptively and falsely advertise the thread count of its Sheets and thus continues to violate multiple Illinois and California laws. *See, e.g.*, FAC ¶¶ 7, 124, 126, 128, 134. These allegations are "sufficient to plead standing for injunctive relief." *Carrol*, 2018 WL 1695421, at *4. Further, Plaintiffs do not allege the Sheets are useless or ineffective, but that Walmart falsely advertises their thread count, "a fact that [Plaintiffs] would not readily be able to discern," so they could easily be "fooled again" if the practice continues. *FitLife Brands*, 2023 WL

---

[18] Plaintiffs allege they may have "paid a lower price" for the Sheets "had they known the[ir] actual thread count at the time of purchase." FAC ¶ 10. In other words, Plaintiffs may still want to purchase the Sheets, if manufactured in alignment with the represented thread count.

6388112, at *4. The Court should not preclude Plaintiffs from seeking to enjoin Walmart's deceptive practices when those practices are not only ongoing, but expose them to this risk.[19]

Walmart next claims Plaintiffs cannot seek injunctive relief because "they do not allege that legal damages . . . are inadequate." Mot. at 15. However, because monetary damages remedy past harm whereas injunctions remedy *future* harm, courts frequently let plaintiffs seek injunctive relief without alleging legal damages' inadequacy. *See, e.g.*, *Ellison v. Aurora E. Sch. Dist. 131*, 2009 WL 884949, at *5 (N.D. Ill. Mar. 27, 2009) (plaintiff could seek damages and injunctive relief related to publication of false information because the information could affect him in the *future*); *O'Sullivan v. City of Chi.*, 478 F. Supp. 2d 1034, 1043 n.6 (N.D. Ill. Mar. 15, 2007) (no adequate remedy at law where "monetary recompense such as back pay [would] not necessarily alleviate the need for injunctive relief to make the plaintiff whole").[20] Plaintiffs seek damages for losses from past Sheet purchases and injunctive relief to prevent Walmart from misrepresenting the Sheets' thread count on a going forward basis. *See, e.g.*, FAC ¶ 90. These remedies address separate harms, so Plaintiffs can pursue both of them.

## V.    CONCLUSION

For all the reasons outlined above, the Court should deny Walmart's motion to dismiss.

---

[19] Walmart offers a single case to contend Plaintiffs have no threat of future injury, *Calderon v. Procter & Gamble Co.*, 2023 WL 3627797 (N.D. Ill. May 24, 2023), but the plaintiff in *Calderon* had "fail[ed] to provide a 'concrete basis to conclude that the plaintiffs will or must purchase the product again in the future and be deceived,'" *id.* at *6. By contrast, the FAC suggests Plaintiffs may purchase the Sheets again if they believe Walmart has cured the misrepresentation (especially because, unlike the product in *Calderon*, the Sheets are not "worthless," *id.*). If the Court still questions Plaintiffs' ability to seek injunctive relief based on this harm, it should not decide the issue on the pleadings, but later in the litigation—at class certification or summary judgment. *See, e.g.*, *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, at *5 (N.D. Cal. Mar. 18, 2015) (adjudicating standing to represent 23(b)(2) class on motion for class certification); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 688 (N.D. Cal. 2021) (on summary judgment motion, considering plaintiff's testimony he "would be 'open to' purchasing the [products] again if his issues with it were remedied" in assessing his standing to seek injunctive relief).
[20] *See also Zeiger*, 526 F. Supp. at 687 ("California's consumer protection laws permit courts to issue injunctions that serve different purposes and remedy different harms than retrospective monetary damages"); *Linton v. Axcess Fin. Servs., Inc.*, 2023 WL 4297568, at *3 (N.D. Cal., Jun. 30, 2023) ("declin[ing] to extend [the Ninth Circuit's] inadequate-remedy-at-law requirement to [plaintiff's] injunctive relief claim" because "retrospective monetary damages will not prevent the future harm only remediable by an injunction").

Date: January 8, 2024

*/s/ Frank A. Bartela*
Frank Bartela (OH Bar #0088128)*
*fbartela@dworkenlaw.com*
Nicole T. Fiorelli (OH Bar #0079204)*
*nfiorelli@dworkenlaw.com*
**DWORKEN & BERNSTEIN**
60 South Park Place
Painesville, OH 44077
Telephone: (440) 352-3391

*Admitted to practice in the Northern District of Illinois.*

Andrea R. Gold (Bar No. 6282969)
*agold@tzlegal.com*
Leora N. Friedman (admitted *pro hac vice*)
*lfriedman@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*Counsel for Plaintiffs Arnesia Thomas, Pascha Perkins, and Vernita Faison*

## **CERTIFICATE OF SERVICE**

I certify that on January 8, 2024, I electronically filed the foregoing *Opposition to*

*Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint* using this

Court's CM/ECF service. All counsel of record will be served via the Court's electronic filing

system. Parties may access this filing through the Court's system.


/s/ Frank A. Bartela
Frank A. Bartela, Esq.
**DWORKEN & BERNSTEIN CO., L.P.A.**


*One of the Attorneys for Plaintiffs*

22