**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ARNESIA THOMAS, PASCHA PERKINS, and VERNITA FAISON, individually and as a representative of all others similarly situated, | |
| Plaintiffs, | Civil No. 1:23-cv-05315 |
| v. | District Judge: Jeremy C. Daniel |
| | Magistrate Judge: Heather K. McShain |
| WALMART INC. and WAL-MART STORES, INC., | |
| Defendants. | |

**DEFENDANTS WALMART INC.'S AND WAL-MART STORES, INC.'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST**
<u>**AMENDED CLASS ACTION COMPLAINT**</u>

# TABLE OF CONTENTS

I.     Plaintiff Faison's Claims Should Be Dismissed for Lack of Personal Jurisdiction............ 1

II.    Plaintiffs' Claims Regarding Sheets They Did Not Purchase Should Be Dismissed.......................................................................................................................... 5

III.   Plaintiffs Do Not Allege Specific Facts Showing That the Hotel Style Sheets Have an Inflated Thread Count......................................................................................... 7

IV.   Plaintiffs Have Not Sufficiently Alleged That They Were Economically Injured............. 9

V.    Plaintiffs' Unjust Enrichment Claim Fails with Their Fraud Claims. ............................ 11

VI.   Plaintiffs Fail To State a Claim for Breach of Express Warranty.................................... 11

VII.  Plaintiffs Cannot Seek Injunctive Relief........................................................................ 12

CONCLUSION.......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. AQ Textiles LLC*,
2021 WL 3475677 (M.D.N.C. Aug. 6, 2021) ....................................................8, 10

*Al Haj v. Pfizer Inc.*,
338 F. Supp. 3d 741 (N.D. Ill. 2018) ...................................................................3

*Bakopoulos v. Mars Petcare US, Inc.*,
2021 WL 2915215 (N.D. Ill. July 12, 2021) .....................................................1, 6

*Baldwin v. Star Sci., Inc.*,
2016 WL 397290 (N.D. Ill. Feb. 2, 2016) ............................................................12

*BCBSM, Inc. v. Walgreen Co.*,
512 F. Supp. 3d 837 (N.D. Ill. 2021) ...................................................................11

*Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*,
2014 WL 4054240 (S.D.N.Y. Aug. 15, 2014) ........................................................8

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017)..........................................................................................3, 4

*Bohn v. Boiron, Inc.*,
2013 WL 3975126 (N.D. Ill. Aug. 1, 2013) .........................................................12

*Borders v. Wal-Mart Stores, Inc.*,
2018 WL 9645780 (S.D. Ill. Mar. 29, 2018) ..........................................................4

*Brodsky v. Aldi Inc.*,
2021 WL 4439304 (N.D. Ill. Sept. 28, 2021) .....................................................5, 6

*Calderon v. Procter & Gamble Co.*,
--- F. Supp. 3d ---, 2023 WL 3627797 (N.D. Ill. May 24, 2023)...........................13

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ...............................................................11, 13, 14

*Carrol v. S.C. Johnsons & Son, Inc.*,
2018 WL 1695421 (N.D. Ill. Mar. 29, 2018)..........................................................6

*Corwin v. Connecticut Valley Arms, Inc.*,
74 F. Supp. 3d 883 (N.D. Ill. 2014) ......................................................................7

*Cowen v. Lenny & Larry's, Inc.*,
    2017 WL 4572201 (N.D. Ill. Oct. 12, 2017)...................................................................6

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...........................................................................................................2

*Daly v. FitLife Brands, Inc.*,
    2023 WL 6388112 (N.D. Ill. Sept. 29, 2023) ...........................................................14

*DeMaso v. Walmart Inc.*,
    655 F. Supp. 3d 696 (N.D. Ill. 2023) .........................................................................12

*DeVane v. Walmart Inc.*,
    2022 WL 19828969 (N.D. Ala. Dec. 21, 2022).........................................................3

*Dolch v. Linen Source Inc.*,
    2008 WL 11336301 (M.D. Fla. Jan. 3, 2008) ...........................................................10

*Fuchs v. Menard, Inc.*,
    2017 WL 4339821 (N.D. Ill. Sept. 29, 2017) ...........................................................11

*In re Herbal Supplements Mktg. & Sales Pracs. Litig.*,
    2017 WL 2215025 (N.D. Ill. May 19, 2017) ............................................................13

*Hill v. AQ Textiles, LLC*,
    2021 WL 1026740 (M.D.N.C. Mar. 17, 2021) .....................................................8, 9, 10

*Hill v. AQ Textiles, LLC*,
    582 F. Supp. 3d 297 (M.D.N.C. 2022) .....................................................................8, 9

*Kipp v. Ski Enter. Corp. of Wis.*,
    783 F.3d 695 (7th Cir. 2015) ....................................................................................2, 3

*Leibovitch v. Islamic Republic of Iran*,
    188 F. Supp. 3d 734 (N.D. Ill. 2016) .........................................................................2

*Leiner v. Johnson & Johnson Consumer Cos., Inc.*,
    215 F. Supp. 3d 670 (N.D. Ill. 2016) .......................................................................14

*Martin v. Wal-Mart Stores, Inc.*,
    2007 WL 3231414 (N.D. Ill. Oct. 26, 2007).............................................................14

*McDonnell v. Nature's Way Products, LLC*,
    2017 WL 1149336 (N.D. Ill. Mar. 28, 2017)............................................................10

*Mednick v. Precor, Inc.*,
    2014 WL 6474915 (N.D. Ill. Nov. 13, 2014) ........................................................6, 14

*Myers v. Wakefern Food Corp.*,
    2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ............................................................8

*Myles v. Walmart Inc.*,
    2022 WL 17842811 (M.D. La. Nov. 23, 2022) ......................................................3

*Nautilus Ins. Co. v. COA, Inc.*,
    2023 WL 2933055 (N.D. Ill. Apr. 13, 2023) ........................................................4

*Padilla v. Costco Wholesale Corp.*,
    2012 WL 2397012 (N.D. Ill. June 21, 2012) ........................................................6

*Payton v. Cnty. Of Kane*,
    308 F.3d 673 (7th Cir. 2002) ................................................................................5

*Pearson v. Target Corp.*,
    2012 WL 7761986 (N.D. Ill. Nov. 9, 2012) ........................................................6

*Perkins v. Benguet Consol. Min. Co.*,
    342 U.S. 437 (1952) ..............................................................................................2

*Porter v. NBTY, Inc.*,
    2016 WL 6948379 (N.D. Ill. Nov. 28, 2016) ......................................................6

*Rushing v. Williams-Sonoma, Inc.*,
    2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) ....................................................9

*Sabo v. Wellpet, LLC*,
    282 F. Supp. 3d 1040 (N.D. Ill. 2017) ..............................................................10

*Santiful v. Wegmans Food Markets, Inc.*,
    2023 WL 2457801 (S.D.N.Y. Mar. 10, 2023) ....................................................7

*Sierakowski v. Ryan*,
    223 F.3d 440 (7th Cir. 2000) ..............................................................................13

*Solo v. Bed Bath & Beyond, Inc.*,
    2007 WL 1237825 (D.N.J. Apr. 26, 2007) ........................................................10

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................13

*Sweet v. BJC Health Sys.*,
    2021 WL 2661569 (S.D. Ill. June 29, 2021) ........................................................4

*Toussaint-Hill v. McMillon*,
    2019 WL 2030132 (N.D. Okla. May 8, 2019) ....................................................3

*Ulrich v. Probalance, Inc.*,
    2017 WL 3581183 (N.D. Ill. 2017) ..................................................................6, 14

*Wagner v. General Nutrition Corp.*,
    2017 WL 3070772 (N.D. Ill. 2017) .........................................................................6

*Willard v. Tropicana Mfg. Co., Inc.*,
    577 F. Supp. 3d 814 (N.D. Ill. 2021) ..................................................................5, 6

Plaintiffs' Opposition to Walmart's Motion to Dismiss confirms that this case rests on nothing more than their conclusory say-so that Walmart misrepresents the thread count of its Hotel Style Sheets. Plaintiffs still cannot point to any *facts* alleged in the First Amended Complaint ("FAC") that render their claims plausible: they have not alleged, for example, which sheets they tested, who tested them and when, how the testing was performed, or what specifically the results showed. Plaintiffs' allegations are too vague to state a claim under Rule 12(b)(6), much less under Rule 9(b)'s heightened pleading standard.

Unable to identify specific facts in the FAC that would support their claims, Plaintiffs instead make unsupported or irrelevant legal arguments that cannot save their claims from dismissal. Among other issues, Plaintiffs' argument that Walmart—which is neither incorporated in nor has its principal place of business in Illinois—is nevertheless subject to general jurisdiction here is flatly inconsistent with decades of established law. Plaintiffs also disregard a wealth of authority establishing that they do not have Article III standing to assert claims regarding sheets they did not purchase. And Plaintiffs' argument that they have standing to seek injunctive relief is similarly baseless.

Plaintiffs have already availed themselves of one opportunity to file an amended complaint that presumably reflects their best efforts to address the issues identified by Walmart. Their Opposition underscores that Plaintiffs cannot cure these issues, and the FAC should be dismissed with prejudice.

## I.     Plaintiff Faison's Claims Should Be Dismissed for Lack of Personal Jurisdiction.

"There are two types of personal jurisdiction: general and specific." *Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021). As Walmart explained in its opening motion, Walmart is not subject to specific personal jurisdiction in Illinois regarding Ms.

Faison's California-based claims. *See* Mot. to Dismiss FAC ("Mot.") at 6–7, ECF No. 30. Plaintiffs do not contend otherwise. *See* Opp. at 4–5, ECF No. 35.

Plaintiffs' argument that this Court can instead exercise general jurisdiction over Walmart, *see id.*, runs afoul of controlling precedent. The Supreme Court "has emphasized that [general jurisdiction] should not lightly be found" and that "general jurisdiction exists only when the organization is essentially at home in the forum State." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (cleaned up). The Supreme Court has identified "*only* two places where that condition will be met: the state of the corporation's principal place of business and the state of its incorporation." *Id.* (emphasis added) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014)). Neither condition applies here—as Plaintiffs acknowledge, Walmart is headquartered in Arkansas and incorporated in Delaware. *See* FAC ¶ 17. These facts alone should end the analysis.

Plaintiffs, however, argue that this is the "exceptional case" in which a company that is neither headquartered nor incorporated in a state can nonetheless be subject to general jurisdiction there. Opp. at 4. But the Supreme Court has explained that "stringent criteria" apply before an Illinois court can exert general jurisdiction over an organization that is not headquartered or incorporated here. *Kipp*, 783 F.3d at 698. "Those criteria require more than the substantial, continuous, and systematic course of business that was once thought to suffice." *Id.* (quotation omitted).[1]

---

[1] "The Supreme Court provided the following example of an 'exceptional' circumstance that would meet the standard: where a world war forced a foreign company to temporarily relocate its principal place of business to Ohio due to enemy activity abroad. In that circumstance, Ohio had effectively become 'a surrogate for the place of incorporation or head office,' such that the imposition of general jurisdiction was warranted." *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 746 (N.D. Ill. 2016) (citing *Daimler*, 571 U.S. at 130 n.8, 139 n.19, and *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952), *aff'd*, 852 F.3d 687 (7th Cir. 2017). Suffice it to say that this case does not present similar "exceptional" circumstances.

Walmart's allegedly "vast" operations in Illinois, FAC ¶ 17, do not satisfy this "stringent" test, *Kipp*, 783 F.3d at 698. "The presence of a defendant's employees in a forum State does not, by itself, create general jurisdiction in that State over that defendant." *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 750 (N.D. Ill. 2018) (denying general jurisdiction in Illinois over Pfizer). This is particularly so in the case of a large corporation such as Walmart, which has substantial operations spread across the country. As the Supreme Court recently explained, the general jurisdiction inquiry "calls for an appraisal of a corporation's activities in their entirety." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 406, 414 (2017) (rejecting argument that BNSF was subject to general jurisdiction in Montana given that only 6% of its railroad tracks and less than 5% of its work force were located there). Taking the FAC's allegations on their face, Walmart employs only ~3.6% of its U.S. employees and operates ~3.9% of its U.S. stores in Illinois. *See* FAC ¶¶ 1, 17. Appraising Walmart's "activities in their entirety," then, establishes that Walmart is not "so heavily engaged in activity in [Illinois] as to render [it] essentially at home" here. *Tyrrell*, 581 U.S. at 414 (quotation omitted).

For this reason, courts routinely decline to assert general jurisdiction over Walmart in states other than its state of incorporation and principal place of business. *See, e.g., Toussaint-Hill v. McMillon*, 2019 WL 2030132, at *4 (N.D. Okla. May 8, 2019) (refusing to assert general jurisdiction over Walmart in Oklahoma); *DeVane v. Walmart Inc.*, 2022 WL 19828969, at *4 (N.D. Ala. Dec. 21, 2022) (refusing to assert general jurisdiction over Walmart in Alabama); *Myles v. Walmart Inc.*, 2022 WL 17842811, at *3 (M.D. La. Nov. 23, 2022) (refusing to assert general jurisdiction over Walmart in Louisiana), *report and recommendation adopted*, 2022 WL 17840403 (M.D. La. Dec. 21, 2022); *see also Nautilus Ins. Co. v. COA, Inc.*, 2023 WL 2933055, at *3 (N.D. Ill. Apr. 13, 2023) ("For Amazon, while its dozens of facilities, thousands of employees, and

solicitation of business in Illinois are certainly significant, those contacts do not suffice to make Amazon 'at home' in Illinois.").[2]

Plaintiffs' assertion that Walmart's connection with Illinois is somehow "unique," Opp. at 5 n.4, is baseless. Sources cited in the FAC show that Walmart's operations in Illinois only account for a small fraction of the company's business. *See, e.g.*, Suneson, *supra* n.2 (reporting that Walmart employed over three times as many people in Texas and twice as many people in Florida as it did in Illinois). As such, the notion that Walmart is subject to general jurisdiction in Illinois would presumably mean that it is subject to general jurisdiction *everywhere*, and thus vitiate the Supreme Court's instruction that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Tyrrell*, 581 U.S. at 414 (quotation omitted).[3]

In short, Walmart is not subject to general jurisdiction in Illinois, and this Court accordingly may not exercise jurisdiction over Ms. Faison's California-based claims. Those claims should be dismissed under Rule 12(b)(2), and Plaintiffs' allegations related to a putative California subclass should be struck from the FAC under Rule 12(f).

---

[2] Notably, the same 2021 online post that Plaintiffs cite to assert that Walmart is the largest employer in Illinois also claims that Walmart is the largest employer in Oklahoma, Louisiana, and fifteen other states in addition to Illinois. *See* Grant Suneson, *The Largest Employer in Every State*, 24/7 Wall St. (Apr. 8, 2021), https://247wallst.com/special-report/2021/04/08/the-largest-employer-in-every-state-3/ (cited in FAC ¶ 17 n.14).

[3] The non-binding opinion from the Southern District in *Borders v. Wal-Mart Stores, Inc.*, 2018 WL 9645780 (S.D. Ill. Mar. 29, 2018), does not change the analysis. To Walmart's knowledge, *Borders* is the only decision that has ever found Walmart to be subject to general jurisdiction in Illinois. Nor should the Court rely on *Borders* given that the opinion did not appraise Walmart's Illinois-related activities in the context of its entire corporate operations. Indeed, a different court in the same district was "not convinced that she would have reached the same conclusion as to whether [*Borders*] presented an exceptional case" for general jurisdiction. *Sweet v. BJC Health Sys.*, 2021 WL 2661569, at *2 (S.D. Ill. June 29, 2021).

II.     **Plaintiffs' Claims Regarding Sheets They Did Not Purchase Should Be Dismissed.**

Plaintiffs concede that they are asserting claims for Hotel Style bed sheet products they did not purchase.  *See* Opp. at 12.  Plaintiffs' arguments that their claims based on those products should nonetheless be permitted to proceed are unavailing.

*First*, Plaintiffs attempt to circumvent the Article III standing issue by arguing that whether they can represent absent class members who purchased a different product is a question that can be deferred to class certification.  *See id.* at 13.  But Plaintiffs' position is not, as they suggest, "the prevailing view."  *Id.*  As the Seventh Circuit has explained, "a person cannot predicate standing on [an] injury which he does not share," and "[s]tanding cannot be acquired through the back door of a class action."  *Payton v. Cnty. Of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (quotation omitted); *see also Brodsky v. Aldi Inc.*, 2021 WL 4439304, at *3 (N.D. Ill. Sept. 28, 2021) (quoting similar language and dismissing claims regarding products not purchased by named plaintiffs).

Plaintiffs' argument in the alternative—that they have standing to sue about sheets that are allegedly "substantially similar" to the sheets they did purchase—fails as well.  Opp. at 14.  As an initial matter, the FAC *does not allege* that the Hotel Style Sheets Plaintiffs purchased are substantially similar to sheets in different sizes or colors than the ones they bought.  Plaintiffs' non-sequitur that all Hotel Style Sheets "are made from a cotton and polyester blended fabric," FAC ¶ 2, has no bearing on whether or how Walmart misrepresents the thread count for its sheets, or does so in a "substantially similar" way for all of its sheets, regardless of size or color.

In any event, "[t]he majority of the courts in the Northern District of Illinois" have held that class action plaintiffs cannot "overcom[e] the requirements of Article III standing simply by arguing that non-purchased products are substantially similar to purchased products."  *Willard v.*

*Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021).[4]  Courts reject Plaintiffs' preferred approach because "[w]hether these plaintiffs may be adequate class representatives for absent class members injured by similar products is a different question than the issue here. At this stage of the case, there is no class and plaintiffs cannot bypass the 'irreducible constitutional minimum' of Article III standing for their individual claims." *Id.* (quoting *Bakopoulos*, 2021 WL 2915215, at *3).[5]

    *Second*, Plaintiffs do not meaningfully respond to Walmart's argument that their failure to identify which color sheets they purchased renders them unable to state claims as required by Rules 9(b) and 12(b)(6).  *See* Mot. at 8–9.  Plaintiffs do not, as they argue, "allege with specificity what products they purchased," Opp. at 15, because it remains unknown what color sheets they bought. Because Walmart has now raised this issue twice, the only plausible inference to be drawn is that Plaintiffs do not *know* what color sheets they supposedly bought, leaving them unable to state a claim.

---

[4] *See, e.g.*, *Bakopoulos*, 2021 WL 2915215, at *3; *Brodsky*, 2021 WL 4439304, at *3; *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *3 (N.D. Ill. Oct. 12, 2017); *Porter v. NBTY, Inc.*, 2016 WL 6948379, at *3 (N.D. Ill. Nov. 28, 2016); *Pearson v. Target Corp.*, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012); *Padilla v. Costco Wholesale Corp.*, 2012 WL 2397012, at *3 (N.D. Ill. June 21, 2012).

[5] Notably, several cases cited by Plaintiffs in support of their "substantially similar" argument, including *Mednick v. Precor, Inc.*, 2014 WL 6474915 (N.D. Ill. Nov. 13, 2014), *Wagner v. General Nutrition Corp.*, 2017 WL 3070772 (N.D. Ill. 2017), *Ulrich v. Probalance, Inc.*, 2017 WL 3581183 (N.D. Ill. 2017), and *Carrol v. S.C. Johnsons & Son, Inc.*, 2018 WL 1695421 (N.D. Ill. Mar. 29, 2018), *see* Opp. at 14 & n.14, have been rejected by other courts in the Northern District as "not controlling" and "unpersuasive," *Bakopoulos*, 2021 WL 2915215, at *3 (rejecting *Wagner*, *Ulrich*, and *Carrol*); *see also Willard*, 577 F. Supp. 3d at 824 (rejecting *Mednick*, *Wagner*, *Ulrich*, and *Carrol*).

### III.   Plaintiffs Do Not Allege Specific Facts Showing That the Hotel Style Sheets Have an Inflated Thread Count.

Plaintiffs' Opposition fails to identify specific facts in the FAC that render plausible—including under the heightened particularity requirement of Rule 9(b)—their allegations that Walmart misrepresented that the Hotel Style Sheets have a thread count of 800.[6]

To start, Plaintiffs assert that "the FAC pleads sufficient factual information about expert testing of the Sheets."  Opp. at 5–6.  But the only allegation that Plaintiffs identify is that "[e]xpert testing of Walmart's Hotel Style Sheets pursuant to the ASTM D3775-17 standard has revealed that the actual thread count of the Hotel Style Sheets was lower than half of the 800 thread count warranted and represented on the Product's packaging and labeling."  FAC ¶ 48.  This assertion about "expert testing" is too vague and conclusory to state a claim under Rule 12(b)(6), much less with specificity under Rule 9(b).  Plaintiffs fail to identify (among other things) who tested the sheets, what sheets were tested, whose sheets they were, when the testing was conducted, how the "expert" performed his or her testing, or what *specifically* the testing revealed about the thread count.  Plaintiffs cannot circumvent Rules 9(b) or 12(b)(6) by referring to "expert testing" without actually alleging specific facts about that testing.  *See Corwin v. Connecticut Valley Arms, Inc.*, 74 F. Supp. 3d 883, 890 (N.D. Ill. 2014) ("Unless Plaintiff can locate such facts, an amended complaint that incorporates the expert report's findings may still not state a claim for relief."); *see also Santiful v. Wegmans Food Markets, Inc.*, 2023 WL 2457801, at *4 (S.D.N.Y. Mar. 10, 2023) (dismissing allegations that defendant misrepresented whether its product contained artificial ingredients, which were predicated on plaintiffs' alleged laboratory results, where plaintiffs failed to include "information as to the testing methodology, the date, time, or place of the testing, who

---

[6] Plaintiffs do not contest that Rule 9(b) applies to all of their claims except for their express warranty claim.  *See* Mot. at 4–5.

conducted the testing, and what the exact product tested was"); *Myers v. Wakefern Food Corp.*, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (finding plaintiff failed to sufficiently allege that defendant misrepresented that its product contained no artificial flavors where plaintiff relied on laboratory testing, but did not "provide any details whatsoever about [what] this laboratory test entailed," such as "the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc.").

Further, even assuming *arguendo* that the FAC sufficiently alleged that the Hotel Style Sheets do not have a thread count of 800 under the ASTM D3775 standard, the FAC still fails to allege that Plaintiffs were "deceived . . . into buying the Sheets." Opp. at 12 n.11. The FAC is devoid of any factual allegations that Plaintiffs expected their thread count to be measured according to any specific measure, much less their interpretation of the ASTM D3775. "Failing to test goods in a certain, specific way is not a deceptive business practice." *Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, 2014 WL 4054240, at 13 (S.D.N.Y. Aug. 15, 2014); *see also Adam v. AQ Textiles LLC*, 2021 WL 3475677, at *5 (M.D.N.C. Aug. 6, 2021) (declining "to credit Plaintiffs' conclusory statements that using a different method [than the ASTM D3775] is a deceptive practice").

Comparing the FAC to other complaints regarding thread counts that federal courts have considered underscores the deficiencies of Plaintiffs' amended allegations. For instance, the FAC is much more similar to the defective complaint dismissed in *Hill v. AQ Textiles, LLC*, 2021 WL 1026740 (M.D.N.C. Mar. 17, 2021) ("*Hill I*"), than the complaint that survived a motion to dismiss in *Hill v. AQ Textiles, LLC*, 582 F. Supp. 3d 297 (M.D.N.C. 2022) ("*Hill II*"). In *Hill I*, the plaintiffs failed to, among other things, "make any allegations as to the actual thread count of the sheets they purchased." 2021 WL 1026740, at *3. Plaintiffs corrected this defect in *Hill II* by

describing the specific results of testing conducted by both the Texas Department of Agriculture and plaintiffs' independent testing. *See* 582 F. Supp. 3d at 306 (describing specific test results, including that "AQ sheets advertised at 1200 and 800 thread counts had actual counts of 441 and 293, respectively"). Similarly, in *Rushing v. Williams-Sonoma, Inc.*, plaintiff "alleged that the thread count of the product he purchased was not 600, but merely 291." 2016 WL 4269787, at *1 (N.D. Cal. Aug. 15, 2016). Plaintiffs make no such specific allegations here about what their "expert testing" revealed about Walmart's sheets, and their resistance to doing so is all the more puzzling given that Walmart previously put them on notice of this issue. As such, Plaintiffs' claims should be dismissed with prejudice.

## IV. Plaintiffs Have Not Sufficiently Alleged That They Were Economically Injured.

Plaintiffs acknowledge that they must allege an economic injury to state their fraud and state-law consumer protection claims. *See* Opp. at 9. They then attempt to recast Walmart's argument that they have failed to do so as demanding that they "specify the degree of harm they incurred as a result of Walmart's misconduct." *Id.*; *see also id.* at 11 (incorrectly suggesting Walmart demanded that Plaintiffs "set forth a specific damages model at the pleading stage"). But Walmart's argument is not about Plaintiffs' "degree" of harm—it is about their failure to sufficiently allege they were harmed *at all*. *See* Mot. at 12–14. Indeed, the only fact Plaintiffs allege to support their damages claim that they overpaid for the sheets is a 2002 ABC News Good Morning America article, which Plaintiffs allege states that "[a] single-ply 300-count can run about $55 a set, while the 600 thread-count sheet that [Good Housekeeping Institute] claims is only a 300-count is $180 a set." FAC ¶ 30. But this quoted language *does not even appear* in the article. *See Are Shoppers Short-Sheeted by Thread Count?*, ABC News GMA (Nov. 21, 2002), https://abcnews.go.com/GMA/story?id=125380&page=1 (cited in FAC ¶ 30).

Plaintiffs further argue that "Walmart cites just two out-of-circuit decisions in support of its proposition that Plaintiffs must precisely outline their damages analysis at the pleading stage." Opp. at 11. Again, that is not Walmart's argument; and in all events the two cases cited by Walmart are directly on point. Both cases dismissed complaints regarding alleged misrepresentations of bed sheets' thread counts because the plaintiffs, as here, failed to adequately allege they were economically damaged. *See* Mot. at 12–14 (discussing *Adam*, 2021 WL 3475677, and *Hill I*, 2021 WL 1026740).[7]

Next, Plaintiffs contend that they do not need to allege *any* facts other than their conclusory statement that they would not have bought the sheets (or would have paid less for them) had they known that Walmart did not count threads using their interpretation of the ASTM D3775. *See* Opp. at 9–10. But Plaintiffs' authority does not support this argument. For instance, Plaintiffs cite to *McDonnell v. Nature's Way Products, LLC*, 2017 WL 1149336 (N.D. Ill. Mar. 28, 2017), a case in which plaintiff alleged she would not have bought defendant's vitamins had she known some of their ingredients were not "Made in the USA" as the vitamins' label advertised. *See* Opp. at 10. At least one court has declined to follow *McDonnell* when faced with a complaint—like the FAC here—that does not "offer[] any factual basis to support the plaintiff's estimation of the products' worth, or for supposing that the plaintiff suffered an actual pecuniary loss as a result of the alleged fraud." *Sabo v. Wellpet, LLC*, 282 F. Supp. 3d 1040, 1042–43 (N.D. Ill. 2017)

---

[7] Other cases addressing similar allegations are in accord. *See, e.g.*, *Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) ("Plaintiff fails to specifically allege that what he did receive[] was of lesser value than what was promised, i.e., that the sheets he received were worth an amount of money less than the sheets he was promised, or that he experienced a measurable out-of-pocket loss because of his purchase."); *Dolch v. Linen Source Inc.*, 2008 WL 11336301, at *2 (M.D. Fla. Jan. 3, 2008) (dismissing thread count claims where plaintiff failed to allege, among other things, "a statement of the loss of value or other damage that accrued to Dolch as a result of thread counting by one means rather than another").

(dismissing complaint where plaintiffs provided only "unsubstantiated allegations about the products' 'worth' and the statement that plaintiff would not have bought the products . . . in the absence of the alleged fraud"). The Seventh Circuit similarly held that dismissal is proper when a plaintiff "provide[s] no factual support for [his] assertions" that he could have "purchased the shirts for a lower price at another store, or could have shopped around to obtain a better price elsewhere." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 735 (7th Cir. 2014). *Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *5 (N.D. Ill. Sept. 29, 2017) is also distinguishable. *Fuchs* involved defendant allegedly misrepresenting the length, height, and width of its lumber products. *See id.* at *1. The objective, concrete allegations in *Fuchs* are thus unlike Plaintiffs' vague and conclusory allegations that Walmart did not count threads using their preferred interpretation of the ASTM D3775.[8]

## V. Plaintiffs' Unjust Enrichment Claim Fails with Their Fraud Claims.

Plaintiffs concede that their unjust enrichment claim rises and falls with their fraud claims. *See* Opp. at 15. This claim should therefore be dismissed because, as explained above, Plaintiffs have failed to state their fraud claims.

## VI. Plaintiffs Fail To State a Claim for Breach of Express Warranty.

Plaintiffs' attempts to salvage their express warranty claim are unavailing. *First*, Plaintiffs argue they alleged breach of warranty based on their allegation that "expert testing" showed that the sheets' thread count was "less than half of the represented and warranted 800 thread count." Opp. at 15. This argument fails for the same reasons Plaintiffs' fraud-related claims fail: Plaintiffs

---

[8] Plaintiffs' argument that the economic loss doctrine "is inapplicable" because their damages were caused by Walmart's alleged fraud, Opp. at 12 n.12, fails since Plaintiffs do not sufficiently allege fraud. This argument is also undermined by the fact that Plaintiffs allege only economic damages, and Illinois law "generally bars suits for purely economic damages based on negligent misrepresentations." *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 855 (N.D. Ill. 2021).

do not allege specific facts showing that the sheets' thread count was less than 800. As such, they have not sufficiently alleged that Walmart breached any warranty. *See DeMaso v. Walmart Inc.*, 655 F. Supp. 3d 696, 704 (N.D. Ill. 2023) (dismissing warranty claims "based on the same [failed] theory of deception as alleged in [plaintiff's] ICFA claim").

*Second*, Plaintiffs claim that they informed Walmart about the alleged breach of warranty "within a reasonable time after [they] discover[ed] or should have discovered any breach," Opp. at 16, but they still do not point to *when* they became aware of Walmart's alleged breach. This failure is particularly notable since Plaintiff Thomas alleges she bought the Hotel Style Sheets going back to 2009, up to fifteen years before she brought this suit. *See* FAC ¶ 54. Because the FAC does not identify when Plaintiffs learned of the alleged breach, their argument that "the Court can only deem the timing unreasonable as a matter of law if an alleged delay caused Walmart prejudice or was in bad faith," Opp. at 17 (quotation omitted), is circular. Neither Walmart nor the Court can assess whether Plaintiffs' notice was reasonable when it remains unknown when they discovered (or should have discovered) the breach.[9]

## VII. Plaintiffs Cannot Seek Injunctive Relief.

Despite the opportunity to amend their complaint, Plaintiffs still fall short of pleading a "real and immediate threat of future harm" that would support their standing to seek injunctive relief. *Bohn v. Boiron, Inc.*, 2013 WL 3975126, at *3 (N.D. Ill. Aug. 1, 2013) (quotation omitted). *First*, the FAC does not allege that Plaintiffs are at risk of *future* harm: they do not allege, for example, that they intend to purchase the Hotel Style Sheets again or would purchase the products

---

[9] Plaintiffs' argument that "whether timing is reasonable is a question of fact" that should be "left to the trier of fact," Opp. at 17 (cleaned up), is irrelevant given that Plaintiffs do not identify when they discovered or should have discovered Walmart's breach. "[W]hen no inference can be drawn from the evidence other than the notification was unreasonable, the question can be decided by the court as a matter of law." *Baldwin v. Star Sci., Inc.*, 2016 WL 397290, at *10 (N.D. Ill. Feb. 2, 2016) (quotation omitted).

if they were accurately labeled. Implicitly acknowledging this problem, Plaintiffs' Opposition attempts to backdoor their way into standing, asserting in a footnote that "Plaintiffs may still want to purchase the sheets"—a fact that is *not* alleged in the FAC. Opp. at 19 n.18. In fact, Plaintiffs concede that they did not "expressly stat[e] their intention to purchase the products again." *Id.* at 18. Regardless, Plaintiffs' conjured-up statement that they *may* want to buy the sheets again falls short of the requirement that a "plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury." *Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000); *see also Spokeo, Inc. v. Robins,* 578 U.S. 330, 339 (2016) (explaining that an injury must be at least "actual or imminent, not conjectural or hypothetical" (quotation omitted)).[10]

For this reason, the Seventh Circuit instructs that a request for injunctive relief should be dismissed where, as here, the plaintiff is aware of defendant's allegedly deceptive sales practices and is thus unlikely to be harmed in the future. *See Camasta*, 761 F.3d at 741 ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future. Without more than the speculative claim that he will again be harmed by JAB, Camasta is not entitled to injunctive relief."). Courts in this district—including in cases cited by Plaintiffs—have followed suit. *See In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, 2017 WL 2215025, at *8 (N.D. Ill. May 19, 2017) ("Here, Plaintiffs make clear in their complaint that they would not

---

[10] Plaintiffs' argument that "Walmart offers a single case to contend Plaintiffs have no threat of future injury" attempts to turn Walmart's compliance with this Court's page limits into a liability. Opp. at 20 n.19. The single case Walmart cited to make this point in an efficient manner, *Calderon v. Procter & Gamble Co.*, --- F. Supp. 3d ---, 2023 WL 3627797 (N.D. Ill. May 24, 2023), is directly on point. There, the court dismissed similar injunctive relief claims in a consumer class action because, like Plaintiffs here, the plaintiff "is now aware of [defendant's] alleged deceptive practices, and fails to provide a concrete basis to conclude that the plaintiffs will or must purchase the product again in the future and be deceived." *Id.* at *6 (quotation omitted). To be clear, and as it set forth herein, *Calderon* is not the only court to so hold.

have purchased the Affected Products had they known the truth about them. Under *Camasta* . . . Plaintiffs cannot pursue injunctive relief because they face no real immediate threat of future injury."); *Ulrich*, 2017 WL 3581183, at *7 (dismissing injunctive relief claim where plaintiff alleged that defendants' products misleadingly labeled their protein content).[11]

*Second*, Plaintiffs do not allege that monetary damages are insufficient to remedy their alleged harm. *See* Mot. at 15. Because monetary damages would be sufficient to compensate Plaintiffs for any alleged overpayment for their Sheets, there is no need for their requested injunctive relief. *See Martin v. Wal-Mart Stores, Inc.*, 2007 WL 3231414, at *3 (N.D. Ill. Oct. 26, 2007) ("A request for injunctive relief requires plaintiff to allege, among other things, that she has suffered an injury for which money cannot compensate. Rather than alleging that her injury is irreparable, however, plaintiff has requested an award of money damages—an admission that her injury is not irreparable. Her ICFA claim for injunctive relief is, therefore, dismissed with prejudice.").[12]

Plaintiffs' request for injunctive relief should be dismissed.

## CONCLUSION

This Court should grant Walmart's motion and dismiss the FAC with prejudice.

---

[11] Plaintiffs' citation to *Daly v. FitLife Brands, Inc.*, 2023 WL 6388112 (N.D. Ill. Sept. 29, 2023), is inapt. Plaintiffs cite *Daly* to argue that they may "be fooled again" if Walmart's allegedly false advertising of thread counts continues. Opp. at 19. But the court in *Daly* reached the exact *opposite* conclusion given that the plaintiff "now knows how FitLife interprets 'All Natural Amino Drink' . . . so he will not be fooled again." 2023 WL 6388112, at *4.

[12] Plaintiffs rely on *Leiner v. Johnson & Johnson Consumer Cos., Inc.*, 215 F. Supp. 3d 670, 672–73 (N.D. Ill. 2016), to argue that allowing them to seek injunctive relief is the "better view" based on "public policy" considerations. Opp. at 18. But the reasoning in *Leiner* was rejected in *Mednick*—a case cited elsewhere by Plaintiffs, *see* Opp. at 14—because policy concerns are "trumped by the constitutional requirement of standing," *Mednick*, 2016 WL 5390955, at *9.

Dated: January 22, 2024                     Respectfully Submitted,

                                            By: */s/ Daniel L. Stanner* _____

                                            Daniel L. Stanner
                                            TABET DIVITO & ROTHSTEIN
                                            209 S. LaSalle St., 7th Floor
                                            Chicago, IL 60604
                                            Direct: (312) 762-9461
                                            dstanner@tdrlaw.com

                                            Cortlin H. Lannin (admitted *pro hac vice*)
                                            COVINGTON & BURLING LLP
                                            Salesforce Tower
                                            415 Mission Street, Suite 5400
                                            San Francisco, CA 94105
                                            Direct: (415) 591-7078
                                            clannin@cov.com

                                            Stephen M. Rees
                                            COVINGTON & BURLING LLP
                                            One City Center
                                            850 Tenth Street, NW
                                            Washington, DC 20001
                                            Direct: (202) 662-5262
                                            srees@cov.com

                                            *Attorneys for Defendants Walmart Inc. and Wal-
                                            Mart Stores, Inc.*

### <u>CERTIFICATE OF SERVICE</u>

I certify that on January 22, 2024, I electronically filed the foregoing **DEFENDANTS WALMART INC.'S AND WAL-MART STORES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** using this Court's CM/ECF service. All counsel of record will be served via the Court's CM/ECF service, which will provide copies to all counsel of record registered to receive CM/ECF notification.

*/s/ Daniel L. Stanner*
