## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ARNESIA THOMAS, PASCHA PERKINS, and VERNITA FAISON, Plaintiffs | No. 23 CV 5315 |
| v. | Judge Jeremy C. Daniel |
| WALMART INC., and WAL-MART STORES, INC., Defendants | |

### MEMORANDUM OPINION AND ORDER

The plaintiffs, a trio of consumers, allege that Defendants Walmart Inc. and Wal-mart Stores, Inc. (together "Walmart") materially overstated the thread count on the packaging of their "Hotel Style" branded bed sheets. The first amended complaint asserts claims for fraud and violation of state consumer protection statutes, as well as unjust enrichment and breach of express warranty. (*See* R. 24 ("FAC").) Walmart now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). (R. 30.) For the reasons that follow, the Court grants the motion in part and denies it in part.

### BACKGROUND

Walmart is the world's largest retailer, operating in twenty-four countries and employing approximately 2.3 million associates worldwide. (FAC ¶ 1.) Although Walmart is incorporated in Delaware and headquartered in Bronzeville, Arkansas, the company has a substantial presence in Illinois. (*Id.* ¶¶ 14, 17.) It operates over 100 stores and employs nearly 60,000 workers in Illinois, making it the state's largest

employer. (*Id.* ¶ 17.) Walmart and its affiliates do billions of dollars of business with Illinois-based suppliers each year, generating substantial tax revenue for the state. (*Id.*)

As part of its retail business, Walmart labels, distributes, advertises, and sells cotton and polyester blended fabric bed sheets under its exclusively owned "Hotel Style" brand name. (*Id.* ¶ 2.) The plaintiffs are consumers who purchased Hotel Style sheets from Walmart at retail locations in Illinois and California. (*Id.* ¶ 11–13.) Plaintiff Arnesia Thomas is a citizen of Illinois who purchased "King" sized sheets from retail locations in Addison, Bloomingdale, Elk Grove Village, Streamwood, and Glen Ellyn, Illinois. (*Id.* ¶ 11.) Plaintiff Pascha Perkins, also a citizen of Illinois, purchased "Queen" sized sheets from a location in Cahokia, Illinois. (*Id.* ¶12.) And Plaintiff Vernita Faison, a citizen of California, purchased "Queen" sized Hotel Style sheets at a retail location in Sacramento, California. (*Id.* ¶ 13.)

The plaintiffs' dispute with Walmart concerns a statement on the packaging of the Hotel Style sheets indicating that they have an "800 thread count." (*Id.* ¶¶ 2–3.) The complaint alleges that this representation is false and misleading because the Hotel Style sheets have a significantly lower thread count than advertised. (*Id.* ¶ 2.) According to the plaintiffs, an expert determined the true thread count of the Hotel Style sheets using an industry-standard testing procedure known as ASTM D3775-17 (*Id.* ¶ 31–32.)

The complaint describes the ASTM D3775-17 testing procedure in detail. (*See id.* ¶¶ 34–38.) A tester first "[c]ount[s] the number of ends and picks in five randomly

spaced places diagonally across the width of the laboratory sampling unit." (*Id.* ¶ 35.) "When two yarns are laid-in together and parallel," the tester "count[s] each yarn separately, as a single unit, regardless of whether it [was] comprised of single or plied components." (*Id.* ¶ 36.) Finally, once the counting is finished, the tester ensures accuracy by calculating a coefficient of variation (*i.e.*, a ratio of standard deviation to the mean) for each of the five measurements. (*Id.* ¶ 38.) To comply with industry standards, the coefficient of variation must be less than 5%. (FAC ¶ 38.)

According to the plaintiffs, ASTM D3775-17 testing revealed that the true thread count of the Hotel Style sheets is "less than half" of the amount stated on the packaging. (*Id.* ¶ 7.) Based on these results, the plaintiffs allege that the "800 thread count" statement on the Hotel Style sheets is materially misleading or false. (*Id.* ¶ 8.) They represent that they were harmed by Walmart's alleged overstatement since high thread count sheets tend to be of a superior quality as compared to low thread count sheets, and consumers tend to pay more for them. (*Id.* ¶¶ 5, 29, 30.) But for the inflated thread count, the plaintiffs argue, they would not have purchased the Hotel Style sheets or would have paid a lower price for them. (*Id.* ¶ 10.) As a result, they did not receive the benefit of their bargain. (*Id.* ¶ 57.)

The plaintiffs filed this putative class action, asserting claims for monetary damages and injunctive relief under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* (Counts I and II), California's Unfair Competition Law, Cal. Bus. & Prof. Code, §§ 17200 *et seq.* (Count III), California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* (Count IV),

Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* (Count V), as well as claims for breach of express warranty (Count VI), common law fraud (Count VII), negligent misrepresentation (Count VIII), and unjust enrichment (Count IX).[1]

Walmart now moves to dismiss, arguing that (1) the plaintiffs lack standing to assert their individual claims, claims for products that they did not buy themselves, and claims for injunctive relief, (2) this Court lacks personal jurisdiction over Walmart as to Plaintiff Faison's California law claims, and (3) the plaintiffs fail to state claims for fraud, violation of the ICFA, breach of express warranty, or unjust enrichment.

## LEGAL STANDARD

Rule 12(b)(1) permits dismissal of claims based on lack of subject matter jurisdiction, which includes lack of standing. *Spuhler v. State Collection Serv.*, Inc., 983 F.3d 282, 284 (7th Cir. 2020); *Retired Chicago Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996). "Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The plaintiff bears the burden of establishing the required elements of standing. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003). In ruling on a motion to dismiss for

---

[1] The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the first amended complaint indicates that there are 100 or more class members, at least one class member is a citizen of a state that is diverse from Walmart, and the matter in controversy exceeds $5 million (exclusive of interests and costs). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017).

lack of standing, the Court must accept as true all material allegations of the complaint and draw reasonable inferences in the plaintiff's favor. *Id.*

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Although a plaintiff is not required to anticipate a challenge to personal jurisdiction in their complaint, they must demonstrate the existence of jurisdiction once it is challenged. *B.D. by & through Myer v. Samsung SDI Co.*, __ F. 4th __, No. 23-1024, 2024 WL 256446, at *2 (7th Cir. Jan. 24, 2024). In evaluating whether a plaintiff has satisfied this standard in the absence of extrinsic evidence, the Court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes" in the plaintiff's favor. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a claim, not the merits of a case. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 885 (7th Cir. 2022). To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Even so, the complaint does not need to state all possible legal theories. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citation omitted). As with motions to dismiss due to lack of subject matter jurisdiction and personal jurisdiction, the Court draws all factual inferences in favor of the non-moving party. *Gociman*, 41 F.4th at 881.

## ANALYSIS

### I. STANDING

The Court "begin[s], as [it] must, with the threshold issue of standing—an essential component of a federal court's subject matter jurisdiction to resolve parties' disputes." *Spuhler*, 983 F.3d at 284. To establish Article III standing, the plaintiffs must establish that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). Their injury must be concrete, particularized, and based on the defendant's conduct. *Id.*; *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 998–1002 (N.D. Ill. 2017). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to state a claim. *Lujan*, 506 U.S. at 561.

### A. Individual Standing

There is no question that the plaintiffs have standing to assert claims against Walmart. Each of the plaintiffs allege that they purchased Hotel Style sheets from Walmart that were packaged with an "800 thread count" representation, that this representation was false or misleading, and that they were financially harmed by the misrepresentation because they paid more than they otherwise would have. (*See generally* FAC.) That is all that is required at the pleading stage. *See In re Aqua Dots Products Liability Litig.,* 654 F.3d 748, 751 (7th Cir. 2011) ("A financial injury creates standing."). While Walmart argues that "all of" the plaintiffs' claims should be dismissed for lack of standing because the plaintiffs failed to allege what color sheets they purchased (R. 30 at 8), it cites no case law standing for this proposition. Such

specificity is not required at the pleading stage. *Lujan*, 506 U.S. at 561. The plaintiffs' allegations of financial harm are sufficient to give them Article III standing.

### B.     Standing as Class Representatives

Walmart also argues that the plaintiffs lack standing to sue Walmart for products that they did not purchase themselves. As putative class representatives, the plaintiffs seek to represent consumers who purchased any type of Hotel Style bed sheets sold by Walmart regardless of color and size. (*See* FAC ¶ 61). Walmart characterizes these allegations as asserting claims for products that the plaintiffs did not purchase. (R. 30 at 7–9.)

Courts in this District are divided as to whether plaintiffs have standing to assert claims as class representatives based on products that they did not buy. *See Liston*, 254 F. Supp. 3d at 998–1002. Some courts have ruled at the pleading stage that plaintiffs lack standing to assert claims based on unpurchased products. *See, e.g.*, *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021) (collecting cases). Other courts have held that plaintiffs have standing to pursue claims for products they did not purchase if the products in question are "substantially similar" to products that they bought. *Vanzant v. Hill's Pet Nutrition Inc.*, No. 17 C 2535, 2023 WL 6388300, *4 (N.D. Ill. Sept. 29, 2023); *Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915 (N.D. Ill. Nov. 13, 2014).

A third group of courts has sidestepped the issue altogether, holding whether the named plaintiffs "may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions." *In re Opana ER*

*Antitrust Litig.*, 162 F. Supp. 3d 704, 722 (N.D. Ill. 2016); *Daly v. FitLife Brands, Inc.*, No. 22 C 762, 2023 WL 6388112, at *6 (N.D. Ill. Sept. 29, 2023); *Clark v. Blue Diamond Growers*, No. 22 C 1591, 2023 WL 4351464, at *6 (N.D. Ill. July 5, 2023); *Tex. Hill Country Landscaping, Inc. v. Caterpillar*, 522 F. Supp. 3d 402, (N.D. Ill. 2021); *Snyder v. U.S. Bank N.A.*, 387 F. Supp. 3d 867, 873 (N.D. Ill. 2019). These courts have postponed ruling on whether the allegations of absent class members are "substantially similar" to the plaintiffs' until the plaintiffs move for class certification.

The Court adopts the third approach, which has become the "prevailing view" in this District, "particularly recently." *Clark*, 2023 WL 4351464, at *6. Because the named plaintiffs clearly have standing to sue Walmart for their own injuries, "[t]his is not a case where the named plaintiff[s] [are] trying to piggy-back on the injuries of the unnamed class members," or acquire Article III standing through the back door. *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002). Since Walmart's arguments on this point pertain solely to as-yet unidentified class members, Rule 23 issues are "logically antecedent" to the Article III concerns and are better addressed at the class certification stage. *Texas Hill Country*, 522 F. Supp. 3d at 408 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 816 (1999)). Accordingly, the Court denies Walmart's motion to dismiss the plaintiffs' claims brought as class representatives due to lack of standing.

### C. Injunctive Relief

Finally, the Court considers Walmart's argument that the plaintiffs lack standing to pursue injunctive relief. "[A] past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic v. City of Chi.*, 851 F.3d

734, 738 (7th Cir. 2017). This is because '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95-96 (1983)).

The Seventh Circuit has held that consumers cannot seek injunctive relief if they know of an allegedly deceptive practice because they are unlikely to incur future harm once they become aware of the fraud. *Camasta*, 761 F.3d at 740. Here, Walmart argues that the plaintiffs lack standing to pursue injunctive relief because, as admitted in their own allegations, they are aware of the allegedly misstated thread count in the Hotel Style sheets and are therefore unlikely to be injured in the future by this misrepresentation. (R. 30 at 15.)

The Court agrees. "Most courts in this district have held that a plaintiff who alleges only past deception cannot pursue injunctive relief because they have not alleged a 'real and immediate threat of future violations of their rights.'" *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 701 (N.D. Ill. 2020) (quoting *Scherr v. Marriott Int'l*, 703 F.3d 1069, 1074 (7th Cir. 2013)); *see also Calderon v. Procter & Gamble Co.*, __ F. Supp. 3d __, 2023 WL 3627797, at*6 (N.D. Ill. May 24, 2023).

The plaintiffs' allegations fit this pattern. The first amended complaint indicates that the plaintiffs are aware of the allegedly fraudulent claims made about the Hotel Style sheets. (*See generally*, FAC.) And there is no indication that the plaintiffs intend to purchase Walmart branded bedsheets in the future. (*See id.*) Because there is no reason to think that the plaintiffs face a "real and imminent

thread" of future injury, it follows that they are not entitled to injunctive relief. *Daly v. Glanbia Performance Nutrition, Inc.*, No. 23 C 933, 2023 WL 5647232, at *5 (N.D. Ill. Aug. 31, 2023) (dismissing claims for injunctive relief due to failure to allege future injury); *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (same); *In re Herbal Supplements Mktg. & Sales Practices Litig.*, No. 15 C 5070, 2017 WL 2215025, at *7 (N.D. Ill. May 19, 2017) (citing 1 *McLaughlin on Class Actions* § 4.28 (13th ed. 2016) ("[A] plaintiff who is a former customer who provides no concrete basis to conclude that he or she will purchase the product at issue in the future . . . lacks standing to pursue injunctive relief on behalf of a consumer class because the plaintiff is unlikely to suffer future harm.")).

The plaintiffs respond by citing several consumer fraud cases in which claims for injunctive relief were deemed sufficient at the pleading stage. *See Shirley v. Reynolds Consumer Prod., LLC*, 636 F. Supp. 3d 907, 915 (N.D. Ill. 2022); *Curran v. Bayer Healthcare LLC*, No. 17 C 7930, 2019 WL 398685, at *5 (N.D. Ill. Jan. 31, 2019); *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17 C 5828, 2018 WL 1695421, at *4 (N.D. Ill. Mar. 29, 2018); *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *10 (N.D. Ill. Sept. 22, 2016). But many of these cases involved allegations that the plaintiffs intended to or were likely to purchase products again. *See Shirley*, 636 F. Supp. 3d at 915 (plaintiff alleged that she intended to purchase the product again if she could rely on its labeling); *Curran*, 2019 WL 398685, at *5 (N.D. Ill. Jan. 31, 2019) (plaintiff alleged that he "would purchase the product again in the future if he could be assured that the product was accurately labeled as to its SPF rating and/or that the product

conformed to the SPF rating stated on the product packaging."). The first amended complaint lacks comparable allegations. (*See generally* FAC.) Instead, it contains only bare-bones assertions that the defendant "continues to violate" the various fraud statutes. (*See id.* ¶¶ 7, 124, 126, 128, 134.) Such allegations are insufficient. *See Geske*, 503 F. Supp. 3d at 701–03 (collecting cases).[2]

Even ignoring the plaintiffs' failure to allege future harm, their claim for injunctive relief fails for an even more basic reason: failure to allege inadequacy of legal remedies. "A request for injunctive relief requires [a] plaintiff to allege, among other things, that she has suffered an injury for which money cannot compensate." *See Martin v. Wal-Mart Stores, Inc.*, 2007 WL 3231414, at *3 (N.D. Ill. Oct. 26, 2007). In this case, the plaintiffs allege that they were harmed by receiving an allegedly inferior product that was worth less than what they paid. (FAC ¶ 57.) The first amended complaint does not allege that monetary damages would be inadequate to compensate the plaintiffs for their alleged injuries. (*See id.*) Accordingly, the Court grants Walmart's motion to dismiss the plaintiffs' claims for injunctive relief due to lack of standing.

---

[2] Although a small number of courts in this District appear to have deemed such allegations sufficient, those cases involved misrepresentations about medical products that consumers purchase on a routine basis. *See Carrol*, 2018 WL 1695421, at *4 (sunscreen); *Muir*, 2016 WL 5234596, at *10 (dietary supplements). The Court is not persuaded that their reasoning applies to the present case. To the extent that *Carrol* and *Muir* can be read to hold that bare allegations of "continuing to violate" consumer fraud statutes are sufficient to state a claim for injunctive relief, the Court finds them unpersuasive, as such an interpretation would render the likelihood of future harm aspect of the standing analysis superfluous. *See Guajardo v. Skechers USA, Inc.*, No. 419 C 04104, 2021 WL 4302532, at *7 (C.D. Ill. Sept. 21, 2021) ("To accept *Carrol* and *Muir* would be to read out the likelihood of future harm requirement."). Indeed, more recent decisions have expressly rejected this line of reasoning. *See Geske*, 503 F. Supp. 3d at 701–03 (discussing intra-District "split of authority" and concluding that "allegations of deceptive practices, without more, do not support standing for injunctive relief.").

## II.    PERSONAL JURISDICTION

The Court next addresses Walmart's motion to dismiss Faison's claims for lack of personal jurisdiction. (R. 30 at 5–7.) A federal district court has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). Illinois' long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. 735 ILCS 5/2-209(c); *Tamburo*, 601 F.3d at 700. The relevant question is whether Walmart has "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be either specific or general. *Daimler AG v. Bauman*, 571 U.S. 117, 127–28 (2014). Specific personal jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). General personal jurisdiction exists if "the defendant's connection to the forum state [is] 'so 'continuous and systematic' as to render [it] essentially at home' there." *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The parties do not dispute that the Court lacks specific personal jurisdiction over Faison's claims. (*See* R. 30; R. 35.) Faison did not purchase Hotel Style sheets in

Illinois, and there is no connection between her claims and the forum. While Plaintiffs Thomas and Perkins assert claims against Walmart based on conduct that occurred in Illinois, Faison's claims are based on conduct that occurred solely in California. "[I]f separate claims are pled" in a civil action "specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim." *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, 164 F. Supp. 3d 1040, 1048–49 (N.D. Ill. 2016) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 n.6 (5th Cir.2006)); *accord Smietana v. Stephens*, No. 22 C 708, 2023 WL 3737720, at *6 (N.D. Ill. May 30, 2023).

Whether the Court can exercise personal jurisdiction over Walmart as to Faison's claims therefore turns on whether the Court can exercise general jurisdiction over Walmart in Illinois. Corporations like Walmart are essentially at home in only two places: their state of incorporation and their primary place of business. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citation omitted). This means that Walmart is subject to general personal jurisdiction only in Delaware, its state of incorporation, and in Arkansas, the site of its headquarters. "The Seventh Circuit has cautioned that general jurisdiction 'should not lightly be found'" beyond these paradigmatic forums. *See Nautilus Ins. Co. v. COA Inc.*, No. 22 C 5997, 2023 WL 2933055, at *2 (N.D. Ill. Apr. 13, 2023) (quoting *Kipp v. Ski Enter. Corp. of Wisc.*, 783 F.3d 695, 698 (7th Cir. 2015)).

Although the Supreme Court has stated that in an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State," *see BNSF*, 581 U.S. at 413, the allegations in this case are not exceptional.[3] Instead, they reflect the common fact pattern of a large corporate defendant that has substantial business operations in multiple states. Such operations—even if substantial—are insufficient to give rise to general personal jurisdiction. *See BNSF*, 581 U.S. at 414 (collecting cases and holding that railroad with 2,000 employees and 2,000 miles of railroad track in Montana was not subject to general personal jurisdiction in the state); *accord Alani Nutrition, LLC v. Ryse Up Sports Nutrition, LLC*, No. 23 C 5196, 2024 WL 148969, at *4 (N.D. Ill. Jan. 12, 2024) (declining to find general personal jurisdiction based on allegations that the defendant distributed products to Illinois and "derive[d] substantial revenue from sales in Illinois"); *Nautilus Ins. Co.*, 2023 WL 2933055, at *3 (holding that Amazon's substantial business activities in Illinois did not establish general personal jurisdiction). The business that a corporation like Walmart does in Illinois does not permit the assertion of general jurisdiction over claims like Faison's that are unrelated to any activity occurring in Illinois. *BNSF*, 581 U.S. at 414.

The plaintiffs nonetheless urge the Court to find an exception based on the magnitude of Walmart's activities in Illinois, emphasizing the fact that Walmart is

---

[3] The sole case that the Supreme Court appears to have identified as an "exceptional case" warranting deviation from the general rule is *Perkins v. Benguet Consol. Mining Company*, 342 U.S. 437 (1952). There, the Court held that a mining company headquartered in the Philippines was subject to general personal jurisdiction in Ohio after its manager was forced to relocate during the Second World War. *Id.* at 447–49. The allegations in this case are markedly different.

14

the state's largest employer. They cite *Borders v. Wal-Mart Stores, Inc.*, a district court case holding that Walmart's business in Illinois presented an "exceptional case" for finding general jurisdiction because the company was the state's largest employer and did more business in the state than in its principal place of business. No. 17 C 506, 2018 WL 9645780, at *4 (S.D. Ill. Mar. 29, 2018).

The Court is not persuaded that the scale of Walmart's business activities in Illinois justifies deviating from the bedrock principles of general personal jurisdiction. Contrary to *Borders*, the Supreme Court has instructed that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Daimler*, 571 U.S. at 139 n.20 (internal quotation marks and alterations omitted). Rather, it "calls for an appraisal of a corporation's activities in their entirety." *Id.* Although Walmart employs more individuals in Illinois than in Arkansas or Delaware, the plaintiffs cite no evidence suggesting that the company's nationwide or global business operations are directed from Illinois. (*See generally* FAC; R. 35.) Indeed, the sole federal decision to discuss *Borders* expressly disapproved of its conclusion regarding general personal jurisdiction. *Sweet v. BJC Health Sys.*, No. 20 C 947, 2021 WL 2661569, at *2 (S.D. Ill. June 29, 2021) ("The undersigned is not convinced that she would have reached the same conclusion as to whether Wal-Mart presented an exceptional case").

When considered in relation to Walmart's operations across the United States, the company's activities in Illinois appear to be less remarkable. As of 2021, Walmart was the largest employer in seventeen other states besides Illinois. (*See* FAC ¶ 17,

n.14 (citing Grant Suneson, *The Largest Employer in Every State*, 24/7 Wall St. (Apr. 8, 2021), https://247wallst.com/special-report/2021/04/08/the-largest-employer-in-every-state-3/).) In fact, Walmart appears to employ over three times as many people in Texas as in Illinois and twice as many people in Florida as in Illinois. (*See id.*) Adopting *Borders'* reasoning that Walmart could be subject to general personal jurisdiction in a forum state just because it is the state's largest employer (or does more business in the forum state than in its principal place of business) would mean that Walmart could be "at home" in many different states or territories at the same time, a conclusion that the Supreme Court has rejected. *See Daimler*, 571 U.S. at 140 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."). In sum, the plaintiff's suggestion that this is an "exceptional case" is unpersuasive.

Because the plaintiffs have not established a *prima facie* case for general personal jurisdiction over Walmart, it follows that the Court lacks personal jurisdiction over Walmart with respect to Faison's California state law claims. The Court therefore dismisses those claims (Counts III, IV, and V) without prejudice. *Lauderdale-El v. Ind. Parole Bd.*, 35 F.4th 572, 576–77 (7th Cir. 2022) (citing *Rogers v. City of Hobart*, 996 F.3d 812, 817 (7th Cir. 2021)) (dismissals for lack of personal jurisdiction are "necessarily without prejudice").

16

### III.   FAILURE TO STATE A CLAIM

Having addressed Walmart's arguments regarding standing and personal jurisdiction, the Court next turns to its arguments under Rule 12(b)(6).

### A.   ICFA Claims

The Court begins with Walmart's motion to dismiss the plaintiffs' claims for violation of the ICFA. The ICFA is "a regulatory and remedial statute intended to protect consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (cleaned up). To state a claim under the statute, a plaintiff must allege "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (citation omitted). ICFA claims are subject to Federal Rule of Civil Procedure 9(b). *Camasta*, 761 F.3d at 736–37.

Walmart argues that the plaintiffs' ICFA claims should be dismissed due to (1) failure allege a deceptive or unfair act or practice with the particularity required by Rule 9(b) and (2) failure to allege economic injury. (R. 30 at 10–14.) The Court addresses each argument in turn.

#### 1.   Rule 9(b)

To satisfy Rule 9(b) the complaint, "must show not just the mere possibility of a fraud, but that fraud is a 'necessary or probable inference from the facts alleged.'" *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) (quoting

17

*People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992)). The plaintiffs must also plead the "who, what, when, where, and how" of the alleged deception. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019).

Walmart argues that the amended complaint does not satisfy Rule 9(b) because it does not plead specific factual content to support the assertion that the thread count in the Hotel Style sheets was inflated. (R. 30 at 9–11.) Drawing all inferences in the plaintiffs' favor, however, the Court concludes that the amended complaint states a fraud claim with sufficient particularity. The first amended complaint alleges that Walmart represented, via the Hotel Style sheets' labelling and packaging, that the sheet were "800 thread count." (FAC ¶ 2.) It further alleges that the sheets were tested pursuant to an industry standard procedure conducted by an expert that determined the sheets had "less than half" of the represented number of threads. (*Id.* ¶¶ 7, 31–38.) Finally, the complaint alleges that Walmart made the alleged misrepresentation with knowledge of its falsity and the intention that consumers would rely on it. (*Id.* ¶¶ 143, 144.) These allegations are sufficient to plead fraud under Rule 9(b).

Walmart takes issue with the fact that the plaintiffs do not allege who performed the testing or when and where the testing took place. (R. 30 at 9–10.) But neither the identity of the tester nor the precise timing or location of the tests affects the plausibility of the plaintiffs' allegations; either the tests were performed on the products, or they were not. A complaint need not "have the factual richness required of a response to a motion for summary judgment." *Hunt v. Dart*, No. 07 C 6003, 2010

WL 300397, at *1 (N.D. Ill. Jan. 22, 2010); *see also Talavera v. Metabolife Int'l, Inc.*, No. 04 C 1629, 2004 WL 2260628, at *3 (N.D. Ill. Sept. 24, 2004) ("Plaintiff is not required to describe the content of the testing to prove that Defendant's statements were fraudulent").

Walmart relies on various out-of-circuit cases for the proposition that allegations of expert testing are insufficient to satisfy Rule 9(b). (R. 30 at 10–11.) But the plaintiffs in these cases either provided no details about the testing methodology that was used to substantiate their claims, *see Santiful v. Wegmans Food Mkts., Inc.*, No. 20 C 2933, 2023 WL 2457801, at *4 (S.D.N.Y. Mar. 10, 2023) (dismissing allegations where plaintiffs failed to include "information as to the testing methodology"); *Myers v. Wakefern Food Corp.*, No. 20 C 8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022) (same), or failed to identify a deceptive statement entirely. *See Bilodeau v. McAfee, Inc.*, No. 12 C 4589, 2013 WL 3200658, at *9 (N.D. Cal. June 24, 2013) (holding that Rule 9(b) was not satisfied where plaintiffs alleged that software falsely reported errors, but did not identify what errors were reported or whether they were false); *Dolch v. Linen Source Inc.*, No. 07 C 528, 2008 WL 11336301, at *1 (M.D. Fla. Jan. 3, 2008) ("[Plaintiff] alleges only that the defendant employed a different or distinctive method of counting threads."). Here, however, the complaint contains extensive allegations describing the methodology by which thread counts for the Hotel Style sheets were derived, and clearly describes the allegedly false statement on the Hotel Style sheets' packaging. (*See* FAC ¶¶ 31–38.)

Walmart also relies heavily on an out-of-circuit decision, *Hill v. AQ Textiles LLC ("Hill I")*, in which the district court dismissed state law fraud claims because the complaint "fail[ed] to make any allegations as to the actual thread count of the sheets they purchased." No. 19 C 983, 2021 WL 1026740, at *3 (M.D.N.C. 2021). *Hill I* did not involve allegations of industry-standard expert testing, however. *See generally*, *id*. As Walmart concedes, the *Hill I* plaintiffs eventually added allegations of expert testing in an amended complaint, and the district court issued another opinion holding that the allegations were sufficient to state a claim. *See Hill v. AQ Textiles LLC ("Hill II")*, 582 F. Supp. 3d 297, 316 (M.D.N.C. 2022).[4]

Because the plaintiffs have plausibly alleged that Walmart misrepresented the thread count in its Hotel Style branded sheets, the Court denies Walmart's motion to dismiss the plaintiffs' fraud claims based on failure to comply with Rule 9(b).

### 2. Damages

Walmart next argues that the plaintiffs' ICFA claims should be dismissed for failure to allege damages. (R. 30 at 11–14.) To prevail on their ICFA claims, the plaintiffs must allege that the defendant's deceptive or unfair conduct "caused actual damages." *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021). This is a distinct requirement from an Article III injury for standing purposes. *See Geske*, 503 F. Supp. 3d at 708. Actual damages may occur "if the seller's deception

---

[4] Walmart argues that the plaintiffs' allegations in this case are more like those in *Hill I* than *Hill II*, since the first amended complaint does not specify the exact thread count yielded by expert testing. (R. 36 at 8–9.)  But in *Hill I*, the plaintiffs "fail[ed] to make *any* allegations as to . . . actual thread count" and stated that "consumers ha[d] no realistic means of determining the actual thread count." 2021 WL 1026740, at *3 (emphasis added). Here, by contrast, the first amended complaint specifies that testing determined the Hotel Style sheets contained less than half of the represented amount, i.e. less than 400 threads. (FAC ¶ 7.) The allegations in this case are unquestionably more specific.

deprives the plaintiff of the benefit of her bargain by causing her to pay more than the actual value of the property." *Benson*, 944 F.3d at 647.

Whether the plaintiffs have adequately alleged damages is a close call. The plaintiffs argue that they suffered damages because they would not have purchased the sheets but for the alleged misrepresentation. (R. 35 at 9–12; *see also* FAC ¶ 10.) This line of argument runs afoul of *Benson* and *Camasta*, which held that a plaintiff's allegations that he "would not have purchased" a product but for defective advertising are insufficient to establish damages. *Benson*, 944 F.3d at 648; *Camasta*, 761 F.3d at 365–66. What is required instead are plausible allegations that the sheets were "defective or worth less than what [the plaintiffs] actually paid" or that the plaintiffs "could have shopped around and obtained a better price in the marketplace." *Benson*, 944 F.3d at 648 (quoting *Camasta*, 761 F.3d at 365–66).

The first amended complaint does not allege that the Hotel Style sheets are defective, or that the plaintiffs could have obtained a better price for them elsewhere. (*See generally* FAC). But, when viewed in the light most favorable to the plaintiffs, the complaint *does* allege that the sheets the plaintiffs received were worth less than what they actually paid. The plaintiffs assert that they "paid a premium" for the sheets over what they were actually worth on account of the overstated thread count, (*Id.* ¶¶ 54–57), and that they "did not receive the benefit of their bargain" because they received a product that was "worth far less" than what was represented. (*Id.* ¶ 57.) These allegations distinguish this case from *Camasta* and *Benson*, where there

were no plausible allegations that the product that the plaintiffs purchased was worth less than what they paid for it. *See Benson*, 944 F.3d at 647–48.

As Walmart points out, the plaintiffs' theory of economic injury rests on the premise that higher thread-count sheets are worth more than lower thread count sheets. (R. 30 at 12.) There is some reason to question this assumption; Walmart represents that certain 600-thread-count sheets that it sells are more expensive than the 800-thread-count sheets that the plaintiffs purchased. (*See id.* at 2, 13.) But this is a factual argument that is premature at the pleading stage. To the extent that the plaintiffs must plead factual content to shore up their allegations, the complaint cites a variety of third-party sources suggesting that higher thread count sheets are of a superior quality—and hence, more expensive—than lower thread count alternatives. (*See* FAC ¶¶ 29–30.) Given the parties' competing factual assertions, the Court denies Walmart's motion to dismiss the plaintiffs' ICFA claims due to the failure to allege damages.

### B.   Common Law Fraud

The Court next considers Walmart's motion to dismiss the plaintiffs' common law fraud claims. To state a claim for common law fraud under Illinois law, a plaintiff must allege (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induces the plaintiff to act; (4) reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). Claims for common law fraud–like ICFA claims–must comply with Rule 9(b). *See id.* at 833, 844.

Walmart's sole basis for dismissal of the plaintiffs' common law fraud claim is failure to allege a false statement with particularity. (R. 30 at 9–11.) As discussed above, the plaintiffs have alleged fraud with the particularity required by Rule 9(b). Accordingly, Walmart's motion to dismiss these claims is denied. *See, e.g.*, *Boss v. Kraft Heinz Co.*, __ F. Supp. 3d __ No. 21 C 6380, 2023 WL 5804234, at *3 (N.D. Ill. Sept. 7, 2023) (collecting cases).

## C. Unjust Enrichment

The Court next considers Walmart's motion to dismiss the plaintiffs' unjust enrichment claims. "[T]here is no stand-alone claim for unjust enrichment" under Illinois law. *Benson*, 944 F.3d at 648. Since the plaintiffs' unjust enrichment claims are predicated on the same conduct as their ICFA and common law fraud claims (*see* FAC), the claims rise and fall together. *See id.*; *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 517 (7th Cir. 2011) ("Where the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well."). Because the Court concludes that the plaintiffs have stated claims for violations of the ICFA and for common law fraud, the Court denies Walmart's motion to dismiss their unjust enrichment claims.

## D. Breach of Express Warranty

Finally, the Court addresses the plaintiffs' claims for breach of express warranty under Illinois law. "To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was the basis of the bargain; and (4) seller guaranteed

that the goods would conform to the affirmation or promise." *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 724 (N.D. Ill. 2021). The plaintiffs allege that the representation on the packaging that the Hotel Style Sheets are "800 thread count" constitutes an affirmation by Walmart that formed the basis of their agreement to purchase the sheets. (FAC ¶¶ 171–86.)

Walmart raises two arguments in support of dismissal. First, it argues that, even if the "800 thread count" representation constitutes a warranty, the plaintiffs have not plausibly alleged breach since there are no plausible allegations that the thread count was misrepresented. (R. 30 at 14.) This fails for the reasons already discussed.

Second, Walmart argues that the plaintiffs unreasonably delayed in providing Walmart with a pre-suit notification of the alleged breach. (*Id.* at 14–15.) Section 2–607 of Illinois' Uniform Commercial Code provides that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of [the] breach or be barred from any remedy. . . ." 810 ILCS 5/2–607(3)(A). "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." 810 ILCS 5/2–607 cmt. 4.

This argument fails as well. The reasonableness of a notice's timing is generally a factual question reserved for the jury. *Datil v. C.R. Bard, Inc.*, No. 19 C 8274, 2020 WL 5810402, at *6 (N.D. Ill. Sept. 30, 2020). The question can be only decided by the court as a matter of law "when no inference can be drawn from the evidence other than the notification was unreasonable." *Baldwin v. Star Sci., Inc.*,

No. 14 C 588, 2016 WL 397290, at *10 (N.D. Ill. Feb. 2, 2016); *see also Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 942 (N.D. Ill. 2013) (declining to dismiss Illinois law implied warranty claims based on unreasonable delay in notifying the defendant of breach, since the reasonableness of the delay period presented "a question of fact that cannot be resolved at this stage of the litigation").

The plaintiffs allege that they provided Walmart with notice of its alleged breach on July 7, 2023 via demand letter. (FAC ¶ 183.) They further allege that this letter was sent "shortly after" they discovered the breach. (*See id.*) The precise dates on which the plaintiffs made their discoveries are not specified in the first amended complaint. (*Id.*) Since there is insufficient information from the face of the complaint to determine when the plaintiffs discovered the breach, there is insufficient information to infer the time period between the discovery and the notification was reasonable.

While Walmart argues that the plaintiffs are required to allege the specific date on which they discovered the breach, the cases that it cites do not stand for this proposition. For example, in *Muir*, the plaintiff failed to give notice entirely and contended that the requirement was inapplicable. 2016 WL 5234596, at *9–10. And in *Ratkovich ex. rel Ratkovich v. Smithkline*, it was undisputed that the plaintiff had waited for twenty-eight years after her injury to bring suit. 711 F. Supp. 436, 438 (N.D. Ill. 1989).

Because the reasonableness of the plaintiffs' notice turns on facts not yet in the record, the Court concludes that these arguments are better addressed at summary judgment. The Court therefore denies Walmart's motion to dismiss the plaintiffs' breach of express warranty claim.

## CONCLUSION

For the reasons stated above, Walmart Inc. and Wal-mart Stores, Inc.'s motion to dismiss [30] is granted in part and denied in part. Plaintiff Vernita Faison's claims against Walmart (Counts III, IV, and V) are dismissed without prejudice due to lack of personal jurisdiction. The plaintiffs' claims for injunctive relief are dismissed due to lack of standing. The motion is denied as to all other claims. The defendants shall answer the complaint on or before April 1, 2024.

Date: 3/11/2024

_____
JEREMY C. DANIEL
United States District Judge